# EXH. C

Westlaw.

Not Reported in F.Supp.2d
2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680
**(Cite as: 2003 WL 22383607 (S.D.Fla.))**

Page 1

Motions, Pleadings and Filings

United States District Court,
S.D. Florida.

In re: SAF T LOK, INC. SECURITIES
LITIGATION

No. 02-80252-CIVRYSKAMP.

July 3, 2003.

Kenneth J. Vianale, Tara Steinbok Isaacson, Milberg, Weiss, Bershad, Hynes & Lerach, Kenneth J. Vianale, Vianale & Vianale, Boca Raton, FL, for Plaintiff.

Richard Brian Simring, Richard James Mockler, III, Stroock, Stroock & Lavan, Pedro Louis DeMahy, Jason Klein, DeMahy, Labrador & Drake, Miami, FL, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION*

RYSKAMP, J.

*1 THIS CAUSE comes before the Court upon the motions to dismiss filed by Defendant Goldberg Wagner Stump and Jacobs, LLP, ("Goldberg") [DE 29] and Defendants Franklin W. Brooks, Jeffrey W. Brooks, William Schmidt, James E. Winner, Jr., and John F. Hornbostel, Jr. [DE 30]. Also before the Court is Plaintiffs' motion requesting leave to amend their complaint if it is dismissed [DE 48]. Plaintiffs responded to Defendants' motions to dismiss and Defendants replied. Defendant Goldberg responded to Plaintiffs' motion requesting leave to amend their complaint if the complaint is dismissed. The Court heard the parties' arguments in oral argument. This issue is now ripe for adjudication.

I. BACKGROUND
A. Introduction

This is a securities fraud class action brought on behalf of purchasers of Saf T Lok common stock (the "Class") from April 14, 2000 through April 16, 2001 (the "Class Period"). (Compl.¶ 1.) Multiple cases were filed in this Court by individuals who purchased stock during the class period. Plaintiffs brought suit against Defendants Saf T Lok ("STL" or "the company"), a company manufacturing gun locks; Franklin W. Brooks, Jeffrey W. Brooks, William Schmidt, James E. Winner, Jr., and John F. Hornbostel, Jr., officers of STL (the "Individual Defendants"); and Goldberg Wagner Stump & Jacobs LLP ("Goldberg" or "the firm"), an accounting firm which audited STL's financial statements. On July 3, 2002, these cases were consolidated and lead plaintiff and lead counsel were appointed. Plaintiffs filed their Consolidated Amended Class Action Complaint ("the Complaint") on September 13, 2002. Defendants Goldberg and the Individual Defendants subsequently filed their motions to dismiss.

In the first claim of the Complaint, Plaintiffs assert that all Defendants violated sections 10(b) of the Securities and Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5. Plaintiffs argue in the second claim that the Individual Defendants violated Section 20(a) of the Exchange Act. Defendants moved to dismiss the Amended Complaint, contending that Plaintiffs have failed to satisfy the pleading requirements of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

B. History

STL filed its 1999 Annual Report, form 10-KSB, with the Securities and Exchange Commission ("SEC") on April 14, 2000. (*See* Individual Defendants Request for Judicial Notice ("Reports"), Ex. 1.) In its report, STL stated that the company faced "a number of not insignificant problems," including funding in general and new sales strategies. (*Id.* at 13.) The company had not yet reached a "level [of sales] sufficient to sustain operations." (*Id.* at 12.) Moreover, STL stated that "if sales revenues do not increase sufficiently by mid-2000 ... the Company will have to obtain additional working capital." *Id.* For these reasons, STL reported that its auditor, Goldberg, had included "a going concern qualification" in the company's financial report. *Id.*

*2 Nevertheless, STL believed that it would be able to sustain operations by finding "a strategic partner or

Not Reported in F.Supp.2d
2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680
(Cite as: 2003 WL 22383607 (S.D.Fla.))

Page 2

partners to provide an immediate revenue stream and/or the marketing expertise to help increase sales revenue to a self-sustaining, profitable level." (*Id.* at 12.) Based on this belief, the company classified its inventory as a current asset in the value of $2,322,169.

