# EXH. D

## IA PART 27

### Justice Cammerman

DAVID v. SIMWARE INC.—The defendants Simware, Inc. ("Simware") and William D. Breen, Jack A. Avery, Douglas C. Cameron, Robin J. Louis, Leonard T. Matsukubo and Frederick T. White (collectively hereinafter the "Director Defendants") and Oppenheimer & Co., Inc., Punk, Ziegel & Knoell and Nesbitt Burns Securities, Inc. (collectively the "Underwriter Defendants") move for an order dismissing this action, pursuant to CPLR 3211(a)(1), (7) and 3016(b).

The complaint, in this class action, is brought on behalf of the plaintiff Richard David and the purchasers of Simware common stock from September 28, 1995, the date of the initial public offering ("IPO") through and including February 6, 1996, and alleges causes of action for violations of Sections 11 (15 U.S.C. §77k(a)) and 12(2) (15 U.S.C. §77l(2)) of the Securities Act of 1933 and for common law negligent misrepresentation.

The defendant Simware is a Canadian corporation which develops, markets and supports software products for remote connectivity and automation of local area networks ("LAN") administration with a primary customer base of large corporations and governmental agencies. Simware, on September 28, 1995, sold 2.7 million shares of common stock for 27 million dollars in a registered IPO. Simware's IPO was a firm commitment underwriting, in which the Underwriter Defendants purchased the securities from the company with each acting as co-lead underwriter of the IPO. On February 6, 1996, Simware announced, in a press release, that it expected to report a loss for the third quarter as the result of the competitiveness of the connectivity market and emerging "intranet" technologies, resulting in the stock dropping to 2.625 per share and this subsequent lawsuit.

Sections 11 and 12(2) are enforcement mechanisms for mandatory disclosure requirements of the Securities Act, Shaw v. Digital Equipment Corp., 82 F.3d 1194, 120 [1st Cir. 1996]. Section 11 imposes liability on signers of a registration statement and on underwriters, among others, if the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statement therein not misleading." Section 12(2) provides that any person who "offers or sells" a security by means of a prospectus or oral communication that contains a materially false statement or that "omits to state a material fact necessary to make the statements, in light of the circumstances under which they were made, not misleading" shall be liable to any "person purchasing such security from him."

With respect to the first cause of action for violation of §11, the complaint alleges that the Prospectus and registration statement contained two statements which were untrue statements of material fact. The statements were that Simware "had a competitive advantage against existing and potential competitors" and that its A2B and Rexxware products were "near the beginning of their useful life cycle". The plaintiff contends that the defendants knew that the above representations were false at the time of the IPO due to the already developed intranet technology.

The first cause of action also alleges that the Prospectus and registration statement omitted material facts by failing to disclose the development of the intranet and the impact that it and Microsoft's Windows products were already having on Simware's sales prior to the IPO and also that Novell, upon whom Simware was dependent, was actually exhibiting a preference for Simware's competitors.

The second cause of action, which alleges §12(2) violations, repleads the allegations in the first cause of action and adds that oral communications were made by the defendants in "road shows" in connection with the IPO which related to expected earnings in forthcoming quarters, when Simware in fact believed that it would have negligible, if any, profits.

The third cause of action is for common law negligent representation based upon the same purported misrepresentations in the Prospectus.

Apparently, it is undisputed that the intranet technology ultimately had a substantial impact on Simware's two main product lines A2B and Rexxware. The intranet can connect corporate employees at remote sites to all corporate computer applications through the internet without the need of Simware's A2B connectivity software and Rexxware; which worked solely with Novell's systems, became obsolete as present and potential customers of Simware were instead electing to purchase Microsoft's Windows operating systems.

The real issue with respect to the plaintiff's claims for violations of §§11 and 12(2), both with respect to alleged misrepresentations and failure to disclose is not what ultimately happened, but whether defendants were aware of the risks and actual problems at the time of the IPO. The complaint, however, offers no factual allegations concerning the actual status of intranet technology at the time of the IPO or whether Simware or anyone else was aware of its potential impact on Simware's products. There is no factual basis to infer that the defendants possessed knowledge that the intranet would revolutionize the market place and no hard facts to even infer that Simware had any knowledge of the intranet on September 28, 1995. A claim for violations of §§11 and 12(2) cannot be based merely upon 20/20 hindsight. The particularity requirement cannot be avoided "simply through a general averment that defendants 'knew' earlier what later turned out badly", Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992). It is obvious that even a period of months is often a lifetime with respect to the development of computer technology.

The plaintiff relies upon Shaw v. Digital Equipment, supra, wherein the court did not dismiss §§11 and 12(2) causes of action because there existed specific allegations of hard financial information in the form of internal financial data and projections which belied the representations in the prospectus. The plaintiff maintains that Simware must have been aware of the intranet technology, its adverse impact on sales for the quarter in progress and other competitive forces when the IPO went effective. The plaintiff's support for this position appears solely to be the dramatic price decline in the stock's value after the February 6, 1996, press release.

