# EXHIBIT C

improbable.[3]  Actually knowing that a forecast is false is materially different from making an al-

legedly negligent forecast (i.e., one that – as here – the plaintiff alleges "lacked a reasonable ba-

sis").[4]  In any event, the fact that Ibis received an order for an i2000 implanter (with an option

for a second) more or less when it thought it would (i.e., only 5 weeks after year-end 2003)

hardly supports the conclusion that Ibis actually knew its expectation was unachievable.[5]

## II.     THE IBM-RELATED ALLEGATIONS FAIL TO STATE A CLAIM.

Plaintiffs conveniently argue that Defendants "mischaracterize" their argument about the

identity of the first i2000 implanter customer.  They now contend that this is not an "independent

claim," apparently abandoning it, but only "support" for the argument that Ibis "conditioned" the

market, "painted a misleading portrayal of how quickly and smoothly" the market for i2000 im-

planters would develop, and "created enough mystery to paint a false portrayal of the breadth and

timing of the order pipeline." (Opp. at 11).  Again, the securities laws prohibit false or mislead-

ing *statements*, Copley, 1995 WL 169215, at *2 n.5, Fitzer, 119 F. Supp. at 26, not the impres-

sion that Plaintiffs claim the market drew from the statements that Ibis actually made.  The *only*

statement that Ibis is actually accused of making is that it sold its first implanter to a "leading

---

[3] Ibis' expectations of future orders was unequivocally forward-looking.  The Number Nine case (Opp. at 9) is there-
fore inapposite because it did not involve statements about future possibilities, but about the types of products that
the defendant was currently selling at the time it made the challenged statements.  Shaw (Opp. at 9) is likewise off-
base as it also involved a statement (resources were adequate) which was "present-orient[ed]".

[4] The "reasonableness" of a forecast is not an element of the PSLRA Safe Harbor, but only of the more limited safe
harbor found in SEC Rule 175 (17 C.F.R. § 240.3b-6).  The Jakobe case (Opp. at 10) is thus inapposite because it
concerned only SEC Rule 175.

[5] Plaintiffs assert that "it was virtually impossible by the beginning of the Class Period for Ibis to *complete its build*
cycle on new i2000 implanters in time for *shipment by the end of 2003*."  Even if true, this would have no bearing
on whether Ibis could receive implanter orders by that date, which Plaintiffs themselves concede is what "booking"
an order means Opp. at 3 and n.1; see also Mem. at 9.  Likewise, Plaintiffs allege that "customers' negotiations for
the MLD process were a drawn out sine qua non for the booking and shipment of an i2000 implanter order."  Opp.
at 9.  Even if this allegation were adequately pleaded (it is based, however, solely on one former employee's opinion
and does not satisfy the requirements set forth in the First Circuit's Cabletron decision for information attributed to
undisclosed sources, see Cabletron, 311 F. 3d at 38), this would not establish that Defendants actually knew that Ibis
could not receive 1 to 3 implanter orders by the end of 2003.  Plaintiffs do not dispute that the i2000 implanter can
be operated with processes other than the IBM MLD process and thus that an IBM license is thus not a prerequisite
to buying an implanter.  AC ¶ 63(b); Mem. at 9.  In any event, Plaintiffs do not allege any facts (such as communi-