UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------
IN RE IBIS TECHNOLOGY                          )   Civ. No. 04-10446-RCL
                                               )
SECURITIES LITIGATION                          )
---------------------------------------------------------------

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MARCH 1, 2005 AND
MARCH 18, 2005 SUBMISSIONS OF SUPPLEMENTAL AUTHORITY**

Plaintiffs respectfully submit this response to the recent submissions of supplemental authority made by defendants Ibis Technology Corp. and Martin Reid. In a March 1, 2005 filing, defendants submitted copies of SEC Regulation S-X, 17 C.F.R. § 210.10-01(d) (2004) ("SEC Regulation S-X") and *In re Vertex Pharms., Inc. Sec. Litig.*, Civ. A. No. 03-11852-PBS, Slip op. (D. Mass. Feb. 18, 2005) ("*Vertex*"). Defendants' March 18, 2005 filing submitted *In re Cytyc Corp. Sec. Litig.*, Civ. A. No. 02-12399-NMC, Slip op. (D. Mass. March 1, 2005) ("*Cytyc*"). As discussed below, none of these authorities is pertinent, let alone dispositive, of defendants' motion to dismiss and defendants' submissions are nothing more than piling on of weak arguments that should be rejected by the Court.

First, defendants proffer SEC Regulation S-X, which, *inter alia*, addresses *quarterly reviews* by accountants of interim financial reports of public companies. Defendants cite this regulation to bolster their argument, first made at the hearing on this motion to dismiss, that Ibis could not have been aware of any required write down of its 200mm and smaller wafers prior to the company's October 2003 secondary stock offering because the accountants did not recommend a write down during any quarterly review undertaken around the time of that offering. Plaintiffs repeat herein their objection, first made at the hearing on defendants' motion to dismiss, that defendants' self-serving factual rendition of the applicability of SEC Regulation

S-X is not part of the record and should not be considered on a motion to dismiss, since it contradicts the well-pled allegations of the Consolidated Amended Complaint (the "Complaint") without being expressly linked to such allegations. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (in ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs.); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (a document outside the complaint can only be reviewed upon a motion to dismiss if "a complaint's factual allegations are expressly linked to – and admittedly dependent upon" it.)

Moreover, even if the Court were to consider the SEC requirement that public accountants review quarterly reports, the text of SEC Regulation S-X, in and of itself, offers no indication that Ibis' auditors did, in fact, review in particular the carrying value of the 200 mm and smaller wafers.

Finally, a quarterly review is much more limited in scope than a yearly audit. As the Court noted in *In re Worldcom, Inc. Sec. Litig.,* 346 F. Supp. 2d 628 (S.D.N.Y.):

> The objective of an audit is to provide a reasonable basis for expressing an opinion regarding the financial statements taken as a whole. A review of interim financial information does not provide a basis for the expression of such an opinion, because the review does not contemplate a study and evaluation of internal accounting control; tests of accounting records and of responses to inquiries by obtaining corroborating evidential matter through inspection, observation, or confirmation; and certain other procedures ordinarily performed during an audit.

*Id.* at 665-66 (quoting Accountant Liability for Reports on Unaudited Interim Financial Infomration Under Securities Act of 1933, SEC Release No. 6127, 1979 WL 170299 (Sept. 20, 1979)). *See also* Statement on Auditing Standards No. 100 – Interim Financial Information

("SAS No. 100") ¶ 35, attached hereto as Exhibit A)[1]. Thus, it is in the year-end audit process, if at all, that the auditors would more likely have considered and recommended a write-down.

Next, defendants cite both *Vertex* and *Cytyc* for two identical propositions. First, they try to draw support from those cases' rulings that the mere fact of a merger, coupled with allegations of stock price inflation, is insufficient to support an inference of scienter. Neither ruling is apposite to this case. In *Vertex,* Judge Saris found that while the timing of the merger in that case "suggest[ed] a possible motive for the actions alleged by plaintiffs and provide[d] some evidence of scienter, [it did] not independently corroborate plaintiffs' allegations" where there was a paucity of other cognizable scienter allegations. (Slip op. at 26.) Here, by contrast, where plaintiffs' scienter allegations are amply particularized (*see* Plaintiffs' Opposition to Defendants' Motion to Dismiss at 17-20), the motive provided by the desperate need to raise capital through a secondary stock offering (a very different business transaction from a merger) corroborates plaintiffs' other scienter allegations.

