UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

_____
                              )
IN RE IBIS TECHNOLOGY SECURITIES)      Case No. 04 cv 10446 RCL
LITIGATION                    )
_____)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTIONS TO
THE REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

SHAPIRO HABER & URMY LLP
Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
Exchange Place
53 State Street, 37th Floor
Boston, MA 02109
(617) 439-3939
*Liaison Counsel for Plaintiffs*

LAW OFFICES BERNARD M. GROSS, P.C.
Deborah R. Gross, BBO#546151
Robert P. Frutkin
1515 Locust Street, Second Floor
Philadelphia, PA 19102
(215) 561-3600

*Lead Counsel for Plaintiffs*

I.     **INTRODUCTION**

Plaintiffs submit this response to defendants' objection to the Magistrate Judge's Report and Recommendation ("the Report"). Defendants object to the Report to the extent it denies their motion to dismiss plaintiffs' allegations that defendants issued false and misleading financial statements by failing to writedown by $11 million the carrying value of Ibis's 200mm wafer production line assets. As is evident from the Report, however, the Magistrate carefully considered all of the arguments advanced by the parties in their lengthy submissions and at oral argument and correctly found that plaintiffs satisfied all of the requirements for pleading that aspect of their claim, including scienter. Defendants seek only to rehash their flawed arguments and their objection to the Report should be denied.

II.    **ARGUMENT: MAGISTRATE DEIN CORRECTLY DETERMINED THAT PLAINTIFFS' IMPAIRMENT ALLEGATIONS STATE A CLAIM**

   A.    **The Complaint Alleges Numerous Actionable Misstatements and Omissions Due to Defendants' Failure to Impair Ibis's 200mm Assets as of June 30, 2003**

Defendants' argument that plaintiffs do "not allege an actionable misstatement or omission" is belied by the plain allegations of the Complaint, which clearly alleges that defendants issued financial statements that were false and misleading because they falsely inflated, by $11 million, the carrying value of Ibis's 200mm wafer production line in violation of GAAP (particularly FAS 144), and made other false and misleading statements disseminated to the public on July 23, 2003, October 2, 2003, October 16, 2003, October 22, 2003, and November 4, 2003. Complaint ¶¶ 47(a), 47(d), 49(a), 49(c), 50, 53, 55, 56, 58, 59.[1]

---

[1] Defendants cannot argue that the "who, what, when and where" of the alleged fraud are not sufficiently particularized. Plaintiffs identify the financial statements, the particular line items, the dates and the dollar amounts involved.

420966                                             -1-

Defendants dispute the Magistrate's conclusion that Ibis violated GAAP, a conclusion that was properly drawn from the well-pled allegations in the Complaint.[2]  For example, the Magistrate properly concluded, based on the facts pled in the Complaint, that by June 30, 2003, Ibis's 200mm wafer production assets had become impaired and should have been written down, *inter alia*, because Ibis had ceased "selling 1000 implanters due to lack of demand" and because both the industry and "Ibis in particular were moving away from smaller sized wafers."  Report at 32; Complaint ¶19.  In addition, plaintiffs cited specific facts (¶¶41-47, 55, 59, 68), statistical data (¶43) and confidential sources (¶67(a-g)) in support of their impairment claim that the Magistrate relied on in support of the finding that defendants violated FAS 144.  As the Magistrate concluded, "[these allegations] 'lend credence to the theory that the value of [Ibis's asset group] was declining' well before the start of the Class Period."  Report at 33 (citation omitted).

Wholly ignoring these specific factual allegations, defendants make a number of specious arguments.  First, they erect a strawman argument that plaintiffs cannot claim that Ibis did not undertake an impairment review when the Complaint's allegations reveal that it did so.  Obj. at 12-13.  In fact, as the Complaint makes clear, regardless of how defendants characterize what they did, the well-pled allegations of the Complaint clearly show that a proper impairment review would have resulted in an $11 million writedown, *e.g.*, Complaint ¶46, and that Ibis's financial condition and results were materially overstated as a result.

