UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
**IN RE IBIS TECHNOLOGY**                   )
**SECURITIES LITIGATION**                   )        Civ No. 04-10446 RCL
_____)


**DEFENDANTS' RESPONSE TO PLAINTIFFS'
PARTIAL OBJECTION TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**


GOODWIN PROCTER LLP
Brian E. Pastuszenski (BBO #391030)
Christine S. Chung (BBO #631724)
William J. Trach (BBO #661401)
Exchange Place
53 State Street
Boston, Massachusetts 02109-2881
(617) 570-1000
Attorneys for Defendants
Ibis Technology Corp. and Martin J. Reid

**PRELIMINARY STATEMENT**[1]

On July 23, 2003, Ibis Technology Corp. CEO Martin J. Reid was quoted as saying that Ibis "continue[d] to anticipate booking orders for one-to-three implanters during this fiscal year." See Amended Complaint ("AC") ¶ 49 ("the Implanter Projection"); Ibis Tech. Corp. July 23, 2003 Press Release, Ex. 1 at 1 ("Q2 Earnings Release").[2] Ibis was careful to identify this projection as forward looking. It also warned investors in specific terms that it might not achieve its forecast, why that might happen, and what could occur. On February 5, 2004, only five weeks after the date it had forecasted, Ibis announced that it had received an order for one implanter with an option to buy a second implanter. AC ¶ 64. Although Ibis's forecast was "off" by only five weeks, Plaintiffs nevertheless challenge the Implanter Projection as fraudulent and argue that Mr. Reid has both primary and control person liability ("the Implanter Projection Claims).[3] In her report and recommendation ("Report"), the Magistrate Judge recommended that the Court dismiss the Implanter Projection Claims under both prongs of the Safe Harbor for forward-looking statements provided in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Id. The Safe Harbor was enacted to provide companies like Ibis with protection from knee-jerk securities claims like these. Indeed, Congress recognized that passage of the Safe Harbor was necessary for technology companies like Ibis which "because of the volatility of their stock price . . . are particularly vulnerable to [abusive] securities fraud lawsuits when projections do not ma-

---

[1] The exhibits accompanying the brief ("Ex.") contain documents referred to in the Complaint, which this Court may consider in deciding the motion. See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996).

[2] The complaint also challenges similar statements in Ibis's October 22, 2003 press release announcing third quarter earnings (AC ¶¶ 52-54) (Ex. 2) and in its Third Quarter 2003 10-Q (Complaint ¶¶ 56-57) (Ibis Obj., App. Tab 5 at 18).

[3] Defendants respectfully refer the Court to the detailed discussion of the legal standards governing liability under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in their memoranda in support of their motion to dismiss, and in their partial objection to the Magistrate's report and recommendation.

1

terialize . . . perhaps because of changes . . . in the timing of an order." H.R. Conf.Rep. No. 104-369, 104th Cong. 2d Sess., at 44, reprinted in 1995 U.S.C.C.A.N. 730.

In their objection to the Report ("Obj."), Plaintiffs attempt to avoid dismissal by concocting legal standards that appear nowhere in the PSLRA or any cases that construe the Safe Harbor. Because the Implanter Projection is immune from liability under the Safe Harbor, the Implanter Projection Claims fail as a matter of law and should be dismissed with prejudice.[4]

## ARGUMENT
### I. The Implanter Projection Is Protected From Liability Under The Safe Harbor.

The Safe Harbor has two parts. The "first shelters forward-looking statements that are accompanied by meaningful cautionary statements," without regard to the defendants' state of mind. Greebel v. FTP Software, Inc., 194 F.3d 185, 201 (1st Cir. 1999) (citing 15 U.S.C. § 78u-59(c)(1)(B)); see also In re Stone & Webster, Inc. Sec. Litig., 414 F.3d 187, 212 (1st Cir. 2005); Harris v. Ivax Corp., 182 F.3d 799, 803 (11th Cir. 1999).[5] The second precludes liability for forward-looking statements unless the speaker had "actual knowledge" that the statements were false or misleading when made. Greebel, 194 F.3d at 201; Report at 23.[6]

