UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
In re                               )
        IBIS TECHNOLOGY             )
        SECURITIES LITIGATION       )        CIVIL ACTION
                                    )        No. 04-10446-RCL
_____ )

MEMORANDUM ORDER ON MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

LINDSAY, District Judge.

Before the court is a motion by defendants Ibis Technology Corporation and Martin Reid to dismiss the plaintiffs' consolidated amended complaint (the "complaint"). The motion was referred to Magistrate Judge Judith Dein for a report and recommendation ("Report"). In the Report, Magistrate Judge Dein recommended that the defendants' motion be granted to the extent that it relates to the plaintiffs' allegation that the defendants committed securities fraud by improperly overstating Ibis's prospects for booking orders for its i2000 implanter machines by the end of 2003. On the other hand, the judge recommended that the motion be denied to the extent that it relates to the plaintiffs' allegations of securities fraud with respect to the defendants' alleged failure to reduce on Ibis's books, by the start of the Class Period, the reported value of the Ibis small wafer production line. The plaintiffs object to the Report insofar as it recommends dismissal of their claim, while the defendants object to the Report insofar as it recommends that the complaint not be dismissed.

After *de novo* review of the issues raised by the motion, I accept Judge Dein's recommendations. I add the following observations.

As I must on a motion to dismiss, I have taken as true the allegations made in the complaint, and I have drawn all reasonable inferences in favor of the plaintiffs. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 78 (1st Cir. 2002) ("Although the pleading requirements under the PSLRA are strict, they do not change the standard of review for a motion to dismiss.") (internal citations omitted). The complaint alleges, inter alia, that the 1000 implanters and the 200mm wafers were virtually obsolete as of 2002, and, that, in recognition of this fact, Ibis allowed its 1000 implanters to fall into disuse and disrepair by that time. Complaint ¶ 43. Furthermore, the complaint alleges that by July 23, 2003, the beginning of the Class Period, the 300mm wafers had become responsible for an ever more dominant percentage of all Ibis wafer sales, reaching 97% during the quarter ended June 30, 2003. *Id.* On the basis of these allegations, I conclude that the plaintiffs sufficiently have pleaded that, pursuant to GAAP, the defendants should have reduced by $11 million the value reported on Ibis's books for the assets associated with its small wafer production line.

The question of scienter is a closer one. The plaintiffs allege that, throughout the Class Period, the defendants possessed virtually all of the information that would lead them, at the close of the Class Period, to conclude that the 1000 implanters and related assets were impaired under FAS 144 to the extent of approximately $11 million: sales of 200mm wafers were consistently declining to almost nothing as the market transitioned to the 300 mm wafers; there was no prospect for 1000 implanter sales overseas; and a potential buyer for some portion of the small wafer production line declined to invest in or purchase any of these assets because of weak demand for 200mm wafers. *Id.* ¶ 63.

The defendants' prior disclosures of the risk of impairment cut in different directions. First, by mentioning this risk in their SEC filings in early 2003, the defendants demonstrated they were aware of the possibility that the product line would have to be written down. On the other hand, there is some force to the defendants' argument that their disclosure of the risk makes it less likely that they acted with scienter, because their disclosures alerted the market to the possibility of a write- down. This disclosure, however, does not negate scienter. In the specific warnings that Ibis made about the possibility of impairment, it repeatedly stated that, "[a]lthough our 200mm and smaller wafer size production line is currently underutilized, considering our future plans, current potential business prospects and alternatives, Management believes that we do not have an impairment issue at this time." *See, e.g.,* Defs.' Ex. In Support of Partial Objection to Magistrate's Report and Recommendation 4 at 12. The plaintiffs allege that, by making these statements the defendants, were falsely reassuring investors that there were substantial business prospects for Ibis' 200mm wafer production line, when the defendants knew that no such prospects existed.

The evidence of motivation alleged by the plaintiffs is strong: Ibis was in a desperate cash crunch, had been laying off a significant portion of its workforce and needed an immediate cash infusion to keep the business alive. Complaint ¶¶ 35, 47  In addition, the timing of the eventual write-down – at the next possible opportunity after the stock sale – is suspicious. *Id.* ¶¶ 46- 47.

The only alternative explanation hinted by the motion record is that a potential buyer was evaluating some portion of the small wafer product line in October 2003. *Id.* ¶ 53. The allegations that this line had already become virtually obsolete, however, undermine any suggestion that, by the end of June 2003, Ibis reasonably could withhold writing down these

assets.  Drawing all reasonable inferences in the plaintiffs' favor, I conclude that it should have been clear to the defendants that no one would want to purchase these assets for anywhere near the value at which they were stated on the company's books.  The "potential buyer" is a less plausible explanation for the delay of the write-down than that the defendants wished to wait until after the stock offering to make the appropriate accounting adjustment.

In sum, the plaintiffs sufficiently allege facts from which a strong inference of scienter can be drawn, based upon the defendants' alleged failure to write down the small wafer production line.  When viewed in light of the complaint as a whole, there are no plausible explanations for the defendants' behavior that are as convincing as that they acted with scienter.  *See In re Credit Suisse First Boston Corp.*,  431 F.3d 36, 49 (1st Cir. 2005).

The motion by Ibis Technology Corporation and Martin Reid to dismiss is GRANTED as it relates to the predictions of sales of i2000 implanters and DENIED as it relates to the impairment and write down of the smaller wafer production line.  The clerk shall set this matter for a scheduling conference.


SO ORDERED.

                                            /s/ REGINALD C. LINDSAY
                                            United States District Judge

Dated: March 31, 2006