UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                    )
**IN RE IBIS TECHNOLOGY**                            )
**SECURITIES LITIGATION**                            )         Civ No. 04-10446 RCL
_____)

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO STRIKE ALLEGATIONS RELATING TO
DISMISSED CLAIMS FROM CONSOLIDATED AMENDED COMPLAINT**

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendants Ibis Technology Corp. and Martin J. Reid (collectively, "Defendants") submit this memorandum in support of their Motion to Strike Allegations Relating to Dismissed Claims from the Consolidated Amended Complaint (the "Complaint") filed by Plaintiffs in the above-referenced action.

**INTRODUCTION**

Ibis Technology Corp. ("Ibis") is a small Massachusetts-based company that manufactures and sells implanters – complex machines that use Ibis's pioneering "SIMOX" technology to implant a thin layer of oxygen atoms just below the top surface of silicon wafers used in the production of computer chips.  Complaint ("Compl.") at ¶ 17.  Ibis's first generation implanter – the 1000 – is capable of manufacturing wafers up to 200 mm in size.  Ibis's second generation implanter – the i2000 – is capable of manufacturing up to 300 mm wafers.  Compl. ¶ 18.  During the proposed class period, Ibis also sold silicon wafers manufactured by its implanters.  *Id.*

On July 4, 2004, Plaintiffs filed a Complaint alleging two separate and unrelated fraudulent schemes.  First, Plaintiffs alleged that Ibis and Mr. Reid made false and misleading statements and omissions regarding Ibis's forecast of possible future sales of its i2000 implanter ("the Sales Forecast Claims").  Compl. ¶¶ 48-50.  Second, Plaintiffs alleged that Ibis and Mr. Reid made false and misleading statements and omissions when Ibis wrote down the value of assets relating to the production of 200 mm and smaller sized wafers in December 2003, rather than in June 2003, as Plaintiffs contend was required ("the Wafer Claims").  *Id.*  Based on both the Sales Forecast Claims and the Wafer Claims, Plaintiffs alleged that Ibis and Mr. Reid violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b).  Plaintiffs further alleged that Mr. Reid was liable as a control person under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

On August 5, 2005, Defendants moved to dismiss the Complaint in its entirety, with prejudice, for failure to state a claim upon which relief could be granted.  On September 22, 2005, the Magistrate Judge issued a report recommending the dismissal of the Sales Forecast Claims only.  On March 31, 2005, this Court issued a Memorandum and Order on Magistrate Judge's Report and Recommendation on Defendants' Motion to Dismiss (the "Order").  The Order granted the motion to dismiss in part, holding that the Sales Forecast Claims should be dismissed for failure to state a claim.  While noting that the question of whether the Complaint adequately alleged scienter was "close[]," the Court held that the Wafer Claims survived the motion to dismiss.[1]  Order at 2.

---

[1] On May 9, 2006, the Court granted Defendants' Motion for an Extension of Time to Answer or Otherwise Respond to Amended Complaint, extending the time by which Defendants must answer the Complaint to May 24, 2006.  This motion to strike is therefore timely. Fed. R. Civ. P. 12(f).

2

It is Defendants' understanding that Plaintiffs do not intend at this time to amend their Complaint to remove allegations related to their Sales Forecast Claims. As a result, Defendants are faced with a Complaint that is replete with allegations of fraud that relate solely to claims that have been dismissed from the Complaint. As detailed below, these allegations are wholly immaterial to the surviving Wafer Claims. To avoid undue confusion, delay and prejudice to the Defendants, Defendants respectfully request that the Court strike those allegations that relate solely to the Sales Forecast Claims.

**ARGUMENT**

**I.   ALLEGATIONS RELATING TO THE DISMISSED SALES FORECAST CLAIMS ARE IMPERTINENT AND IMMATERIAL AND THEREFORE MUST BE STRICKEN FROM THE COMPLAINT.**

Rule 12(f) of the Federal Rules of Civil Procedure provides that the Court may, upon the motion of a party or on its own initiative, at any time "order stricken from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988); *Greenier v. PACE, Local No. 1188*, 201 F. Supp. 2d 172, 185 (D. Me. 2002). "A court has considerable discretion in striking 'any redundant, immaterial, impertinent or scandalous matter,'" including statements that are "superfluous descriptions and not substantive elements of the cause of action." *Alvarado-Morales*, 843 F.2d at 618 (citing *Boreri v. Fiat S.P.A.*, 763 F.2d 17, 23 (1st Cir. 1985)); *see also Cognitest Corp. v. Riverside Publishing Co.*, No. 94 C 4741, 1995 WL 382984, at *4 (N.D. Ill. June 22, 1995) (striking allegations that relate only to dismissed claims); *Paul M. Harrod Co. v. A.B. Dick Co.*, 194 F. Supp. 502, 504 (N.D. Ohio 1961) (striking allegations that relate to dismissed claims as "clearly immaterial").

