**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ )
**IN RE IBIS TECHNOLOGY** )
**SECURITIES LITIGATION** )                **Civ No. 04-10446 RCL**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ )

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFFS' APPLICATION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ........................................................................................... 1

II.  BACKGROUND OF THE SETTLEMENT ...................................................... 2

III.  THE PROPOSED SETTLEMENT ................................................................. 3

    A.  The Settlement Class .......................................................................... 3

    B.  The Settlement Consideration ............................................................. 3

    C.  The Plan of Allocation ........................................................................ 4

    D.  Release of Class Members' Claims ..................................................... 5

IV.  PRELIMINARY SETTLEMENT APPROVAL ............................................... 5

    A.  The Role of the Court .......................................................................... 5

    B.  Criteria To Be Considered In Deciding Preliminary Approval ............................ 6

V.  CERTIFICATION OF THE SETTLEMENT CLASS UNDER
FED. R. CIV. P. 23 IS APPROPRIATE ........................................................ 11

    A.  The Proposed Class Satisfies the Requirements of Rule 23(a) ........................... 12

        1.  The Class is Sufficiently Numerous ......................................... 12

        2.  Common Questions of Law or Fact Exist ................................. 12

        3.  Lead Plaintiffs' Claims are Typical of Those of the Class ..................... 13

        4.  Lead Plaintiffs are More than Adequate Representatives of the Class .... 14

    B.  The Requirements of Rule 23(b)(3) Are Also Satisfied ....................................... 14

        1.  Common Legal and Factual Questions Predominate
in this Action ....................................................................... 15

        2.  A Class Action is the Superior Means to
Adjudicate Plaintiffs' Claims ................................................. 15

VI.     THE PROPOSED PLAN OF CLASS NOTICE ................................................................. 16

VII.    CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002) .......................................................... 11

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 14, 15

*In re American Bank Note Holographics, Inc., Sec. Litigation*, 127 F. Supp.
2d 418 (S.D.N.Y. 2001) ........................................................................................................ 4

*In re Automotive Refinishing Paint Antitrust Litigation,*
2003 U.S. Dist. LEXIS 4681 (E.D. Pa. Mar. 17, 2003) .................................................... 9

*Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174 (E.D.N.Y. 1999) ............................... 10

*In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002) ....................................................... 10

*City P'shp. Co. v. Atlantic Acquisition Ltd. P'shp.*, 100 F.3d 1041
(1st Cir. 1996) ........................................................................................................... 5, 8, 9

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .......................................................... 7

*Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54
(D. Mass. 1997) ............................................................................................................ 12, 14

*Dura Pharm. v. Broudo*, 544 U.S. 336 (2005) ............................................................................ 4

*Durrett v. Housing Authority of Providence*, 896 F.2d 600 (1st Cir. 1990) ................................ 5

*In re Elscint, Ltd. Sec. Litigation*, 1987 U.S. Dist. LEXIS 16746
(D. Mass. June 22, 1987) ................................................................................................ 15

*In re Excess Value Insurance Coverage Litig.*, 2004
U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) ........................................................... 9

*Grace v. Perception Tech. Corp.*, 128 F.R.D. 165 (D. Mass. 1989) ..................................... 12, 16

*Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974) .................................................................. 7

*Guckenberger v. Boston University*, 957 F. Supp. 306 (D. Mass. 1997) .................................... 13

*In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d
180 (S.D.N.Y. 2003) ........................................................................................................ 18

*Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D. Mass. 1987) ........................................ 12, 13

*In re Lupron Marketing & Sales Practices Litig.*, 345 F. Supp. 2d 135
    (D. Mass. 2004) ......................................................................................................... 6, 11

*Lyons v. Marrud, Inc.*, 1972 U.S. Dist. LEXIS 13401
    (S.D.N.Y. June 6, 1972) ............................................................................................. 8

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 7

*McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424 (E.D. Tex. 2002) ........................................ 9

*In re Medical X-Ray Film Antitrust Litig.*, 1997 U.S.
    Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) ............................................................ 6, 9

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ........................... 11

*Milstein v. Werner*, 57 F.R.D. 515 (S.D.N.Y. 1972) ...................................................................... 7

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99
    (S.D.N.Y. 1997) ...................................................................................................... 5, 6, 9

*In re Painwebber Ltd. Partnership Litig.*, 1996 U.S.
    Dist. LEXIS 1265 (S.D.N.Y. Feb. 7, 1996) ................................................................. 16