In its Independent Auditors Report as part of STL's 1999 10-KSB, Goldberg stated that it audited STL's consolidated balance sheet and that it conducted its audit in accord with generally accepted auditing standards ("GAAS"). (*Id.* at F-1.) Goldberg stated that STL's financial statements "present fairly, in all material respects, the consolidated financial position of Saf T Lok Incorporated and subsidies as of December 31, 1999 ... in conformity with generally accepted accounting principles." *Id.* Goldberg added, however, that the financial statement had been prepared under the assumption that STL would "continue as a going concern." *Id.* Goldberg also stated that

> [t]he Company's continued ability to operate as a going concern is dependent on its ability to raise additional capital and achieve a successful level of sales. The [C]ompany is attempting to find a suitable merger or acquisition candidate.... However, there can be no assurance that the search will be satisfactorily concluded in time to provide the Company the working capital it needs to continue operations. The aforementioned circumstances raise substantial doubt as to the Company's ability to continue as a going concern at December 31, 1999.

(*Id.* at F-12.)

The "merger or acquisition candidate" STL pursued was Smith and Wesson ("S & W"). In December 1999, STL engaged the services of the investment banking firm Friedman, Billings and Ramsey to find such a candidate. (*See* Complaint, Ex. J at 2.) STL began talking with the CFO of S & W in January 2000 regarding a merger or acquisition. *Id.* These discussions continued from January through at least October 2000. (*See id.* at 2-3, detailing progress of the discussions; *see also* Compl., Ex. M at 4.) On July 13, 2000, GE Capital Commercial Finance, Inc., wrote STL and confirmed that it was interested in providing up to twenty million dollars worth of financing to STL, but indicated that had not yet committed to providing that financing. (*See* Complaint, Ex. J at 1.) In December 2000, however, it became clear that negotiations between STL and S & W had broken down and that no agreement could be reached.

On February 6, 2001, Defendants Jeffrey Brooks and William Schmidt, along with two other members, resigned from STL's board of directors. (*See* Reports, Ex. 2.) Franklin Brooks appointed five individuals in their place, including Defendants James Winner, Jr. and John Hombostel. *Id.* Winner and Hornbostel were both experienced in marketing and design; Winner developed "The Club" anti-theft device and managed a company which sold the device. *Id.* Hornbostel had served as a vice president and general counsel for over twenty years. *Id.* Subsequently, on March 19, 2001, Franklin Brooks resigned as Chairman of the Board. (Compl., ¶ 20.)

*3 From September 2000 through February 2001, the SEC engaged in a series of conversations with STL regarding the company's classification of its inventory. On September 21, 2000, the SEC wrote to Franklin Brooks instructing STL to demonstrate why its inventory was classified as a current asset in light of the company's "downward sales trend and low turnover rate." (Compl., Ex. H at ¶ 54.) Goldberg responded for STL and explained that the company factored in new state laws requiring gun locks and, more importantly, evidence that the company would acquire a gun manufacturer. (Compl., Ex. I at 2.)

On November 3, the SEC again wrote to Brooks, stating its belief that "significantly enhanced disclosures are necessary [to show] ... why you and your auditors concluded that long-lived assets are not impaired." (Compl., Ex. K at ¶ 4.) The SEC stated that if STL believed that the recoverability of its assets was dependent on a pending acquisition or merger with a gun manufacturer, STL needed to fully disclose and discuss it. (*Id.* at ¶ 5.) Finally, the SEC stated that the pending acquisition appeared probable and that additional forms were required. (*Id.* at ¶ 6). On November 9, 2000, STL or Goldberg faxed a response indicating that such forms were not necessary because the proposed acquisition was no longer "probable" but "only an expectation." (*See* Compl., Ex. L at 1; Ex. M at 4.)