There is no showing that these defendants had any hard information that there was a substantial likelihood that the quarter, after the IPO, would turn out to be an extreme departure from publicly known trends and uncertainties. In fact the Prospectus indicated that the bulk of its sales consistently occurred in the last few weeks of a quarter and even in the last few days of the quarter. Unlike Shaw v. Digital Equipment, supra, there is no allegations that Simware had any interim sales reports or internal projections at the time of the IPO showing a decline in sales for the balance of the quarter ending October 31, 1995.

n the light that there are no hard facts, I o find that the risks that plaintiff alleges re adequately disclosed. The Prospectus itained cautionary language warning of isible future problems. In particular it ted:

he Company's A2B and Rexxware roduct lines were introduced within he last 2 years and, there can be no .ssurance of the market acceptance of .ny of these products.

In addition, there can be no assur- .nce that services, products or tech- iologies developed by others will not ender the Company's products or echnologies uncompetitive or )bsolete.

The Company also faces actual or potential competition from telecom- munications companies ... and (from Microsoft, both with respect to Win- Jows 96, which has certain connectiv- ty capabilities which may compete with certain connectivity features of he A2B products, and in general due to Microsoft's dominance in the PC software market and the risk that it c    release new connectivity prod- u.    /hich compete more directly with the Company's products.

Similarly, Novell, based on its mar- ket strength and knowledge, could be a serious competitor, if it released a product which competes with the Company's LAN administration.

urts have invoked the "bespeaks cau- m" doctrine when the prospectus ade- uately informed the reader of the risks of. e investment. The doctrine embodies the inciple that when statements of "soft" formation such as forecasts, estimates, inions, or projections are accompanied cautionary disclosures that adequately irn of the possibility that actual results events may turn out differently, the oft" statements may not be materially isleading under the securities law, Ro-; ani v. Shearson Lehman Hutton, 929 F.2d '5, 879 (1st Cir. 1991). I find that Sim- ire's statements of belief couched in rong cautionary language, cannot be said have been materially misleading. In re ac Electronics Securities Litigation, 82 3d 1480 (9th Cir. 1996); O'Sullivan v. Tri- :nt Microsystems, Inc., 1994 WL 124453 (.D. Cal. 1994).

With respect to the §12(2) violation based on alleged oral misrepresentations made at "road shows", concerning expect- ed earnings of Simware in the forthcoming quarters, this cause of action is clearly dis- missable for failure to comply with CLPR 3016(b). CPLR 3016(b) requires that where a cause of action is based upon misrepre- sentation, the circumstances constituting the wrong shall be stated in detail. The al- legations in the complaint fail to specify: who allegedly made the misrepresenta- tions; what was specifically stated; where and when these alleged misrepresenta- tions were made; whether the defendants had knowledge that such statements were false when made and whether the state- ments were made to the plaintiff Richard David, himself. In addition, the complaint fails to give each of the defendants notice of exactly what he or she has allegedly done.

This court also notes that all of the §12(2) claims must be dismissed as against the Simware on the additional ground, that §12 contemplates only an action by a buyer against his or her immediate seller. In cases involving a firm commitment under- writing wherein the underwriters pur- chased the shares and as owners resold them to the public, the issuer is not liable, since only statutory sellers may be liable under §12(2), Pinter v. Dahl, 486 U.S. 622 (1988). Unsupported allegations, as con- tained in this complaint, that the issuer "solicited" the securities purchasers are not, standing alone, sufficient. Shaw v. Dig- ital Equipment Corp., supra.

With respect to the Underwriter Defen- dants, the complaint also fails to identify the particular underwriter from whom the plaintiff purchased his shares and there- fore the §12(2) claim must be dismissed as to Underwriter Defendants.

With respect to the third cause of action for common law negligent misrepresenta- tion, there are four elements to this cause of action which are as follows,
(1) carelessness in making an incorrect statement,
(2) making such a statement directly and with knowledge, notice and expecta- tion that another will rely upon it,
(3) reliance by the complaining party on the statement to his or her detriment and
(4) a relationship between the parties sufficient to create the defendant's duty of disclosure to the plaintiff. I find that the complaint has failed to allege the fourth el- ement as it requires a relationship between the parties "so close as to approach that of privity", Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536 (1985). Negligent misrepresentation claims do not extend to the investing public at large, In re Time Warner Securities Litigation, 9 F.3d 259 (2d Cir. 1993).

Accordingly, the motion is granted and the entire complaint is dismissed as against all the defendants for insufficiency.

I did not address the issue of whether the Supreme Court's ruling in Gustafson v. Alloyd Co., 513 U.S. 561 (1995) abrogates a secondary market purchaser's §§11 and 12(2) claims as such issues deal with po- tential class members and not this plaintiff and, in light of the dismissal, this issue need not be decided by me.

Accordingly, the action is dismissed and the defendants shall promptly serve a copy of this order with notice of entry thereon upon counsel for the plaintiff and upon the Clerk of the Court who is directed to enter judgment accordingly.