Defendants also cite *Vertex* and *Cytyc* to create an entirely new (and specious) argument, obliquely hinted at in their reply brief, that the delineation of the information provided by confidential sources in the Complaint does not meet the judicially imposed standards necessary to satisfy the Private Securities Litigation Reform Act. This argument fails for two reasons.

---

[1] Paragraph 35 of SAS No. 100 states as follows: "The objective of a review of interim financial information differs significantly from that of an audit. Therefore, any communication the accountant may make about the quality, not just the acceptability, of the entity's accounting principles as applied to its interim financial reporting generally would be limited to the effect of significant events, transactions, and changes in accounting estimates that the accountant considered when conducting the review of interim financial information. Further, interim review procedures do not provide assurance that the accountant will become aware of all matters that might affect the accountant's judgments about the quality of the entity's accounting principles that would be identified as a result of an audit." Exhibit A.

As a threshold matter, because defendants did not question plaintiffs' use of confidential sources in their opening brief, they are precluded from doing so now. *See United States v. Kentz*, 251 F.3d 835, 844 (9th Cir. 2001) (attempting to raise an issue for the first time on reply, the court held that the defendant "waived the point by failing to raise it before"); *NLRB v. Star Color Plate Serv., Div. of Einhorn Enters., Inc.*, 843 F.2d 1507, 1510 (2d Cir. 1988) (failure to raise an issue in one's opening brief waives the issue and movants is barred from raising it in reply); *Official Comm. of Unsecured Creditors of Qualitech Steel Corp. Bank Group*, Dist. Ct. Cause No. IP 00-496-C H/G, 2001 U.S. Dist. LEXIS 11768, at *24 (S.D. Ind. July 5, 2001) ("Arguments that are raised for the first time in a reply brief are waived.") (citation omitted).

More importantly, plaintiffs' confidential source allegations do not run afoul of the standards set forth in defendants' cases. The detailed information provided by and about the seven former Ibis employees (Complaint ¶67), including their direct involvement in the i2000 implanter's development and manufacture and consequent knowledge of the inherent delays therewith (employees 1, 2, 3, 6 and 7) or direct involvement in wafer production and consequent knowledge of their growing obsolescence (employees 4 and 5), amply meets the First Circuit's requirement of direct personal knowledge set forth in *In re Cabletron Sys., Inc.*, 311 F.3d 11, 28-31 (1st Cir. 2002). In *Vertex*, by contrast, none of the confidential sources claimed to have personal knowledge of the key factual issues, but, rather, had vague notions of "a common feeling among co-workers" or heard "rumors" and the like. Slip. op. at 24-26. *Cytyc* had even scanter information from confidential sources, as it was based only on the vague, general recollections of a solitary former sales representative. (*Cytyc* at 47.)

Accordingly, for the reasons set forth above, defendants' submissions of supplemental authority should be disregarded and their motion to dismiss should be denied in its entirety.

Dated:  March 29, 2005

          Respectfully Submitted,

**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
SHAPIRO HABER & URMY LLP
Exchange Place
53 State Street, 37th Floor
Boston, MA 02109
(617) 439-3939
*Liaison Counsel for Plaintiffs*

LAW OFFICES BERNARD M. GROSS, P.C.
Deborah R. Gross, BBO#546151
Robert P. Frutkin
1515 Locust Street, Second Floor
Philadelphia, PA 19102
(215) 561-3600

*Lead Counsel for Plaintiffs*

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
Peter C. Harrar
Aya Bouchedid
270 Madison Avenue
New York, NY 10016
(212) 545-4600

LAW OFFICES OF KENNETH ELAN
Kenneth Elan
217 Broadway, Suite 606
New York, NY 10007
(212) 619-0261

KLEIN & SOLOMON, LLP
Joseph P. Garland
275 Madison Avenue
New York, NY 10016
(212) 213-1812

*Plaintiffs' Counsel*