Next, defendants stray into an impermissible gloss on the issues of fact in dispute to

---

[2] On a motion to dismiss, plaintiffs are not required to plead evidence which would compel only one conclusion. *See, e.g., Maldonado v. Dominguez*, 137 F.3d 1, 9 (1st Cir. 1998); *Watterson v. Page*, 987 F. 2d 1, 3 (1st Cir. 1993)(plaintiffs' allegations are assumed to be true and all inferences are construed in plaintiffs' favor in analyzing a motion to dismiss).

question whether plaintiffs have demonstrated that "the carrying value of Ibis's 200mm water production line exceeded the expected cash flows from the future use and/or disposition of that line as of June 30, 2003." Obj. at 13. Their sole counter to plaintiffs' allegations on this point is their argument that the sale of a 1000 implanter to Simgui in 2002 shows that the 200mm wafer line was not obsolete one year later in 2003. In fact, this sale directly supports the allegation that Ibis was getting out of the smaller wafer business by selling off the very machine that made those smaller wafers (*see* Complaint ¶42), and defendants are left with nothing on this score.

Defendants then attack Magistrate Dein's conclusion that the Complaint adequately alleges that the semiconductor industry in general and Ibis in particular were "moving away" from smaller sized wafers, insisting that those allegations do not establish that Ibis violated GAAP. Obj. at 15. In this attack, defendants call for "sales figures from manufacturers, write downs by other manufacturers or any other contemporaneous information demonstrating that the semiconductor industry as a whole was 'moving away' from 200 mm wafers before June 30, 2003," Obj. at 15-16, but neither cite any authority that requires plaintiffs to plead such information nor acknowledge the plethora of other information that plaintiffs allege. Indeed, plaintiffs are neither required to plead evidence, nor are they required to prove their case at this stage. *See, e.g., Maldonado,* 137 F.3d at 9. The "task of weighing contrary accounts is reserved for the fact finder." *Aldridge v. A.T. Cross Corp.*, 284 F. 2d 72, 82 (1st Cir. 2002).

Defendants' efforts to distinguish *In re Number Nine Visual Tech. Corp Sec. Litig.,* 51 F. Supp. 2d. 1, 26 (D. Mass. 1999) in this context are without merit. Similar to *Number Nine*, the motion to dismiss herein was denied in part because plaintiffs' well-pled Complaint alleges many facts evidencing the fact that defendants' older 200mm products were obsolete and were suspiciously not written-down until a mere two months after the much needed secondary

offering[3]. While the Court in *Number Nine* did rely on industry trade publications in support of plaintiffs' obsolescence claim, *Id.*, neither *Number Nine* nor any other authority cited by defendants requires that plaintiffs rely on such publications, as defendants seem to suggest, Obj. at 17[4]. Thus, as noted by the Magistrate, plaintiffs have met their burden to plead "particularized factual support for their claim that the inventory had become obsolete by the start of the Class Period" by "showing that even as early as 2002, the semiconductor industry in general and Ibis in particular were moving away from the smaller sized wafers." Report at 32-33 (citing *Number Nine,* 51 F. Supp. 2d. at 26); *see also* ¶ 25[5].

Finally, defendants try to claim that plaintiffs' impairment claims can be defeated as a matter of law because Ibis's announcement of third quarter results noted that the Company was "currently undergoing 200mm evaluation at two customers." Obj. at 18-19. However, as the Magistrate herself noted, defendants' inference is not compelled because those wafers could, in fact, have been manufactured on the newer i2000 implanter. Report at 34. As the Magistrate recognized, here and with defendants' other self-serving factual arguments, there is no basis to draw all of the factual inferences in defendants' favor, and her Report should be upheld in this regard.

---

[3] Plaintiffs' Complaint even cites a former employee who said that the machines which produced the smaller wafers were obsolete as far back as 2001. ¶ 67(e).
[4] The secondary offering in *Number Nine* preceded the truthful disclosure by seven months, close enough in time to justify denying the motion to dismiss. Here, more compellingly, there were only two months between the secondary offering and subsequent disclosure.
[5] Defendants also make a fruitless attempt to argue that the lack of a restatement bolsters their assertion that there was no fraud here. Obj. at 10. Notably, defendants fail to cite any legal authority that requires a restatement to bring a fraud claim. Moreover, plaintiffs cannot control whether defendants choose to come clean with their fraud or continue to perpetuate it. Finally, whether the lack of a restatement leads to the conclusion that there was no fraud is a question of fact inappropriate for resolution on a motion to dismiss. *See, e.g., Quaak v. Dexia S.A.,* 357 F. Supp. 2d 330, 340 (D. Mass. 2005).

B.  **The Magistrate Correctly Concluded That
Plaintiffs' Adequately Allege Scienter**

Plaintiffs allege with great specificity facts that establish, for purposes of a motion to dismiss, that defendants had the requisite scienter. The Report at pages 34-38, finds that scienter is properly pled. As shown below, each one of the arguments advanced by defendants in their objection to the Report was considered and properly rejected by the Magistrate.