#### A. The Implanter Projection Is Protected From Liability Under the First Prong Of The Safe Harbor.

The Implanter Projection undeniably was forward looking. It appeared in the section of the Q2 Earnings Release entitled "Corporate Outlook" and it made a prediction respecting possi-

---

[4] The full text of the Safe Harbor is set out in Ex. 1 attached to this brief. In addition to the Safe Harbor, Defendants moved to dismiss the Implanter Projection Claims for a number of other reasons that are set forth in Defendants' motion to dismiss and supporting memoranda. To the extent the Magistrate Judge did not recommend dismissal of the Implanter Projection Claims based on all of the grounds set forth in the Motion to Dismiss, Defendants object to that extent to the Magistrate Judge's recommended ruling on the Implanter Projection Claims.

[5] While Plaintiffs argue that the Defendants' state of mind is relevant under the first part of the Safe Harbor, Obj. at 12 n.6, the First Circuit has held otherwise. See Stone & Webster, 414 F.3d at 212.

[6] Congress included the Safe Harbor in the PSLRA because it recognized the harm caused by "abusive [securities] litigation [that] severely affects the willingness of corporate managers to disclose information to the marketplace." H.R. Conf.Rep. No. 104-369, 104th Cong. 2d Sess., at 44, reprinted in 1995 U.S.C.C.A.N. 730.

ble future implanter orders. In the Section of the Q2 Earnings Release entitled "'Safe Harbor' Statement under the Private Securities Litigation Reform Act of 1995," Ibis warned investors that the Release contained "forward-looking statements that are subject to certain risks and uncertainties including statements . . . that the Company will book orders for one-to-three implanters during this fiscal year . . . ." See Ex. 2 at 2. As the Safe Harbor required, the Implanter Projection also was accompanied by meaningful cautionary language. The Q2 Earnings Release warned investors that Ibis's prediction of possible future implanter orders was "subject to risks and uncertainties that could cause actual results to differ materially from those set forth or implied by forward-looking statements," such as "product demand and market acceptance risks" and the "Company's limited history with regard to sales of implanters." Id.[7]

As the Magistrate Judge correctly held, Ibis's warnings about risks related to its Implanter Projection constituted "meaningful cautionary language" for purposes of the first prong of the Safe Harbor. Report at 24-25. Ibis's warnings put investors on notice of the risk that Ibis might not receive an implanter order before the end of 2003, explained how and why that might occur, and told investors what would happen if Ibis failed to achieve its forecast of possible future implanter orders. Id. at 25. "Where, as here, investors have been warned of risks of a significance similar to that actually realized, they are sufficiently on notice of the danger of the investment to make an intelligent decision about it according to their own preferences for risk and reward." Id. at 25-26 (quoting Harris, 182 F.3d at 807) (internal quotations omitted).

---

[7] Risk factors set forth in Ibis's 2002 10-K, which were incorporated by reference into the Q2 Earnings Release, further warned investors that Ibis had sold only eight Ibis 1000 implanters and only one i2000 implanter, and that the Company "d[id] not expect to sell more than a limited number of implanters in the near future." Report at 13, (citing Ibis's 2002 Annual Report, Form 10-K for the year ended December 31, 2002, Ibis Obj., App. Tab 2 at 16). See In re Blockbuster Inc. Sec. Litig., No. 3:03-CV-0398-M, 2004 WL 884308, at *4 (N.D. Tex. Apr. 26, 2004) (Safe Harbor permits meaningful cautionary language in readily available document to be incorporated by reference). Ibis also warned in its 2002 10-K that "the delay in the manufacture or delivery of even one unit would have a material adverse impact on our quarterly or annual results of operations." Id.