"Immaterial matter is defined as that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Andretta v. Bath Iron Works Corp.*, No. 01-247-PC, 2002 WL 576033, at * 1 (D.Me. Apr. 12, 2002) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1382 at 706-07 (2d ed. 1990) (internal quotation marks omitted). Similarly, courts have defined "impertinent" matter as "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (quoting Wright & Miller, *supra*, § 1382 at 711). "One test that has been advanced for determining whether an allegation in a pleading is immaterial and impertinent within the meaning of Rule 12(f) is whether proof concerning it could be received at trial; if it could not, then the matter is immaterial and impertinent." *Pratt v. Phoenix Home Life Mut. Ins. Co.*, 285 B.R. 3, 6 (D.Or. 2001) (quoting Wright & Miller, *supra*, § 1382 at 706-07).

### A. The Court Should Strike Allegations Relating To The Sales Forecast Claims Because The <u>Allegations Are Immaterial And Impertinent.</u>

When the Court dismissed the Sales Forecast Claims, allegations relating solely to those claims became irrelevant and impertinent. These allegations – which comprise nearly half of the Complaint – have no essential relationship to the surviving Wafer Claim. Striking these allegations now, at an "early stage of a complicated lawsuit may be extremely valuable to all concerned in order to avoid the needless expenditures of time and money, in litigating issues which can be foreseen to have no bearing on the outcome." *Narragansett Tribe of Indians v. Murphy*, 418 F. Supp. 798, 801 (D.R.I. 1976) (internal quotations omitted).

Striking the immaterial and impertinent allegations at issue is particularly appropriate where – as here – the allegations have the potential substantially to complicate the scope of

4

discovery and the length of trial. *See Narragansett*, 418 F. Supp. at 801-02 (granting a motion to strike a defense the court found to be legally insufficient, where that defense would "would substantially complicate the discovery proceedings and the issues at trial"); *Fogerty*, 984 F.2d at 1528 ("[T]he stricken allegations would have unnecessarily complicated the trial of the [remaining] claim by requiring the introduction of extensive evidence [relating to the already-decided claim], potentially adding weeks to the trial."). For example, of the seven former employees referred to in Paragraph 67 of the Complaint, only two are alleged to have provided information relating to the Wafer Claims, with the other five providing information relating solely to the dismissed Sales Forecast Claims. Defendants should not be forced to contend with depositions or other discovery relating to the remaining five former employees, when the information attributed to them is irrelevant to the only surviving claims at issue in this case.

Likewise, the Complaint contains numerous allegations about the legal requirements of various licensing agreements (Compl. ¶¶ 25, 26) as well as allegations relating to negotiations between Ibis and potential other third party purchasers of i2000 implanters (Compl. ¶¶ 32, 61, 63(b), 67(b)). Forcing Ibis to engage in third-party discovery and to litigate the legal requirements of these agreements as well as Ibis's negotiations with third parties would substantially and unnecessarily complicate the discovery and litigation process. Granting the motion to strike would avoid such unnecessary discovery, and prevent potentially costly and time-consuming motion practice in the future. *See Narragansett*, 418 F. Supp. at 801.

**B.    The Court Should Strike The Allegations Relating
       To The Sales Forecast Claims To Avoid Undue Prejudice.**

The Court also should strike allegations relating to the Sales Forecast Claims to avoid undue prejudice to the Defendants. As courts have held, litigants should not be forced to respond

5

to legally insufficient allegations, especially where the allegations have the potential to cause confusion and prejudice. *Narragansett,* 418 F. Supp. at 801-02 (striking allegations relating to legally insufficient affirmative defense because establishing such defenses would be "damaging to the plaintiff by evoking the jury's sympathy for the defendants," and because "it would be extremely prejudicial to permit defendants to prove them at trial"); s*ee also Fogerty*, 984 F.2d at 1527-28 (granting motion to strike unrelated and already-decided fraud claims on grounds that allowing such claims to remain in the complaint would unduly prejudice defendants).

Here, the Complaint is replete with inflammatory allegations of fraud that relate solely to the now-dismissed Sales Forecast Claims. Among other baseless allegations, the Complaint asserts that the Defendants forecasted future sales of i2000 implanters (i) even though they "knew" that it was a "virtual physical impossibility" for Ibis to build and test the machines by a certain date (Compl. at ¶¶ 49(c), 50(d)); and (ii) even though they "knew" that "any orders [Ibis] had in hand would be withdrawn or put on hold pending" its customer's negotiation of a license with IBM (Compl. at ¶ 50(e)). Given that this Court has already dismissed the Sales Forecast Claims, the only reason Plaintiffs could have for wanting to keep these allegations in the case is to argue that Defendants engaged in a pattern of fraud. Such a baseless allegations would be "extremely prejudicial" to Defendants. *See Narragansett*, 418 F. Supp. at 801-02. To avoid such prejudice, the Court should strike the allegations that relate solely to the Sales Forecast Claims.

### C. The Allegations Relating To The Dismissed Claims Are Easily Identified And Should Be Removed From The Operative Complaint.