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary*
    *Corp.*, 323 F. Supp. 364 (E.D. Pa 1970) ...................................................................... 7

*Priest v. Zayre Corp.*, 118 F.R.D. 552 (D. Mass 1988) ......................................................... 13, 16

*In re Prudential Sec. Inc. Ltd. P'shps Litig.*, 163 F.R.D. 200
    (S.D.N.Y. 1995) ................................................................................................... passim

*Randle v. SpecTran*, 129 F.R.D. 386 (D. Mass. 1988) ................................................... 12, 13, 16

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ................................................... 8, 9

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) ...................................................................... 8

*Smilow v. Southwestern Bell Mobile System, Inc.*, 323 F.3d 32
    (1st Cir. 2003) ............................................................................................................ 15

*In re Stone & Webster Inc. Sec. Litig.*, 414 F.3d 187 (1st Cir. 2005) ........................................ 10

*Strube v. America Equity Investment Life Ins. Co.*,
    2005 U.S. Dist. LEXIS 8589 (M.D. Fla. Feb. 8, 2005) ...................................... 8

*The South Carolina National Bank v. Stone*, 139 F.R.D. 335 (D.S.C. 1991) ............................ 11

*In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347 (E.D.N.Y. 2000) ............................................ 9

**FEDERAL STATUTES**

15 U.S.C. §78u-4(a)(7) ........................................................................................................ 18

15 U.S.C. §78u-4(e)(1) .......................................................................................................... 4

Fed. R. Civ. P. 23(a) ........................................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ....................................................................................................... 12

Fed. R. Civ. P. 23(e) ............................................................................................................. 1

**MISCELLANEOUS**

3B James Wm. Moore, et al., *Moore's Federal Practice* ¶23.8102.-1],
    at 23-479 (2d ed 1993) ...................................................................................... 7

*Manual for Complex Litigation, Fourth* §13.14 (2004) .......................................... 5, 6

*Manual for Complex Litigation, Fourth*, §21.633 ...................................................... 6

*Manual for Complex Litigation, Fourth* §40.42 ........................................................ 6

Lead Plaintiffs, Martin Smolowitz, George Harrison and Mark G. Forgue, apply to this Court for preliminary approval of a proposed settlement pursuant to Fed. R. Civ. P. 23(e), that will completely resolve this securities class action (the "Action"), and to establish a schedule for giving notice of the proposed settlement to the members of the Class, allowing Class Members an opportunity to object, scheduling a hearing to consider final approval of the settlement and plaintiffs' counsels' joint fee application, and requiring Class Members to submit Proof of Claim forms by a fixed deadline.

## I.    INTRODUCTION

This securities class action is brought on behalf of persons or entities who purchased the common stock of Ibis Technology Corporation ("Ibis") during the period from July 23, 2003 through and including December 12, 2003 (the "Class Period") (the "Class"). The Stipulation and Agreement of Settlement, dated as of December 6, 2006 (the "Stipulation") provides for a settlement with the Defendants that will resolve all claims alleged in this action. The Stipulation is being filed contemporaneously herewith. Under the terms of the Stipulation, Defendants will cause to be paid a total of $1,900,000.00 to the Class.

Lead Plaintiffs ask this Court to enter the Preliminary Order In Connection With Settlement Proceedings (Exhibit A to the Stipulation) (the "Preliminary Order"): (1) granting preliminary approval of the proposed settlement; (2) directing that the Class be given notice of the proposed settlement in the form and manner proposed by the parties; and (3) scheduling a hearing at which the Court will consider the final approval of the settlement and entry of the proposed final judgment, and Lead Counsel's motion for a joint award of plaintiffs' attorneys' fees and reimbursement of costs. The proposed Preliminary Order is Exhibit A to the Stipulation and has been consented to by Lead Plaintiffs and the Defendants.

1

If the Court preliminary approves the settlement, Lead Plaintiffs propose the following schedule for the settlement proceedings:

- Mailing of individual copies of the Notice of Pendency of Class Action, Conditional Class Determination, Proposed Settlement of Class Action, Settlement Fairness Hearing, Application for Attorneys' Fees and Right to Share in the Net Settlement Fund (the "Class Notice") (Exhibit 1 to the Exhibit A to the Stipulation) and a Proof of Claim form (Exhibit 2 to Exhibit A to the Stipulation) to potential Class Members: <u>Fifteen (15) days after entry of the Preliminary Order</u>.