In a letter dated November 15, 2000, the SEC responded to the faxed response from STL and requested that the company provide the reasons for why the company concluded that the proposed acquisition of a gun manufacturer was not probable. (Compl., Ex. L at 2.) Defendant Goldberg responded to this letter on December 1, 2000, explaining that the negotiations had continued for over ten months because of the complex liability and valuation issues involved, STL's difficult financial situation, changes in the gun manufacturer's parent company's

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10446-RCL   Document 18-4   Filed 10/25/2004   Page 4 of 9

Not Reported in F.Supp.2d                                                                     Page 3
2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680
(Cite as: 2003 WL 22383607 (S.D.Fla.))

management team, and possible alternate transactions considered by the parent. (Compl., Ex. M at 4). Because no agreement had been reached on purchase price and due to the subsequent resignation of the parent company's president, further negotiations had been put on hold. *Id.* Goldberg submitted that the acquisition could not be said to be "probable." *Id.* Nevertheless, Goldberg averred that "there is a reasonable expectation that discussions will continue." He based this assertion on a letter STL received from the parent's executive chairman of October 18, 2000, which stated that the chairman intended to continue evaluating an agreement. *Id.* The SEC replied on December 19, 2000, stating that STL had failed to provide "compelling information to support your conclusion as to the classification of inventory" and requiring STL to revise its statements to appropriately classify its inventory. (Compl., Ex. N at 1.)

The SEC wrote STL again on February 26, 2001, stating its belief that STL's classification of all inventory as current assets was inappropriate. (Compl., Ex. O.) The SEC stated it "believe[d] that [STL] should revise [its] financial statements to reclassify a substantial majority of [its] inventory to non-current assets at 12/31/99 and at each subsequent balance sheet date." *Id.* The SEC also concluded, however, that it would rely on STL's management and Goldberg's "assessments of the ultimate net realizable value of inventory and the recoverability of long-lived assets." *Id.*

*4 In compliance with the SEC's instructions, on March 26, 2001, STL filed its amended 10-KSB for fiscal year 1999 and its 10-QSB for the first three quarters of 2000, reclassifying the majority of its inventory as non-current. (*See* Reports, Ex. 3 at F-2; Ex. 4 at 10a.) [FN1]

> FN1. Confusingly, the page number of the report goes from page 10 to an unnumbered page to page 11. For the purposes of clarity, the Court considers the unnumbered page to be page 10a.

Subsequently, on April 16, 2001, STL filed its 10-KSB for fiscal year 2000. (*See* Reports, Ex. 4.) STL reported that because a merger with or acquisition of S & W did not take place, as management had anticipated, $2,225,000 had already been reclassified as non-current assets in its amended 1999 10-KSB. (*Id.* at 10a.) Moreover, because STL's management understood that the company would not be able to realize the value of the inventory within a predictable period of time, the company valued the inventory at its net realizable value, a loss of $2,057,659. *Id.* Finally, the company recognized impairment losses of $859,317 for the unamortized portion of tools and dies and $254,713 for the unamortized portion of the patent costs. *Id.*

C. Plaintiffs' Allegations

Plaintiffs' eighty-one page Amended Complaint contains 221 separate paragraphs. In essence, however, Plaintiffs argue that STL and Goldberg improperly overvalued unsaleable inventory and worthless production related assets. (*See* Compl. ¶ 8.) Plaintiffs allege that the Individual Defendants filed reports with the SEC that fraudulently overvalued its inventory and artificially inflated the value of its stock. (*See* Compl. ¶ 23.) Plaintiffs allege that STL's auditor, Goldberg, knew the inventory was worthless but issued unqualified auditor's opinions for the financial statements regardless. *Id.*

Plaintiffs allege that Defendants failed to reduce STL's inventory to the lower of cost or market value, in violation of GAAP and Accounting Research Bulletin No. 43, Chapter 4, Paragraph 8, which requires that inventory be written down when its value will not be realized in future sales. (Compl.¶ 121.) Plaintiffs argue that because STL's inventory was worthless in that it could not have been sold within the requisite time period, it should have been written down in STL's 1999 Form 10-KSB. Plaintiffs allege both the Individual Defendants and Goldberg knew that due to STL's inability to sell its inventory within the next twelve months, it should have been written down. Plaintiffs further allege that STL's correspondence with the SEC put the company and Goldberg on notice that the inventory should have been written down much earlier.

II. DISCUSSION
A. Pleading Standards
*1. Motion to Dismiss*

A court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998) *cert. denied,* 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998)(quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). *See* Fed.R.Civ.P. 12(b)(6). The complaint need only give the defendant fair notice of the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10446-RCL   Document 18-4   Filed 10/25/2004   Page 5 of 9

Not Reported in F.Supp.2d
2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680
(Cite as: 2003 WL 22383607 (S.D.Fla.))