Scienter may be shown by direct or indirect evidence of defendants' knowledge and/or recklessness, or motive and opportunity, or a combination of both. *In re Cabletron Sys., Inc.*, 311 F. 3d 11, 28, 38-39 (1st Cir. 2002). The First Circuit has "rejected any rigid formula for pleading scienter" relying on a case-by-case, fact specific approach, examining the totality of the circumstances. *Id.*, 311 F. 3d at 39-40. Citing specific facts (¶¶ 41-47, 49, 55, 59, 68), statistical data (¶ 43) and confidential sources (¶ 67(a-g), the Complaint alleges defendants' actual knowledge and/or recklessness with respect to the obsolescence of the 1000 implanters and the necessity of a write-down prior to the Class Period. Plaintiffs allege that defendant Reid had publicly acknowledged *before* the start of the Class Period that the semiconductor industry was moving away from 200mm wafers,[6] the Company was moving away from smaller sized wafers and expected that the shift would continue, and that there would be an increase in demand for 300mm wafers throughout the remainder of 2003. Complaint ¶¶ 44(c), 44(e), 44(g), 44(j); Report at 2, 30, 33. Moreover, plaintiffs allege detailed facts demonstrating that prior to the Class Period, Ibis had stopped selling 1000 implanters due to lack of demand. *See, e.g.,* ¶¶ 19,

---

[6] Plaintiffs allege several quotes attributed to Reid in the Complaint, including "[t]his order demonstrates that the i2000 implanter provides what our customers are looking for: a low cost-of-ownership system that will produce high quality 300mm, thin SOI wafers (¶44(d))," and "chipmakers are moving to larger, 300mm wafers (¶44(e))," both of which were attributed to Reid in September and November, 2002, respectively, well before the Class Period began. This certainly addresses defendants' request for allegations "demonstrating that the semiconductor industry as a whole was 'moving away' from 200mm wafers before June 30, 2003." Obj. at 16.

420966                                                    -5-

44(d-e). Plaintiffs also allege that during the fiscal quarter ended June 30, 2003, *97% of Ibis's wafer sales were comprised of 300mm products*, *as compared to only 13% precisely a year earlier*; plaintiffs further allege that in the quarter ended September 30, 2003, *98% of Ibis's wafer sales consisted of 300 mm wafers*. Complaint ¶¶ 43, 67(e).[7] Thus, plaintiffs have established for pleading purposes "that the defendants consciously intended to defraud, or acted with a high degree of recklessness," which may be done by pleading particularized "various facts and circumstances indicating fraudulent intent to show a strong inference of scienter" *A.T. Cross*, 284 F. 2d at 82.

Defendants argue that plaintiffs merely plead GAAP violations, which, absent pleading additional circumstances indicative of fraudulent intent, is insufficient to establish scienter. However, as specifically detailed in the Report, plaintiffs offer a plethora of "additional evidence of scienter" to overcome defendants' objections, showing that "Ibis was obviously aware of the eventual need to write-down the equipment." Report at 35; Complaint ¶ 66.[8] Defendants base much of their scienter arguments on the timing of the FAS 144 write-downs, claiming that the decision of whether to and when to take a charge under FAS 144 involves "complex and subjective accounting issues that depend on many factors." Obj. at 20.[9] However, as is clear from the detailed allegations cited above, plaintiffs cite to objective evidence that the 200mm

---

[7] The Magistrate noted, "[t]here were no changes between the initial pre-Class period recognition of the impairment and the actual write-down which would explain the delay. Nor were there any potential anticipated events which would explain why the write-down was not taken earlier." Report at 35-36.

[8] *See. e.g., In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 147 (D. Mass. 2001)(GAAP violations must be combined with other circumstances indicative of fraudulent intent to raise a strong inference that Defendants acted with scienter).