In their Objection, Plaintiffs do not dispute that the Implanter Projection was forward looking, nor do they ague that Magistrate Judge erred in her analysis of Ibis's cautionary language, according to the standard set forth in the Report.[8] Obj. at 8. Instead, Plaintiffs urge the Court to adopt an entirely different legal standard for the first part of the Safe Harbor – one that cannot be found in the PSLRA or its legislative history. Citing Harden v. Raffensperger, Hughes & Co., 65 F.3d 1392 (7th Cir. 1995) – a case that predates the PSLRA, does not even mention the Safe Harbor (which did not yet exist), and construed only the pre-PSLRA "bespeaks caution" doctrine – Plaintiffs argue that for a warning to qualify as a meaningful cautionary statement under the PSLRA, it must be "sufficient to render the defendants' false projection immaterial as a matter of law."[9] Obj. at 8. According to Plaintiffs, "[t]he case-by-case inquiry required under the [first part of the] safe harbor is whether the cautionary language relied on is sufficiently linked to the risks involved to render the additional disclosures plaintiffs seek immaterial as a matter of law." Id.

What the Safe Harbor actually requires, however, could not be plainer from the language of the statute. To invoke the protection of the first part of the Safe Harbor, issuers need only "mention important factors that could cause actual results to differ materially from those in the forward-looking statement." Report at 24 (quoting Harris, 182 F.3d at 807) (internal quotations omitted). Issuers are not required to list *all* factors that could cause results to differ. Harris, 182 F.3d at 807 (emphasis in original). Indeed, "[i]t is not [even] necessary for a defendant to de-

---

[8] Because Plaintiffs do not even address whether the Implanter Projection was accompanied by "meaningful cautionary language," according to the legal standard set forth in the Report, they have waived any objection to that aspect of the Magistrate Judge's recommended ruling. See Report n.20.

4

scribe the particular factor that ultimately causes the forward-looking statement not to come true," id., let alone that there be any "linkage" of the sort Plaintiffs claim the law should require. Accord H.R. Conf.Rep. No. 104-369, 104th Cong. 2d Sess., at 44; reprinted in 1995 U.S.C.C.A.N. 730. Ibis's meaningful cautionary disclosures were more than sufficient to invoke the Safe Harbor, and nothing in the PSLRA suggests that Plaintiffs' "linkage" and "materiality" standard is the law. For this reason alone, the Court should dismiss the Implanter Projection Claims.[10] Report at 26; see also Harris, 182 F.3d at 807 (affirming dismissal of claim involving forward-looking statement on Safe Harbor grounds).[11]

### B. The Implanter Projection Is Protected From Liability Under The Second Prong Of The Safe Harbor.

The Court should dismiss the Implanter Projection Claims for the additional and independent reason that the Complaint does not plead with particularity facts showing that Ibis and

---

[9] Because the complaint pre-dated the passage of the PSLRA, the Safe Harbor did not apply to the statements at issue in Harden. See 15 U.S.C.A. 78u-5, Effective and Applicability Provisions ("This section shall not affect or apply to any private action arising under this chapter . . . commenced before and pending on Dec. 22, 1995.").

[10] In re Unicapital Corp. Sec. Litig., 149 F. Supp. 2d 1352 (S.D. Fla. 2001) (Obj. at 9), is inapposite. That case involved statements that were comments on past performance and not forecasts. In addition, the defendants' "generic" and "boilerplate" disclosures did not warn investors of the specific risk at issue (that pending federal legislation would wipe out the value of certain assets) or any other risks of "similar significance." Here, by contrast, the Implanter Projection was undeniably forward looking. Ibis also warned investors of the specific risk at issue (that it might not receive orders for implanters in the future) and explained why that might occur and what could happen as a result. In any event, interpreting Unicapital as supporting Plaintiffs' linkage theory would ignore both Harris v. Ivax (which is controlling law in the Circuit where Unicapital was decided) and the PSLRA.