Because the Sales Forecast and Wafer Claims are separate and distinct, Plaintiffs easily could amend their Complaint to comport with an order striking the immaterial and impertinent

allegations. The immaterial and impertinent allegations pertaining to the Sales Forecast Claims that should be stricken from the Complaint include the following:

(a) Paragraph 17, where Plaintiffs allege that Ibis manufactures "SIMOX-SOI oxygen implantation equipment (the "implanter") that is offered for sale to semiconductor companies such as IBM and enables the purchaser of the implanter to manufacture the wafers for itself."

(b) Paragraph 19, where Plaintiffs allege that "[t]he i2000 implanter is dependent upon IBM's patented Modified Low-Dose, or MLD, technology, which IBM licensed to Ibis for the purpose of developing the i2000 implanter.

(c) Paragraph 20, where Plaintiffs allege that Ibis would "concentrate on the sale of the i2000 implanter" and that "our primary emphasis will be on implanter sales and support."

(d) Paragraph 21, where Plaintiffs allege that "IBM also has been the only purchaser to date of the i2000 implanter."

(e) Paragraph 22, where Plaintiffs allege that "Ibis records the revenues from the sale of implanters as 'equipment revenue' on its financial statements" and "recognizes revenue from implanter sales upon acceptance at the customer's site. With respect to the i2000 implanter, acceptance occurs only after an indefinite and undeterminable period of time during which the i2000 implanter is tested by the potential purchaser. The acceptance process, as described in Ibis's SEC Form 10-K based on Ibis's historical

experience, takes approximately nine months, with no guarantee that the customer will ultimately accept the implanter."

    (f)    Paragraph 23 in its entirety.

    (g)    Paragraph 24 in its entirety.

    (h)    Paragraph 25 in its entirety.

    (i)    Paragraph 26 in its entirety.

    (j)    Paragraph 27 in its entirety.

    (k)    Paragraph 28 in its entirety.

    (l)    Paragraph 29 in its entirety.

    (m)    Paragraph 30 in its entirety.

    (n)    Paragraph 31 in its entirety.

    (o)    Paragraph 32 in its entirety.

    (p)    Paragraph 33 in its entirety.

    (q)    Paragraph 34 in its entirety, except for the last sentence concerning wafer sales.

    (r)    Paragraph 35 in its entirety.

    (s)    Paragraph 36, where Plaintiffs allege "During the quarter, we also applied several reliability upgrades to our internal i2000 implanter."

(t)     Paragraph 37, where Plaintiffs allege "We have completed several reliability and performance enhancements on our i2000 implanter, and it is now back in production."

(u)     Paragraph 38, where Plaintiffs allege "We also continue to anticipate booking additional orders for one-to-three implanters during this fiscal year."

(v)     Paragraph 39 in its entirety.

(w)     Paragraph 40 in its entirety.

(x)     Paragraph 47 in its entirety.

(y)     Paragraph 47(a) in its entirety

(z)     Paragraph 47(d), where Plaintiffs allege "without a large cash infusion, Ibis would run out of cash needed to continue to build and market the i2000 implanter and continue operations without further significant employee layoffs.  Defendants knew that they would not be able to 'book orders' for the i2000 implanter in 2003, despite their repeated statements to the market to the contrary during the Class Period;" and further where Plaintiffs allege "Ibis would be recording significant revenues from booking orders for the i2000 implanter;" and further where Plaintiffs allege "defendants' hyping of the SIMOX-SOI technology and the attributes of the i2000 implanter, defendants' repeated statements concerning the 'booking' of new orders for one to three i2000 implanters by December 31, 2003."

(aa)    Paragraph 49(b) in its entirety.

(bb)    Paragraph 50(d) in its entirety.

(cc)    Paragraph 50(e) in its entirety.

(dd)    Paragraph 54(b) in its entirety.

(ee)    Paragraph 56, where Plaintiffs allege "We continue to anticipate booking orders for one-to-three implanters during the fourth quarter of 2003."

(ff)    Paragraphs 57 and 57(b) its their entirety.

(gg)    Paragraph 60, where Plaintiffs allege "On December 15, 2003, as year end approached and defendants knew they would not be able to obtain cash for shipments of the i2000 implanter."

(hh)    Paragraph 63(b) in its entirety.

(ii)    Paragraph 64 in its entirety.

(jj)    Paragraphs 67(a), (b), (c), (f) and (g), each instance where Plaintiffs reference the i2000 implanter.

(kk)    Paragraph 68 in its entirety.

(ll)    Paragraph 72, to the extent Plaintiffs repeat and reallege each and every allegation set forth above.

(mm)    Paragraph 83, to the extent Plaintiffs repeat and reallege each and every allegation set forth above.

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court order stricken all allegations contained in the Consolidated Amended Complaint that pertain to the dismissed Sales Forecast Claims and grant such other relief as the Court deems necessary.

IBIS TECHNOLOGY CORP. AND
MARTIN J. REID

By their attorneys,

/s/ Brian E. Pastuszenski
Brian E. Pastuszenski (BBO #391030)
Christine R. Chung (BBO #631724)
Laura M. Stock (BBO #652276)
William J. Trach (BBO #661401)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000

May 23, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 23, 2006.

/s/ Brian E. Pastuszenski
Brian E. Pastuszenski

LIBA/1697594.5