- Publication of a Summary of Pendency of Class Action, Proposed Settlement and Settlement Hearing (the "Publication Notice") (Exhibit 3 to the Exhibit A to the Stipulation) in *The Wall Street Journal*: <u>Ten (10) days after mailing individual copies of the Settlement Notice</u>.

- Deadline for filing and serving objections to the Settlement, the Plan of Distribution, or motion for an award of attorneys' fees and reimbursement of expenses: <u>Sixty (60) days after mailing of the individual copies of the Settlement Notice</u>.

- Settlement Fairness Hearing: <u>At the Court's convenience on or after seventy-five (75) days after mailing of the individual copies of the Settlement Notice (and at least fifteen (15) days after the deadline date for objections)</u>.

- Deadline for submission of Proof of Claim forms: <u>Thirty (30) days after the Settlement Fairness Hearing</u>.

## II.    BACKGROUND OF THE SETTLEMENT

The parties engaged in substantial pre-trial proceedings including motion practice and discovery relating to the claims and defenses concerning the underlying events and transactions alleged in the Consolidated Amended Complaint. The Settlement was achieved only after mediation before the Honorable Nicholas H. Politan, a retired federal judge, on September 27, 2006.

2

## III.     THE PROPOSED SETTLEMENT

### A.     The Settlement Class

The proposed settlement has been reached on behalf of the "Class" and "Class Members" defined in the Stipulation.  Defendants have consented to the certification of the Class for purposes of the settlement only.  The Class is defined as persons or entities who purchased the common stock of Ibis between July 23, 2003 and December 12, 2003, inclusive.  The Class  excludes Defendants in this Action, members of the immediate family (parents, spouses, siblings and children) of any individual who was named as a Defendant, the executive officers, directors, employees, subsidiaries and affiliates of Ibis, and any person, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and legal representatives, heirs, successors in interest or assigns of any such excluded party.  Also excluded from the Class are any putative Class Members who exclude themselves by filing a Request for Exclusion in accordance with the requirements set forth in the Notice.

### B.     The Settlement Consideration

Under the proposed settlement, Defendants will cause to be paid $1,900,000.00 into escrow for the benefit of the Class.  (*See* Stipulation ¶13). If the settlement is granted final approval, the $1,900,000.00, plus interest, less administration and notice costs, taxes and related expenses, and any award of Lead Plaintiffs' attorneys' fees and costs ("Net Settlement Funds"), will be distributed among all Class Members who submit timely and valid proofs of claim ("Authorized Claimants"), pursuant to a Plan of Allocation.

3

## C.     The Plan of Allocation

Under the Plan of Allocation, an independent claim administrator, Valley Forge Administrative Services, Inc., selected by Lead Counsel, will calculate each Authorized Claimant's "Recognized Loss," based on the information supplied with the Class Member's proof of claim.

The proposed Plan of Allocation is fully set forth in the Class Notice and is similar in structure to numerous other such plans which have been utilized in securities class action cases.

The Plan of Allocation is based on Plaintiffs' allegations that the market price of Ibis common stock was artificially inflated and all Class Members will have their Recognized Losses determined by reference to the per share market prices of the Ibis common stock they purchased. Pursuant to the Supreme Court's ruling in *Dura Pharm. v. Broudo*, 544 U.S. 336 (2005), no Class Member who both purchased and sold his or her or its stock during the Class Period will have a Recognized Loss with respect to those shares.  Under The Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(e)(1), "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of the security, the award of damages to the [class member] shall not exceed the difference between the purchase – price paid – for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission...is disseminated to the market." Accordingly, no Class Member who purchased shares of stock at a market price below $12.88 per share will have a recognized loss with respect to those shares.

Lead Plaintiffs submit that the Plan of Allocation is fair and equitable to Class Members and deserves the Court's approval.  *See In re American Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 429-430 (S.D.N.Y. 2001) ("An allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent'

class counsel.")  The Plan of Allocation, however, is not a condition of settlement.  Under the Stipulation, the Net Settlement Funds may be distributed in accordance with the proposed Plan of Allocation or such other plan the Court may approve.  (*See* Stipulation ¶19).

### D.    Release of Class Members' Claims

In return for the settlement consideration, Defendants will receive a release of any and all "Settled Claims," as defined in the Stipulation and as fully set forth in the Class Notice, which Class Members have or may have against Defendants.  The release relates to the matters alleged in the Consolidated Amended Class Action Complaint and to the purchase of shares of Ibis common stock as set forth in the Stipulation at ¶10(z).