Page 4

plaintiff's claim and the grounds upon which it rests. See *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. See also Fed.R.Civ.P. 8(a)(2). In addressing a motion to dismiss, "a court must accept all of the facts in the complaint as true, granting the motion only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Miller v. U.S. Dep't of Agric. Farm Servs. Agency,* 143 F.3d 1413, 1414 (11th Cir.1998).

**\*5** When considering a motion to dismiss, the Court must construe the allegations of the complaint favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir.1995) (quotations omitted).

*2. Securities Exchange Act*

Plaintiffs first allege that all Defendants violated Section 10(b) of the Exchange Act, which makes it "unlawful for any person ... to use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commissioner may prescribe." 15 U.S.C. § 78j (1997). Pursuant to this authority, Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading." 17 C.F.R. § 240.10b-5 (1997). The Eleventh Circuit requires a plaintiff alleging securities fraud under Rule 10b-5 to plead: "(1) a false statement or omission of material fact (2) *made with scienter* (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's injury." *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1446 (11th Cir.) *reh'g denied,* 129 F.3d 617 (11th Cir.1997) (*emphasis added*).

Plaintiffs' second claim, filed solely against the Individual Defendants, is brought under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)), which provides for joint and several liability of "controlling persons" of persons liable for a securities violation. This section provides that

> [e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The Eleventh Circuit defines a "controlling person" as one who "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Brown v. Enstar Group, Inc.,* 84 F.3d 393, 396 (11th Cir.1996).

*3. Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act*

Allegations of security fraud under § 10(b) and Rule 10b-5 are subject to the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The purpose of Rule 9(b) is to "ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of" and to "eliminate those complaints filed as a pretext for discovery of unknown wrongs." *Anderson v. Transglobe Energy Corp.,* 35 F.Supp.2d 1363, 1369 (M.D.Fla.1999). The Eleventh Circuit has cautioned, however, that "Rule 9(b) must not be read to abrogate Rule 8 ... and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims,* 755 F.2d 810, 813 n. 3 (11th Cir.1985).

**\*6** Generally, in order to survive a Rule 9(b) challenge, the complaint must specify: (1) what statements or omissions were made in which documents or oral presentation, (2) the time and place of the statement, as well as the person who made it, (3) the misleading content of the statement, and (4) what the defendants gained as a consequence. *Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364, 1371 (11th Cir.) *reh'g denied,* 116 F.3d 1495 (11th Cir.1997).

In December 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") which heightens the pleading requirements for Rule 10b-5

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 5
2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680
**(Cite as: 2003 WL 22383607 (S.D.Fla.))**

claims. The Act goes further than Rule 9(b) by requiring a complaint alleging fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

### B. Analysis of the Allegations in the Consolidated Amended Class Action Complaint

This Court has focused primarily on the scienter pleading requirement under Rule 10-b(5) because the scienter element is the basis for both Goldberg and the Individual Defendants' motions to dismiss. Defendant Goldberg argues that the complaint allegations are deficient in that they do not contain the requisite particularity sufficient to prove Goldberg's scienter. (Goldberg Mot. at 3.) Similarly, the Individual Defendants argue that the Complaint fails to allege with particularity that each Individual Defendant acted with the required scienter. (Ind. Defs. Mot. at 1.) This Court finds that the complaint fails to sufficiently allege scienter with the requisite particularity. Because Plaintiffs have failed to adequately plead a section 10(b) violation, the section 20(a) controlling person claim necessarily fails and will be dismissed. *See In re: Sunterra Corp. Sec. Litig.,* 199 F.Supp.2d 1308, 1339 (M.D.Fla.2002). Hence, the Court need not address whether Plaintiffs have otherwise sufficiently alleged controlling person liability against any of the Individual Defendants.

The PSLRA requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted *with the required state of mind."* 15 U.S.C. § 78u-4(b)(2)(emphasis added). Plaintiffs make several arguments in their attempt to establish that Defendants violated the Exchange Act with the required state of mind, including (a) violations of GAAP combined with other circumstances indicative of fraud support an inference of scienter; (b) the magnitude of the GAAP violations indicates scienter; (c) the small window of time between reporting the inventory at full value and writing ninety percent off establishes scienter; and (d) the Individual Defendants had motive to commit fraud. For the reasons articulated below, the Court rejects these arguments.