[9] Defendants' arguments regarding the subjectivity of the accounting treatment lead to the absurd conclusion that there could never be an accounting fraud. Courts have rejected this proposition. *See, e.g, In re Chambers Dev. Sec. Litig.*, 848 F. Supp. 602, 619 (W.D. Pa. 1994). Moreover, by asking the Court to defer to defendants' subjective accounting decisions, defendants are in essence asking the Court for summary judgment on the pleadings that, as a matter of law, defendants' accounting treatment was proper. Such a request is wholly inappropriate. *See also In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1421 (3d Cir. 1997) (defendants' GAAP alleged violations are

product line was obsolete prior to the commencement of the Class Period, and the only appropriate course of action was a write-down prior to the Class Period. The Magistrate correctly found that "it can be inferred that during the Class Period, the defendants understood that there was *virtually no remaining demand* for 200mm wafers, but they nevertheless delayed the decision to write-down Ibis's impaired assets." Report at 20 (emphasis added). As further noted by the Magistrate, "these allegations… are sufficient to support a strong inference that the defendants either *knowingly* misrepresented the value of the small wafer asset group at the time they made the challenged statements, or recklessly disregarded facts indicating that those assets were impaired and should have been written down in the fiscal quarter ended June 30, 2003." Report at 37.[10] Plaintiffs' allegations lend support to the theory that defendants knew the value of the 200mm wafer production line was declining towards zero before the start of the Class Period, *objectively* rendering obsolete the 200mm wafer line. *Number Nine*, 51 F. Supp. 2d at 26; Report at 33. "[T]he fact that… defendants published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter." *A.T. Cross*, 284 F. 2d at 83.

Defendants cite a host of cases, Obj. at 20-22, for the general proposition that GAAP interpretations are subjective. However, that does not preclude a finding of securities fraud violations.[11] Each of these cases is distinguishable.[12] The plaintiffs in *In re Stone & Webster Sec. Litig.,* 414 F. 3d 187, 201 (1st Cir. 2005) could not establish scienter mainly due to the fact that there was no allegation of the magnitude of the accounting shenanigans, and thus the Court

---

questions of fact not to be determined at pleading stage).
[10] *Number Nine,* 51 F. Supp. 2d. at 27 (evidence of industry knowledge that defendant's product was becoming obsolete sufficient to support strong inference of scienter)(emphasis added); *see* Report at 32.
[11] One only has to look at Enron or Worldcom to learn that lesson.
[12] Due to the constraints of the Court's ten page limit, plaintiffs cannot further expand upon these cases.

could not assume that any knowledge of the alleged fraud reached the CEO or CFO. With respect to *In re Galileo Corp. S'holders Litig.*, 127 F. Supp. 2d 251, 265-66 (D. Mass 2001), the subjective nature of the accounting treatment therein was not the fatal flaw in plaintiff's case; rather, unlike the instant case, where plaintiffs' detailed allegations show that defendants were on clear notice of 200mm wafer industry and Ibis trends in deferring the write-down to allow Ibis to effectuate its secondary offering, the plaintiff in *Galileo* did not provide adequate evidence of the knowledge defendants had or should have had with respect to the collectibility of receivables from one customer. Absent such a showing, the court in *Galileo* could not address whether the accounting treatment chosen was reasonable.[13]

In addition to actual knowledge and/or recklessness, plaintiffs also properly allege that defendants had motive and opportunity to commit the fraud. *See, e.g., Cabletron*, 311 F. 3d at 38. Plaintiffs plead that defendants knew the Company was running out of cash, which led to a reduction in work force and an increase in the number of mandatory days off for employees. Complaint ¶¶ 35, 68. While these cost-cutting moves saved the Company money, it made it difficult for the Company to increase production of wafers and implanters, and the Company remained mired in a cash-poor position. *Id*. Thus, defendants planned a public offering of stock in October, 2003, before the 2003 year-end financials were prepared.[14] To successfully carry out

---

[13] *Galileo* recognized that where well-pled facts support a strong inference of scienter that defendants knew, or recklessly disregarded, that their accounting treatment was wrong in light of those facts, the court will dispute the judgment of the defendants and deny a motion to dismiss. *Galileo*, 127 F. Supp. 2d at 265-66. Defendants' citation to other cases is similarly unavailing because the facts in those cases are very different from those pled *sub judice*. In *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 851 (N.D. Ill. 2003), the Court's determination of a lack of scienter was based in large part on the immateriality of the net income overstatement. In *Kriendler v. Chemical Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1152 (N.D. Ill. 1995), the Court held scienter was not established mainly because there were no allegations of: (1) how the defendants knew the denial of a permit in issue would eventually lead to a write-down; (2) when the defendants knew or should have known the write-down would occur; (3) what information defendant withheld from the market; and (4) defendant's general knowledge of industry trends.