[11] Plaintiffs' suggestion that the application of the Safe Harbor is too fact-specific ever to be decided on a motion to dismiss is ludicrous. There is a long list of cases that have dismissed challenges to forward-looking statements on Safe Harbor grounds. See, e.g., Harris, 182 F.3d at 870; In re Copper Mountain Sec. Litig., 311 F. Supp. 2d 857, 883 (N.D. Cal. 2004); In re Kindred Healthcare, Inc. Sec. Litig., 299 F. Supp. 2d 724, 739 (W.D. Ky. 2004); Stavros v. Exelon Corp., 266 F. Supp. 2d 833 (N.D. Ill. 2003); Cutsforth v. Renschler, 235 F. Supp. 2d 1216, 1241 (M.D. Fla. 2002); In re Champion Enters., Inc. Sec. Litig., 144 F. Supp. 2d 848 (E.D. Mich. 2001). Further, the legislative history specifically contemplates that courts will decide Safe Harbor cases at the motion to dismiss stage: "The use of the words 'meaningful' and 'important factors' are intended to provide a standard for the types of cautionary statements upon which a court may, where appropriate, decide a motion to dismiss . . . ." H.R. Conf.Rep. No. 104-369, at 44. Moreover, Plaintiffs' claim that they are "tak[ing] defendants to task for failing to disclose the [alleged] protracted build schedule and licensing process" for sales of i2000 implanters (Obj. at 9) does not save the Implanter Projection Claims from the first part of the Safe Harbor, because these allegations are irrelevant to whether Ibis's risk disclosures satisfied the "meaningful cautionary language" test.

5

Mr. Reid had "actual knowledge" that the Implanter Sales Projection was false when made. See 15 U.S.C. § 78u-5(c)(1)(B); Greebel, 194 F.3d at 201.  A forecast is not actionable simply because it turns out to be incorrect.  Rather, to survive a motion to dismiss under the second part of the Safe Harbor, a plaintiff must "plead with particularity facts giving rise to a strong inference that the defendant made the [challenged] statements with actual knowledge that they were false or misleading."  Report at 24 (citing 25 U.S.C. § 78u-4(b)(2); 15 U.S.C. § 78u-5(c)(1)(B); and Cutsforth v. Renschler, 235 F. Supp. 2d 1216, 1227 (M.D. Fla. 2002) (emphasis in original)). Accord In re Advanta Corp. Sec. Litig., 180 F.3d 525, 535-36 (3d Cir. 1999); Stavros v. Exelon Corp., 266 F. Supp. 2d 833, 847 (N.D. Ill. 2003); In re Noven Pharms., Inc. Sec. Litig., 238 F. Supp. 2d 1315, 1319 (S.D. Fla. 2002).

Because Ibis did receive an implanter order (with an option on a second) only five weeks later than it had projected it would, Plaintiffs do not even try to argue that Ibis and Mr. Reid had actual knowledge that the Implanter Projection was false when made.  Instead, Plaintiffs ignore the statute's plain language and again concoct a different legal standard.  Plaintiffs argue that "[t]he issue is not whether defendants knew as an absolute fact that the sale projections were unattainable.  Rather, it is whether defendants' projections were unrealistic in light of the protracted build and licensing negotiation schedule and the fact that the only completed sale was to IBM, where the licensing was not an issue."  Obj. at 12.  What Plaintiffs are in fact arguing is that the Court revert to the legal test for forward-looking statements under SEC Rule 175 (17 C.F.R. ¶ 240.3b-6), which existed prior to passage of the Safe Harbor and immunized such statements only if they had a "reasonable basis."

As the Magistrate Judge correctly held, not even recklessness is sufficient to establish liability for a forward-looking statement under the second prong of the Safe Harbor.  Report at 24

(citing Greebel, 194 F.3d at 200-01 (distinguishing "actual knowledge" standard of PSLRA Safe Harbor from definition of scienter under 10(b))); id. at 27 (citing Cutsforth, 235 F. Supp. 2d at 1232).[12] Rather, a plaintiff must both plead and prove facts demonstrating "actual knowledge" of falsity for a statement to lose protection under the Safe Harbor's second prong. Plaintiffs' contention that the Implanter Projection was "unrealistic" and made without a reasonable basis is an attempt to allege negligence or perhaps recklessness, but in no event alleges the "actual knowledge" of falsity required to overcome the second part of the Safe Harbor.