## IV.    PRELIMINARY SETTLEMENT APPROVAL

### A.    The Role of the Court

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is a matter within the broad discretion of the district court.  *See City P'shp. Co. v. Atlantic Acquisition Ltd. P'shp.*, 100 F.3d 1041, 1044 (1st Cir. 1996) ("Great deference is given to the trial court [regarding its decision to approve a class action settlement]."); *In re Prudential Sec. Inc. Ltd. P'shps Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  The district court's discretion, however, is "restrained by 'the clear policy in favor of encouraging settlements'."  *Durrett v. Housing Authority of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).  "Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled."  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing."  *Manual for Complex Litigation, Fourth* §13.14 (2004).  "In some cases,

this initial evaluation can be made on the basis of information already known, supplemented if necessary, by briefs, motions, or an informal presentation by parties. *Id.* at 21.632.

"Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *NASDAQ*, 176 F.R.D. at 102. Preliminary approval permits notice to be given to class members of a hearing on final settlement approval, at which class members and the settling parties may be heard with respect to final approval.

**B.      Criteria To Be Considered In Deciding Preliminary Approval**

The Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litigation, Fourth,* §21.633. The role of the Court at preliminary approval is to examine the materials submitted and decide whether the settlement appears fair on its face. *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements"). The primary question raised by a request for preliminary approval is whether a proposed settlement is "within the range of reasonableness." *Manual for Complex Litigation, Fourth* §40.42; *see also In re Lupron® Mktg. & Sales Practices Litig.*, 345 F. Supp.2d 135, 138 (D. Mass. 2004) ("For purposes of conditional certification, I am satisfied that with respect to the absent class members, the proposed settlement amount is sufficiently within the range of reasonableness."); *Prudential*, 163 F.R.D. at 210 ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval'") (citation omitted).

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 3B James Wm. Moore, et al., *Moore's Federal Practice* ¶23.8102.-1], at 23-479 (2d ed 1993). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa 1970).

In considering a potential settlement, the trial court need not reach any ultimate conclusions on the substantive factual or legal issues of plaintiff's claims. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp.2d 358, 361 (S.D.N.Y. 2002) ("It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement . . . Such procedure would emasculate the very purpose for which settlements are made," quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)). A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial. Nor should the court "make the proponents of the agreement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes*." Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972). *See also Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974) ("any settlement is the result of a compromise – each party surrendering something in order to prevent unprofitable litigation, and the

risks and costs inherent in taking litigation to completion"); *Strube v. Am. Equity Inv. Life Ins. Co.*, No. 6:01-CV-1236, 2005 U.S. Dist. LEXIS 8589, at *33 (M.D. Fla. February 8, 2005).

Moreover, the rigors of the negotiation process, involving an experienced, independent mediator, and the opinion of experienced counsel support the conclusion that the Settlement is fair and reasonable. *City P'Ship Co. V. Atlantic Acquisition Ltd P'Ship*, 100 F. 3d 1041, 1043 (1st Cir. 1996). *See also Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) ("The proponents of a class settlement can obtain a 'strong initial presumption that the compromise is fair and reasonable' by establishing . . . that the proponents' attorneys have experience in similar cases") (citation omitted). As the court explained in *Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 U.S. Dist. LEXIS 13401, at *5 (S.D.N.Y. June 6, 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case."

Here, experienced counsel for Lead Plaintiffs and the Defendants, after hotly contested litigation and settlement negotiations through mediation, have concluded that the proposed settlement of $1,900,000.00, plus interest, is in the best interests of their respective clients.

The criteria for evaluating a request for preliminary approval have been summarized thus:

> "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement."

*Prudential*, 163 F.R.D. at 209 (quoting *Manual for Complex Litigation, Third* §30.41). Under these criteria, the Court should grant preliminary approval of the proposed settlement and order the dissemination of notice.