*1. Plaintiffs Have Not Sufficiently Alleged Defendants' Scienter* [FN2]

> FN2. Although this cause came before the Court on separate motions to dismiss, this Court discusses the issues relating to the Individuals Defendants and Goldberg together because Plaintiffs do not clearly distinguish between the parties in their Response and because so many issues are common and overlap.

*7 This case revolves around two circumstances which, unfortunately for both Plaintiffs and Defendants, either occurred in an untimely fashion or never occurred at all. The first circumstance is the writing-down of STL's inventory. Plaintiffs argue that instead of properly reporting a very low value for its inventory of gun locks at the end of fiscal year 1999, Defendants fraudulently failed to write it down until April 16, 2001. The second circumstance is STL's acquisition of or merger with Smith & Wesson. If Defendants had written down STL's inventory sooner, Plaintiffs would not have purchased Defendants stock at overvalued prices. If the acquisition had gone through, as Defendants expected, Defendants would likely have had a market for their gun locks and would have been able to move their inventory.

Plaintiffs' principle argument is that both the Individual Defendants and Goldberg knew that STL was in trouble and that its sales were very low and were not expected to substantially increase, but that Defendants continued to list STL's inventory as current assets in violation of GAAP. Plaintiffs contend that these actions constitute fraud in violation of the Exchange Act.

It is undisputed, however, that STL clearly indicated in every relevant report to the SEC that the company was in trouble. (*See* Reports, Ex. 1 at 12-13; Ex. 3 at 5, 11-12; Ex. 4 at 10a-12.) In its audit attached to STL's report, Goldberg reiterated these concerns and issued a going concern for STL. (*See* Reports, Ex. 1 at F-12.) Neither the Individual Defendants nor Goldberg fraudulently concealed STL's low sales, income, or debts. Plaintiffs' only bases for its fraud claim are that the S & W acquisition was fictitious and that Defendants failed to write off STL's inventory. First, the exhibits to Plaintiffs' Complaint indicate that not only Defendants but also GE Capital Commercial Finance and the SEC believed, until late 2000, that an acquisition of S & W was likely. (*See* Compl., Ex. J, K, L.) Second, even with regard to the inventory write-down issue, Defendants clearly

Not Reported in F.Supp.2d
2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680
(Cite as: 2003 WL 22383607 (S.D.Fla.))

Page 6

articulated why they continued to list STL's inventory as current, even though at the rate of sales for previous years there was no way they could move all their inventory in twelve months. Defendants stated that they retained hope for the future and did not write off their inventory because they anticipated either the acquisition of or a merger with a large gun manufacturer which would provide them with a ready market for their gun locks. (*See* Reports, Ex. 1 at 12, F-12; Compl., Ex. 1 at 3.)

The controlling circumstance in whether Defendants should have written down their inventory, therefore, is whether Defendants could realistically expect the proposed acquisition of S & W to go through. Plaintiffs argue strenuously that the acquisition was "fictitious." (Resp. at 4.) Plaintiffs place great weight on the Individual Defendants' typographical error in their Motion to Dismiss that the S & W acquisition deal fell through in *December 1999.* (*See* Ind. Defs. Mot. at 6; Resp. at 4.) In reality, negotiations continued through 2000 and fell through only in *December 2000,* as Defendants make clear in their reply and which is clear from the exhibits Plaintiffs attached to their complaint. (*See* Ind. Defs. Reply at 2; Compl., Ex. 1 at 2-3.)

*8 Plaintiffs rely on a statement from GE Capital to STL to the effect that GE had not made any commitment to provide financing, but ignore GE's first statement that it "is pleased to confirm its interest in providing up to $20,000,000 of financing in support of the proposed acquisition" and its request for STL to submit a deposit for GE to "begin [its] due diligence and field audit." (Compl., Ex. J at 1, 5.) Plaintiffs also argue that "there was no reasonable basis" for Goldberg's specualtion that S & W could "easily absorb" STL's inventory, but appear to ignore the number of guns S & W sells and that if STL were to acquire S & W, STL would be in the position to determine which gun locks would be sold with S & W's guns. (Resp. at 4; Compl., Ex. 1 at 3; Reports, Ex. 4 at 10a.)