[14] "Defendants… chose to wait until the end of the Class Period to make the disclosure of the coming write-down, knowing that Ibis's independent auditors would be auditing Ibis's annual financial statements" and would have

the public offering and raise sufficient funds for the Company to continue as a going concern, defendants had to delay the timing of the impending impairment charge in order to effectuate the secondary offering at an artificially inflated stock price. Thus, defendants were motivated to and did in fact conceal Ibis's true financial and operating condition, allowing Ibis to close its public offering at the artificially inflated price of $13.25 per share on October 23, 2003, a sharp increase from a low of $3.90 per share in the second quarter of 2003, the three months ended June 30, 2003. Complaint ¶¶ 47(d), 68; Report at 36. As various courts have held, allegations of a desire to raise capital by means of a secondary offering may raise an inference of scienter and the Magistrate correctly found that the public offering here demonstrates defendants' motive.[15]

Moreover, Defendant Reid was privy to confidential and proprietary information concerning Ibis's operations, financial condition, and present and future business prospects. Complaint ¶¶9, 21. He had access to internal corporate documents, contact with corporate officers and employees, and knowledge of information presented at management and Board of Directors' meetings. Complaint ¶9. As such, it can be inferred that Reid understood the importance of the stock offering to Ibis's future and therefore to his own position as head of the company. Therefore, plaintiffs have alleged facts not only showing Reid's opportunity to commit the fraud, but also supporting the notion that Reid stood to benefit from the fraud.

---

required a write-down. Complaint ¶ 46. The close proximity between the issuance of the false and misleading statements (July 23, 2003- November 4, 2003) and the disclosure less than two months after the last such statement (December 15, 2003) is further evidence of scienter. *See, e.g., Geffion v. Micrion Corp.*, 249 F. 3d 29, 36 (1st Cir. 2001).

[15] *See, e.g., In re Resource America Sec. Litig.*, 2000 WL 1053861 at *6 (E.D. Pa. 2000); *see also In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 206 (E.D.N.Y. 2000); *see also* Report at 35-36.
    The case relied upon by defendants, *In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 643 (S.D. Tex. 2002), merely holds that, "the majority of cases addressing this motive have decidedly held that a *generalized* desire to raise capital is inadequate to raise a strong inference of scienter as a matter of law (emphasis added)." As detailed herein and in the Complaint, the very life of Ibis was dependent upon hiding the Company's true financial status until after the company could close the secondary offering due to its cash poor position caused by its slow sales of its i2000 implanter. Complaint ¶¶ 47(d), 68. There is nothing generalized about these allegations.

Allegations of motive to commit fraud in order to maintain one's survival in a company, and of the company itself, support a showing of scienter.[16]  *A.T. Cross*, 284 F. 3d at 83.[17]

### III.   CONCLUSION

Based on the well pled allegations of the Complaint, the Report should be accepted and defendants' objection should be denied as to plaintiffs' impairment claims.

Dated: November 23, 2005                                  Respectfully submitted,


**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
SHAPIRO HABER & URMY LLP
Exchange Place
53 State Street, 37th Floor
Boston, MA 02109
(617) 439-3939

*Liaison Counsel for Plaintiffs*

LAW OFFICES BERNARD M. GROSS, P.C.
Deborah R. Gross, BBO#546151
Robert P. Frutkin
1515 Locust Street, Second Floor
Philadelphia, PA 19102
(215) 561-3600

*Lead Counsel for Plaintiffs*

---

[16] This addresses defendants' argument, Obj. at 25, that "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from [the] fraud."

[17] Defendants further argue, Obj. at 25 n. 10, that the Magistrate "erred in failing to conclude that the absence of trading by Mr. Reid, or indeed any other Ibis official for that matter- materially weakens, if not undermines, any inference of scienter." This is simply untrue as a matter of law. The absence of insider trading does not preclude an inference of scienter, especially where, as here, plaintiffs allege that Defendants stood to benefit from the alleged fraud. *Crowell v. Ionics, Inc.,* 343 F. Supp. 2d 1, 14-16 (D. Mass. 2004). Defendants also ignore plaintiffs' allegations that Reid, "because of the public common stock offering, was not able to sell his personal shares of Ibis during much of the Class Period." ¶68.

        WOLF HALDENSTEIN ADLER
        FREEMAN & HERZ LLP
        Peter C. Harrar
        Aya Bouchedid
        270 Madison Avenue
        New York, NY 10016
        (212) 545-4600

        LAW OFFICES OF KENNETH ELAN
        Kenneth Elan
        217 Broadway, Suite 606
        New York, NY 10007
        (212) 619-0261

        KLEIN & SOLOMON, LLP
        Joseph P. Garland
        275 Madison Avenue
        New York, NY 10016
        (212) 213-1812

        *Plaintiffs' Counsel*