None of the cases Plaintiffs cite support their argument that a statement loses protection under the Safe Harbor's second prong when it is allegedly "unrealistic" or made without a reasonable basis. Hanon v. Dataproducts Corp., 976 F.2d 497 (9th Cir. 1992) (Obj. at 12), predated the PSLRA and does not even mention the Safe Harbor or the "actual knowledge" standard. The unreported district court decision in In re Viropharma, Inc. Sec. Litig., No. 02-1627, 2003 WL 1824914 at *9 (E.D. Pa. Apr. 7, 2003) (Obj. at 11), involved an interpretation of the 10(b) scienter standard, not the more stringent Safe Harbor "actual knowledge" standard. Plaintiffs' citation to Jakobe v. Rawlings Sporting Goods Co., 943 F. Supp. 1143 (E.D. Mo. 1996) (Obj. at 15), is inapposite because that case involved the more limited protection for forward-looking statements found in SEC Rule 175, which pre-dated and was superseded by the Safe Harbor. Further, In re Number Nine Visual Tech. Corp. Sec. Litig., 51 F. Supp. 2d 1 (D. Mass. 1999) (Obj. at 15), is inapposite because it did not involve statements about future possibilities, but rather statements about the types of products the defendant was selling at the time of the challenged statements. Finally, In re Indep. Energy Holdings PLC Sec. Litig., 154 F. Supp. 2d 741 (S.D.N.Y. 2001), and Selbst v. McDonald's Corp., No-04-2422, 2005 WL 2319936 (N.D. Ill. Sept. 21, 2005) (Obj. at

---

[12] Cutsforth (which Plaintiffs not surprisingly – and unsuccessfully – attempt to distinguish) rejected the same "lack

13), both involved specific factual allegations that did support an inference of actual knowledge – namely, allegations of contemporaneous facts demonstrating that the forward-looking statements were contradicted by material non-public information in existence at the time the statements were made.[13]

Plaintiffs' theatrical assertion that they are "tak[ing] defendants to task for failing to disclose the [alleged] protracted build schedule and licensing process" for sales of i2000 implanters does not change the result under the second prong of the Safe Harbor. What Ibis said was that it believed it could "book" (i.e., receive and record) one to three orders by the end of 2003. The length of time required for Ibis to ***build*** an implanter or for a customer to obtain a license from IBM to ***use IBM's "MLD" wafer-making process in the implanter*** had nothing to do with how long it would take Ibis to ***receive*** orders for implanters. Plaintiffs also do not allege any facts indicating that the receipt of orders depended on either building an implanter first, or first obtaining from IBM a license to use its wafer-making process.[14] Likewise, the Complaint does not even allege (with particularity or otherwise) that the "build schedule" or the license process delayed Ibis's receipt of the orders to February 4, 2004 (rather than five weeks earlier), or delayed the ultimate shipment of the implanter (which was shipped in May 2004). See Report at 9 (noting "the Complaint contains no allegations regarding the cause for the delay" (citing AC ¶ 35)).

---

of reasonable basis" standard that Plaintiffs urge the Court to adopt here. See 235 F. Supp. 2d at 1241.

[13] Because Plaintiffs plead no facts that suggest that Defendants knew that the Implanter Projection was false when made, their citation to Huddleston v. Herman & McLean, 640 F.2d 534, 544 (5th Cir. 1981), and In re Prudential Sec. Ltd P'ships Litig., 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (Obj. at 10), is inapposite.

[14] See Opp. to Motion to Dismiss at 3 and n.1 (conceding that to "book" an order means to receive an order); see also Motion to Dismiss at 8 (citing Glassman v. Computervision Corp., 90 F.3d 617, 630 n.18 (1st Cir. 1996) ("[a] booking represents the receipt of an order")). In any event, as the Magistrate Judge correctly held, even if Ibis had used "book" to mean "ship," the Complaint still would not establish that Ibis and Mr. Reid had actual knowledge that Ibis could not have shipped an implanter prior to the end of 2003. Report at 27-29.