The first consideration in the preliminary-approval analysis is whether the proposed settlement appears to be the product of "serious, informed and non-collusive negotiations." *Medical X-ray*, 1997 U.S. Dist. LEXIS 2193 at, *19. *See also NASDAQ*, 176 F.R.D. at 102. In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See Reed*, 703 F.2d at 175; *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430-31 (E.D. Tex. 2002) ("Counsel on all sides have proved to the Court their knowledge of the facts and law relevant to this case. Settlement was reached by knowledgeable counsel, and it was arrived at after much negotiation as is evidenced by the time it took the parties to reach an agreement."); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL NO. 1426, 2003 U.S. Dist. LEXIS 4681, at *3 (E.D. Pa. Mar. 17, 2003) ("[I]t is appropriate to give deference to the recommendations of experienced attorneys who have engaged in arms-length settlement negotiations.") Indeed, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See City P'shp. Co.*, 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement"); *In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (citation omitted). Courts may also consider whether settlement was reached with the assistance of a judicial officer. *See In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the

9

settlement were reached only after arduous settlement discussions conducted in good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator," a retired federal judge); *Becher v. Long Island Lighting Co.*, 64 F. Supp.2d 174, 181 (E.D.N.Y. 1999).

The proposed settlement here is the product of extensive, arm's-length negotiations, including an-person mediation conducted by the Honorable Nicholas H. Politan, retired judge of the United States District Court for the District of New Jersey. The negotiations were informed by the knowledge Lead Plaintiffs had gained by reviewing documents obtained from Defendants and non-parties through discovery, and in consultation with their accounting and damage experts. Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times hard-fought and at arm's-length, and have produced a result that the settling parties believe to be in their respective best interests.

Lead Plaintiffs' counsel, who have a great deal of experience in the prosecution and resolution of complex class action securities litigation, have carefully evaluated the merits of the case and the proposed settlement. Based on the discovery conducted by lead Plaintiffs and Plaintiffs' Counsels' consultations with their accounting and damage experts, there were issues concerning both liability for the alleged misrepresentations and the damages sustained by the Class. Lead Counsel for Plaintiffs believe that there was sufficient evidence to proceed to the jury on both of these substantive elements of their cause of action but recognize that proving *scienter* with respect to the accounting issue and the accuracy of Ibis' financial statements and the magnitude of the sustained damages caused by the alleged misrepresentations were not without significant risk. *In re Stone & Webster Inc. Sec. Lit.*, 414 F.3d 187 (1st Cir. 2005); *In re Cabletron Systems, Inc.*, 311

10

F.3d 11 (1st Cir. 2002); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 82 (1st Cir. 2002). Lead Plaintiffs' counsel know from experience that the apparent strength of a plaintiffs' case is no guarantee against a defense verdict.

In light of the above considerations, the proposed settlement as a whole is reasonable and within the range of possible approval. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the Class.

## V.     CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED. R. CIV. P. 23 IS APPROPRIATE

The defendants have consented to certification of the Class in order to effectuate the settlement. Courts in this circuit have recognized the propriety of conditional class certifications for settlement purposes. *In re Lupron® Mktg. & Sales Practices Litig.*, 345 F. Supp. at 139. *See The South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 338 (D.S.C. 1991) ("The propriety of certifying plaintiff classes for the purposes of implementing settlements is well-recognized.") The primary benefit of certifying a settlement class "is that it clearly establishes the financial benefits of participating in a class settlement and hence provides the putative class members with a more informed choice for opting in or out of the class." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983). The creation of a settlement class enhances absent class members' opt out rights because they gain the opportunity to accept or reject a proposed settlement at the same time as the right of exclusion. *In re Prudential Sec. Inc. Ltd. Partnership Litig.*, 163 F.R.D. 2000, 205-206 (S.D.N.Y. 1995). Whereas the members of the a class without knowledge of their chance for success, a settlement class will be better informed as to whether to remain in the class or opt out. *Id*. at 205-206. further, "there is an overriding public interest in settling and quieting litigation and this is particularly true in class actions." *Id*. at 209 (citations omitted).

### A.    The Proposed Class Satisfies the Requirements of Rule 23(a)

### 1.    The Class is Sufficiently Numerous

To meet the requirement of numerosity, the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a). During the Class Period more than 10.5 million shares of Ibis common stock traded on the NASDAQ. The threshold for a presumption of impracticality of joinder, therefore, is easily exceeded. "To meet this requirement, the class representatives need only show that it is difficult or inconvenient to join all the members of the class." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997). As courts in this District have held, "numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989). *See*, *e.g.*, *Randle v. SpecTran*, 129 F.R.D. 386, 390 (D. Mass. 1988) (certifying a class where more than 4.5 million shares of common stock were outstanding and actively traded.)