Finally, Plaintiffs also emphasize the continuing correspondence between the SEC and Goldberg, writing for STL. Plaintiffs, however, focus their attention on limited portions of the correspondence and fail to consider and cite all relevant portions. In his letters of October 19 and December 1, 2000, Goldberg thoroughly explains why STL had continued to expect that the acquistion of S & W would go through and that STL's inventory continued to be listed as current because of the expected acquisition. When it became clear that it was no longer "probable" that the acquisition would go through, STL heeded the SEC's recommendations and relisted its inventory as non-current. STL explained that it was not written down entirely, however, because STL was hopeful that its new management team would implement new marketing strategies to move the inventory. When it became clear that this effort would also be ineffective, STL wrote off ninety percent of its inventory.

In essence, therefore, Defendants' argument is that the Individual Defendants and Goldberg should have written down STL's inventory sooner. Plaintiffs are correct that GAAP requires inventory to be written down when its value will not be realized through future sale. The questions upon which the debate turns are whether and when Defendants knew they should write down the inventory. Because Plaintiffs fail in their allegations to take into account the totality of the circumstances, including Defendants' belief that STL would acquire S & W and thereby secure a market for STL's inventory, Plaintiffs have not sufficiently alleged that Defendants knew or were severely reckless in not knowing that they should have written down the inventory sooner.

*2. Plaintiffs Arguments in Response to Defendants Motions to Dismiss Must be Rejected*

*a.) The totality of the circumstances do not indicate a strong inference of scienter*

Plaintiffs argue that Defendants' violations of GAAP combined with other circumstances indicative of fraud support an inference of scienter. (Resp. at 25-28.) Defendants do not dispute that both the Individual Defendants and Goldberg knew that STL had a relatively low level of sales and that its sales--and thus the company's growth--would probably remain minimal. (Compl., Ex. D; Ex. E at 3). Plaintiffs argue that there was nothing different between April 14, 2000, when STL classified its inventory as current, and April 16, 2001, when it wrote off ninety percent of the value of its inventory. (Resp. at 27.) The one primary difference, however, was that STL no longer expected an acquisition of S & W. This difference affected Defendants' state of mind; while preparing their 1999 annual report in early 2000, both the Individual Defendants and Goldberg believed the acquisition was probable and the inventory could be moved. If that expectation was realistic--and Plaintiffs have not convincingly alleged that it was not--even if it were a GAAP violation to classify STL's inventory as current, the totality of the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10446-RCL   Document 18-4   Filed 10/25/2004   Page 8 of 9

Not Reported in F.Supp.2d
2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680
(Cite as: 2003 WL 22383607 (S.D.Fla.))

Page 7

circumstances does not indicate a strong inference of scienter on the part of the Defendants.

*b.) Magnitude of the fraud does not create a strong inference of scienter*

*9 Plaintiffs argue that the magnitude of the GAAP violations--failure to timely write off ninety percent of the value of STL's inventory, totaling over two million dollars--raises a strong inference of scienter. The "sheer magnitude of the fraud" test raises inference of scienter because it serves to put the auditor on notice of fraudulent representations. This situation, however, must be distinguished from cases such as *In re Sunbeam Sec. Litig.,* 89 F.Supp.2d 1326 (S.D.Fla.1999) and *In re Sahlen & Assoc., Inc. Sec. Litig.,* 773 F.Supp. 342 (S.D.Fla.1991). In *Sahlen,* defendants actively committed fraud by writing false invoices for work not actually completed, forging the names of multiple clients, tampering with confirmation letters the accountants sent out, and using a computer program which included the false information. 773 F.Supp. at 358-59. In *Sunbeam,* the defendant company and its auditor misstated or concealed the company's financial condition, including a $90 million overstatement of a restructuring charge. 89 F.Supp.2d at 1330-31. In the case *sub judice,* Plaintiffs allege no other wrongdoing or cover-ups other than a failure to write down an inventory as quickly as Plaintiffs, in hindsight, believe it should have been. The magnitude of the write-down, although large, was based on an acquisition which both the Individual Defendants and Goldberg believed would occur. Although the magnitude of the write-down was large, the magnitude of the allegedly fraudulent behavior was not so large as to put Goldberg on notice. Therefore, Plaintiffs' "magnitude of the fraud" allegation does not create a strong inference of Defendants' scienter.