8

In short, these assertions simply cannot support an inference that Ibis or Mr. Reid knew the Implanter Projection was false or misleading when made.[15]

Plaintiffs' claim that Ibis "was not in a position to know if and when other prospective purchasers and IBM would reach agreement on licensing the MLD" is equally unavailing. Obj. at 13. This allegation is based on the incorrect notion that customers are required to obtain a license from IBM before ordering and receiving shipment of an i2000 implanter. See, e.g., AC ¶¶ 25-26, 63(b). Even if a license from IBM for the MLD process had been required, nothing in the Complaint suggests that it would have been impossible for Ibis's customers to obtain such a license before the end of 2003, much less that Ibis actually knew it was impossible. Id. at 27. As the Magistrate Judge held, the fact that Ibis received an order for an implanter in February 2004, and was able to ship an i2000 implanter to a customer in May 2004, suggests that "it was possible to execute the necessary licensing agreement within a fairly short time period." Id. at 27-28. This also undermines any inference that Ibis and Mr. Reid knew the Implanter Projection was false when made.[16]

## II.     Plaintiffs' IBM-Related Allegations Are Not Actionable.

In their objection to the Magistrate's Report, Plaintiffs try to resurrect an allegation they earlier had abandoned – namely, that Ibis's statement that its customer's acceptance of an i2000 implanter in the second quarter of 2003 "serve[d] as a signal to prospective implanter customers that our new implanter has been tested in a customer-

---

[15] In any event, Plaintiffs' allegation about the supposed "build schedule" is based solely on one former employee's opinion, and does not satisfy the First Circuit's requirements set forth in the Cabletron decision for information attributed to undisclosed sources. See In re Cabletron Sys., Inc., 311 F.3d 11, 38 (1st Cir. 2002).

9

oriented production mode." Obj. at 8 n.4. Plaintiffs did not oppose Defendants' motion to dismiss this allegation, and the Magistrate Judge found that they had abandoned it. Report at 13 n.8. As such, this allegation has been waived and is no longer in this case. In any event, because Plaintiffs have not shown that Ibis's statement was false in any way, it could not form the basis of a claim even if this allegation had not been abandoned. Report at 30 n.19. Nothing in the Complaint suggests that Ibis's customer had not in fact used the i2000 implanter in a "production mode," or that the customer's use of its i2000 in this fashion could not have served as a signal to other customers that the i2000 could be used the same way – i.e., "in a customer-oriented production mode."[17]

## CONCLUSION

For all of the reasons set forth above and in its memoranda and other submissions in support of its motion to dismiss, Defendants respectfully request that the Court adopt the Report and Recommendation to the extent it grants defendants' motion to dismiss the Implanter Projection Claims, and not adopt that portion that denied in part the motion to dismiss.

/s/ Brian E. Pastuszenski
Brian E. Pastuszenski (BBO #391030)
Christine S. Chung (BBO #631724)
William J. Trach (BBO #661401)
GOODWIN PROCTER LLP
Exchange Place, 53 State Street
Boston, Massachusetts 02109-2881
(617) 570-1000

November 23, 2005

---

[16] Plaintiffs complain that the Magistrate Judge made "factual determinations with inferences drawn in defendants' favor." Obj. at 15. In fact, as First Circuit law requires, the Magistrate Judge simply refused to credit Plaintiffs' "bald assertions and legal conclusions." Glassman, 90 F.3d at 628.

[17] Absent a material misstatement, it is legally irrelevant what Plaintiffs contend the market believed or inferred as a result of Ibis's statement respecting its customer's use of an i2000 in a customer-oriented production mode. Determinging whether a securities law violation has occurred is not about "fostering senses: it is about actual statements, whether or not they are true or false, and, if false, whether or not the utterrer knew at the time the statements were made that they were false." In re Copley Pharm., Inc. Sec. Litig., No. 94-11897, 1995 WL 169215, at *2 n.5 (D. Mass. Mar. 16, 1995).

**CERTIFICATE OF SERVICE**

I, William J. Trach, hereby certify that, on November 23, 2005, I caused a true copy of the above document to be filed electronically with the Court, to be served electronically upon counsel of record registered with the Electronic Case Filing System ("ECF"), and to be served upon counsel of record not registered with ECF by First Class United States mail at the address below.

/s/ William J. Trach
William J. Trach

Kenneth Elan, Esq.
Law Offices of Kenneth Elan
217 Broadway, Suite 606
New York, NY 10007
(212) 619-0261

LIBA/1650502.3