### 2.    Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class. . . ." Fed. R. Civ. P. 23(a)(2) (emphasis added). *See Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987). Indeed, the "commonality requirement is a 'low hurdle' easily surmounted." *Duhaime*, 177 F.R.D. at 63 (citations omitted). This action presents numerous common questions of both law and fact, including:

(a)    whether the federal securities laws were violated by defendants' acts and omissions, as alleged in the Complaint;

(b)    whether defendants participated in or pursued the concerted action or common course of conduct alleged in the Complaint;

(c)     whether documents, press releases, and other reports disseminated to the investing public during the Class period omitted or misrepresented material facts as alleged in the Complaint;

(d)     whether defendants allegedly acted with knowledge or reckless disregard for the truth in omitting to state and/or misrepresenting material facts;

(e)     whether, during the Class Period, the market price of Ibis' common stock was artificially inflated and/or maintained by material non-disclosures and/or misrepresentations alleged in the Complaint; and

(f)     whether the members of the Class sustained damages and, if so, the proper measure thereof.

Rule 23(a)(2) is plainly satisfied here.  *See*, *Randle*, 129 F.R.D. at 390 ("Plaintiffs present common questions in their allegations of misstatements and omission in various Spectran public financial documents.").  "These 'questions are illustrative rather than exhaustive, but establish the existence of the commonality required by Rule 23,'"  *Kirby*, 116 F.R.D. at 306 (*quoting M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468, 470 (D. Mass. 1984) .

### 3.     Lead Plaintiffs' Claims are Typical of Those of the Class

The typicality requirement is satisfied where, as here, if the class representatives' claims are typical of the claims of the other members of the Class.  The typicality requirement of Rule 23(a)(3) is met "'when the named plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claim.' and 'when the plaintiff's claims and those of the class are based on the same legal theory.'" *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997).  In essence, "[t]he question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." *Priest v. Zayre Corp.*, 118 F.R.D.

552-55 (D. Mass. 1988) (citation omitted). This requirement is readily met based on the claims alleged in the Consolidated Amended Complaint.

### 4.    Lead Plaintiffs are More than Adequate Representatives of the Class

Rule 23(a)(4)'s adequacy prong is composed of two elements. The first is that the class representative's interests must not conflict with those of other class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). *Duhaime*, 177 F.R.D. at 63. The second requirement "factors in [the] competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626.

Here, there are no conflicts between the Lead Plaintiffs and absent Class Members. Lead Plaintiffs are adequate as demonstrated by the fact that they have brought, litigated and settled the Action on behalf of all Class Members. Lead Plaintiffs will share in the settlement in exactly the same manner as all Class Members. Thus, the representatives for the Class have clearly shown that they are more than adequate representatives for the Class. Furthermore, Lead Plaintiffs' Lead Counsel are class action attorneys who have qualified as lead counsel in this and other securities class actions. Plaintiffs' Lead Counsel has a proven track record in the prosecution of class actions; and they have successfully litigated many major class action cases.

### B.    The Requirements of Rule 23(b)(3) Are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. This case easily meets Rule 23(b)(3)'s requirements.

14

1.    **Common Legal and Factual Questions
      Predominate in this Action**

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust law." *Amchem*, 521 U.S. at 625 (emphasis added). *See, e.g., Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (*1st Cir. 2003) ("After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class."). *See also*, *In re Elscint, Ltd. Sec. Litig.*, 1987 U.S. Dist. LEXIS 16746, at *29 (D. Mass. June 22, 1987) ("questions concerning the defendants' liability for alleged misstatements and omissions, predominate over any individual questions in this action"). In this case, defendants' alleged liability arises from their dissemination of false and misleading statements and the omission of material facts regarding Ibis' business and financial results. This is the central issue in the case and it predominates over any individual issues that theoretically might exist.

2.    **A Class Action is the Superior Means to
      Adjudicate Plaintiffs' Claims**

The second prong of Rule 23(b)(3) is essentially satisfied by the settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be not trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here – and Lead Plaintiffs know of none – are eliminated by the settlement.

In view of this criteria, courts routinely hold that violations of the federal securities laws are particularly well-suit for class treatment. Indeed, a superiority of the class action device in securities fraud cases, which involve numerous defrauded investors whose claims could not economically be litigated individually, is well recognized. As explained in *Randle*:

15

in light of plaintiffs' allegations concerning the large number of outstanding Spectran shares during the class period, the relatively small financial stake of class members who may have been injured and the likely geographical dispersion of class members, a class action is superior to other methods of adjudicating this controversy . . . .