*c.) Disparities between Defendants' SEC filings do not create inference of scienter*

Plaintiffs contend that the large change in inventory value in a small window of time between STL's March 26, 2001 filings and its April 16, 2001 filings creates a strong inference of the Individual Defendants' scienter. On March 26, 2001, STL filed its amended 1999 Form 10-KSB and its amended 1999 Form 10-QSBs. In those forms, STL classified its inventory, tools, dies, and patents at full value as non-current assets. On April 16, 2001, STL filed its 2000 Form 10-K. In this form, STL took impairment charges for ninety percent of its inventory and for the full value of its tools, dies, and patents. This significant change in STL's classification of its inventory, however, does not raise a strong inference of scienter for the Individual Defendants because the filings cover *different periods* of time. The 1999 Form 10-KSB reflected the inventory value on December 31, 1999, whereas the 2000 Form 10-KSB reflected the value of the inventory on December 31, 2000. It is conceivable, especially due to the failure of the acquisition discussions in December 2000, that the inventory would be valued much less on December 31, 2000, than it was on December 31, 1999, when STL still expected to acquire S & W. This Court rejects Plaintiffs' argument that the discrepancies in the filings raise an inference of scienter.

*10 Similarly, Plaintiffs allege that Goldberg's letter of March 19, 2001, referred to in Goldberg's April 4, 2001 letter, raises a strong inference that the firm knew STL's inventory was overvalued when it issued its auditor's approval letter accompanying STL's amended 1999 Form 10-KSB and its amended 1999 Form 10-QSBs. (*See* Compl., Ex. P.) Plaintiffs refer to this letter repeatedly throughout their Response and seem to treat it as a "smoking gun." Goldberg apparently wrote Hornbostel on March 19, 2001 asking for "something to 'hang [his] hat on' with respect to the company's plans for selling or liquidating the inventory." (Compl., Ex. P at 1.) It is clear from the rest of the letter, however, that Goldberg was asking for a "hat hook" not for the amended 1999 forms but for the 2000 Form 10-KSB because he inquires as to the value of the inventory at *December 31, 2001.* Again, the fact that Goldberg would value the inventory differently at the end of 2000 than at the end of 1999 does not raise a strong inference of Goldberg's scienter in that he knew the inventory was overvalued at the end of 1999.

*d) Motive alone cannot create an inference of scienter*

Finally, Plaintiffs assert that scienter is established because the Individual Defendants had motive to commit fraud. (Resp. at 33.) Plaintiffs are correct that the Eleventh Circuit recognizes that motive and opportunity are specific kinds of evidence which may contribute to an inference of willfulness, but such evidence may *only* be used along with other evidence. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1286 (11th Cir.1999). The court was clear in its holding that while motive may "be relevant to a showing of severe recklessness," it is "not sufficient to demonstrate the requisite scienter in our Circuit."

Not Reported in F.Supp.2d
2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680
**(Cite as: 2003 WL 22383607 (S.D.Fla.))**

Page 8

*Id.* at 1285-86. Because Plaintiffs have failed to allege additional evidence of scienter, any motive Defendants may have had is insufficient to establish scienter here.

### III. CONCLUSION

The Court having considered the motion and the pertinent portions of the record and being otherwise fully advised in the premises, it is therefore

ORDERED AND ADJUDGED that the motions to dismiss filed by Defendant Goldberg [DE 29] and the Individual Defendants [DE 30] are GRANTED. Plaintiffs' motion requesting leave to amend [DE 48] is GRANTED. Plaintiffs shall have thirty (30) days from the date of this order to file an amended complaint.

IT IS FURTHER ORDERED that Defendants' Request for Judicial Notice [DE 31] is GRANTED.

2003 WL 22383607 (S.D.Fla.), Fed. Sec. L. Rep. P 92,680

Motions, Pleadings and Filings (Back to top)

• 9:02CV80252 (Docket) (Mar. 26, 2002)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.