129 F.R.D. at 393. *See also Grace*, 128 F.R.D. at 171; *Priest*, 118 F.R.D. at 553-54.

## VI.   THE PROPOSED PLAN OF CLASS NOTICE

Rule 23(c)(2)(B) says, "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e)(B) similarly says, "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The notice must "provide Class Members with a fair understanding of the actions, the parties and the nature of the settlement. . . [and] clearly detail[] which investors are eligible to participate in the settlement and the rights and obligations that accompany such participation." *Prudential*, 163 F.R.D. at 210. The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class." *In re Painwebber Ltd. P'ship Litig.*, No. 94 Civ. 8547, 1996 U.S. Dist. LEXIS 1265, at *304 (S.D.N.Y. Feb. 7, 1996).

Here, the parties propose to mail an individual notice and claim form (Stipulation, Exhibit A, Exs, 1, 2 thereto), to all Class Members who can be identified with reasonable effort. The parties further propose to supplement the mailed notice with a summary notice (Stipulation, Exhibit A, Ex. 3 thereto), published in *The Wall Street Journal*. Thus, the proposed method of notice comports with Rule 23 and the requirements of due process. *See*, *e.g.*, *Prudential*, 163 F.R.D. at 210-11

16

(holding that adequate notice was provided by mailing notice to each class member whose address could be reasonably located, supplemented by newspaper publication of summary notice).

As for the content of the notice, Rule 23(c)(2)(B) says:

The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified for settlement purposes,

- the class claims, issues, or defenses,

- that a class member may enter an appearance through counsel if the member so desires, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Where notice is being sent in connection with a proposed settlement, the notice must also fairly inform class members of the terms of the settlement and their options with respect thereto.  *See Prudential*, 163 F.R.D. at 210.  Furthermore, where a settlement notice is being sent in a securities class action, the Private Securities Litigation Reform Act of 1995 requires the notice to state (1) "the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [15 USCS §§78a], a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) [t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably

17

available to answer questions from class members. . . ."; (5) and "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp.2d 180, 184 (S.D.N.Y. 2003). In addition, the notice must have a cover page summarizing the above information. *See id*.

The proposed form of Class Notice here, among other things, describes the nature, history, and status of the litigation; sets forth the definition of the Settlement Class; states the class claims and issues; and informs Class Members that they may enter an appearance through their own counsel. In addition, the notice describes the settlement and sets forth the $1,900,000.00 amount of the settlement fund and the portion that Lead Plaintiffs proposes to distribute among the Class, both in the aggregate and on an average per share basis; explains the proposed Plan of Allocation; states the parties' disagreement over damages; sets out the amount of attorneys' fees and expenses that Plaintiffs' Lead Counsel intends to seek in connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per share basis; provides contact information for Plaintiffs' Lead Counsel; and summarizes the reasons the parties are proposing the settlement. The notice also discloses the date, time, and place of the formal settlement fairness hearing, and the procedures for commenting on the settlement and appearing at the hearing. The notice contents therefore satisfy all applicable requirements.

Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Settlement Class.

18

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully ask that the Court grant preliminary approval of the proposed settlement and enter the proposed Preliminary Order in Connection with Settlement Proceedings, submitted as Exhibit A to the Stipulation.

Dated: December 7, 2006                    Respectfully submitted,

**SHAPIRO HABER & URMY LLP**
**By:**


**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO #454680
Theodore Hess-Mahan BBO #557109
53 State Street
Boston, MA 02109
Tel:    617-439-3939

Liaison Counsel for Lead Plaintiffs

**LAW OFFICES BERNARD M.**
**         GROSS, P.C.**
**By:**


**/s/Robert P. Frutkin**
Robert P. Frutkin
Suite 450, Wanamaker Bldg.
100 Penn Square East
Philadelphia, PA 19102
Tel:    215-561-3600

Lead Counsel for Lead Plaintiffs

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I hereby certify that the parties' counsel have conferred in a good faith effort to narrow or resolve the issues raised in this motion and that defendants, by and through their counsel, do not object to the relief requested herein.

                    **/s/Theodore M. Hess-Mahan**
                    Theodore Hess-Mahan

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 7, 2006.

**/s/Theodore M. Hess-Mahan**
Theodore M. Hess-Mahan