UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE IBIS TECHNOLOGY SECURITIES LITIGATION ) ) ) ) ) | Case No. 04 cv 10446 RCL |

MEMORANDUM OF LAW IN SUPPORT OF
LEAD PLAINTIFFS' APPLICATION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ............................................................................................................ 1

II. BACKGROUND OF THE LITIGATION AND PROPOSED SETTLEMENT ......................................................................................................... 1

III. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23, F.R.C.P. ................................................................................................. 2

IV. ARGUMENT ................................................................................................................... 3

    A. Standards For Approval Of Class Action Settlements ............................. 3

    B. The Proposed Settlement Is Fair, Reasonable, And Adequate ................ 5

        1. Plaintiffs' Likelihood Of Success On The Merits ........................... 5

        2. The Stage Of The Litigation And The Amount Of Discovery Completed ................................................................... 7

        3. The Recommendations And Quality Of Counsel .......................... 8

        4. Future Expense And Likely Duration Of Litigation ........................ 9

        5. The Class Overwhelmingly Supports This Settlement ................. 10

        6. The Presence Of Good Faith And The Absence Of Collusion ........................................................................................ 10

    C. The Plan of Allocation of the Net Settlement Fund Is Fair And Reasonable ......................................................................... 11

V. CONCLUSION ............................................................................................................... 13

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                          **PAGE**

*In re AMF Bowling Sec. Litigation*, 334 F. Supp. 2d 462 (S.D.N.Y. 2004) ................... 10

*Abrams v. Van Kampen Funds, Inc.*, 2006 U.S. Dist. LEXIS 2129
 (N.D.Ill.January 18, 2006) ................................................................................. 8

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002) ............................................. 6

*In re American Bank Note Holographics*, 127 F. Supp. 2d 418
 (S.D.N.Y. 2001) ................................................................................................ 12

*In re Cabletron System, Inc.*, 311 F.3d 11 (1st Cir. 2002) ............................................. 6

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981) ................................................. 5

*City Pshp. Co. v. Atlantic Acquisition Ltd. Pshp.*, 100 F.3d 1041
 (1st Cir. 1996) ................................................................................................ 7, 8, 9

*In re Compact Discount Minimum Advertised Price Antitrust Litigation*,
 216 F.R.D. 197 (D. Me. 2003) ...................................................................... 4, 8, 11

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005) ................................. 9

*Duhaime v. John Hancock Mutual Life Insurance Co.*, 177 F.R.D. 54
 (D. Mass. 1997) ................................................................................................ 3

*Duhaime v. John Hancock Mutual Life Insurance Co.*, 183 F.3d 1
 (1st Cir. 1999) ................................................................................................ 3

*Dura Pharm. v. Broudo*, 544 U.S. 336 (2005) ............................................................. 12

*Durrett v. Housing Authority of Providence*, 896 F.2d 600 (1st Cir. 1990) ..................... 3

*Evans v. Jeff D.*, 475 U.S. 717, (1986)) ................................................................... 4

*In re Fleet/Norstar Sec. Litigation*, 935 F. Supp. 99 (D.R.I. 1996) ................................ 3

*In re Global Crossing Sec. & ERISA Litigation*, 225 F.R.D. 436
 (S.D. N.Y. 2004) ................................................................................................ 5,11

*Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974) ..................................................... 4

*Guckenberger v. Boston University*, 957 F. Supp. 306 (D. Mass. 1997) ........................ 3

*In re Initial Public Offering Sec. Litigation*, 226 F.R.D. 186 (S.D.N.Y. 2005) ................ 10

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ............................................................. 3, 4

*Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D. Mass. 1987) ................................. 3

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................... 10

*Randle v. SpecTran*, 129 F.R.D. 386 (D. Mass. 1988) ................................................. 3

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) ..................................................... 4, 8

*Slice, Inc. v. Wal-Mart Stores, Inc.*, 125 S. Ct. 2277 (2005) ......................................... 3

*Smilow v. Southwestern Bell Mobile System, Inc.*, 323 F.3d 32
    (1st Cir. 2003) ............................................................................................. 3

*In re Stone & Webster, Inc., Sec. Litigation*, 414 F.3d 187 (1st Cir. 2005) ................... 5

*In re Sumitomo Copper Litigation*, 189 F.R.D. 274 (S.D.N.Y. 1999) ............................. 9

*In re Toys "R" Us Antitrust Litigation*, 191 F.R.D. 347 (E.D.N.Y. 2000) ....................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ......................... 3

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(e) ................................................................................................. 1

The Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(e)(1) ........................ 12

Lead Plaintiffs, Martin Smolowitz, George Harrison and Mark G. Forgue, apply to this Court for final approval of the proposed settlement ("the Settlement") pursuant to Fed. R. Civ. P. 23(e) and respectfully request entry of the Final Judgment and Order, an Exhibit to the Stipulation and Agreement of Settlement, dated as of December 6, 2006 (the "Stipulation").  On January 25, 2007, the Court granted preliminary approval of the Settlement ("the Preliminary Approval Order") and scheduled the Settlement Fairness Hearing on April 26, 2007 at 2:30 p.m.  Notice has been mailed and published pursuant to the Preliminary Approval Order.[1]  There has been no objection to the Settlement from any class member.

## I. INTRODUCTION

This securities class action is brought on behalf of persons or entities who purchased the common stock of Ibis Technology Corporation ("Ibis") during the period from July 23, 2003 through and including December 12, 2003 (the "Class Period") (the "Class"). Under the terms of the Stipulation, the payment of $1,900,000.00 has been made on behalf of Defendants for the benefit of the Class ("the Settlement Consideration"). The Settlement Consideration has been deposited in an interest bearing escrow account for the benefit of the Class.

## II. BACKGROUND OF THE LITIGATION AND PROPOSED SETTLEMENT

As detailed in the Affidavit of Robert P. Frutkin ("the Frutkin Affidavit"), filed herewith, the parties engaged in substantial pre-trial proceedings, including motion practice and discovery, relating to the claims and defenses concerning the underlying events and

---

[1]     See the Affidavit of the Claims Administrator submitted herewith.

transactions alleged in the Conformed Consolidated Amended Complaint. The Settlement was achieved only after mediation before the Honorable Nicholas H. Politan, a retired federal judge, on September 27, 2006.

### III.  THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23, F.R.C.P.

The Settlement has been reached on behalf of the "Class" and "Class Members" defined in the Stipulation. Defendants have consented to the certification of the Class for purposes of the Settlement only and the Court, in the Preliminary Approval Order, granted conditional certification to the Class. The Class, defined to include persons or entities who purchased the common stock of Ibis between July 23, 2003 and December 12, 2003, inclusive, excludes Defendants in this Action, members of the immediate family (parents, spouses, siblings and children) of any individual who was named as a Defendant, the executive officers, directors, employees, subsidiaries and affiliates of Ibis, and any person, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and legal representatives, heirs, successors in interest or assigns of any such excluded party. Also excluded from the Class is any putative Class Member who exclude itself by filing a Request for Exclusion in accordance with the requirements set forth in the Notice. The date for filing Requests for Exclusion has passed, and no requests have been received.

For the reasons advanced to the Court and upon which the Court granted conditional certification, Lead Plaintiffs respectfully request that the Court grant certification of the Class for purposes of the Settlement. All of the prerequisites set forth in Rule 23, F.R.C.P. have been met and Lead Plaintiffs and Lead Counsel have ably represented the Class

throughout the litigation, culminating in the Settlement. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) (numerosity) (adequacy); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D. Mass. 1987) (commonality); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306 (D. Mass. 1997) (typicality); *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (*1st Cir. 2003) (predominance); *Randle v. SpecTran*, 129 F.R.D. 386 (D. Mass. 1988)*(superiority)*.

## IV.    ARGUMENT

### A.    Standards For Approval Of Class Action Settlements

A class settlement will be approved if it is fair, reasonable, and adequate. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 2 (1st Cir. 1999); *Durrett v. Housing Authority of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). This determination is addressed to the Court's sound discretion, which "is circumscribed by the long-recognized policy of encouraging settlements." *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 105 (D.R.I. 1996).[2]

Although no single test applies in the First Circuit for determining whether a class action settlement is fair, reasonable, and adequate, courts in this Circuit have considered the following factors, *inter alia*: (1) plaintiff's likelihood of success on the merits; (2) the stage of the litigation and the amount of discovery completed; (3) the terms of settlement; (4) the recommendations and quality of counsel; (5) the future expense and likely duration

---

[2] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (courts should be "mindful of the strong judicial policy in favor of settlements, particularly in the class action context") (citation omitted), *cert. denied sub nom, Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 125 S. Ct. 2277 (2005); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation").

of litigation; (6) the nature and number of objections; and (7) the presence of good faith and the absence of collusion. *See Rolland v. Cellucci*, 191 F.R.D. 3, 8 (D. Mass. 2000). *See also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003) (citing cases).

In applying these factors, courts recognize that the "essence of settlement is compromise." *Isby*, 75 F.3d at 1200. *See Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974) ("any settlement is the result of a compromise - - each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion"). Accordingly, the court should not "prejudge the merits of the case" or "second-guess the settlement." The court's role is limited instead "to determin[ing] if the parties' conclusion is reasonable." *Compact Disc*, 216 F.R.D. at 211 (*citing Evans v. Jeff D.*, 475 U.S. 717, 727 (1986)).

Lead Plaintiffs respectfully submit that the Settlement is eminently fair, reasonable, and adequate. The parties have thoroughly weighed the strengths and weaknesses of their respective positions and, after extensive negotiations facilitated by retired federal judge Nicholas E. Politan, reached an informed compromise.

**B.     The Proposed Settlement Is Fair, Reasonable, And Adequate**

**1.     Plaintiffs' Likelihood Of Success On The Merits**

The foundation of any settlement is the uncertainty as to the outcome of the lawsuit. Thus, one of the factors the Court should consider is whether there are questions of law or fact which could place the ultimate outcome of the litigation in doubt.  In assessing risks as to proof, the Court does not "decide the merits of the case or resolve unsettled legal questions."  *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).  Accordingly, courts routinely approve settlements where plaintiffs would have faced significant legal or factual obstacles to establishing liability.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D. N.Y. 2004).  Lead Counsel's decision to settle this action for $1.9 million necessarily took into account the risks of continued litigation against defendant.

Lead Plaintiffs' counsel, who have a great deal of experience in the prosecution and resolution of complex class action securities litigation, have carefully evaluated the merits of the case and the proposed settlement.  Based on the discovery conducted and after considerable consultation with Lead Plaintiffs' accounting and damage/materiality experts, in the wake of the ruling on defendants' motion to dismiss, Lead Counsel recognized that there were substantial issues concerning both liability for the alleged misrepresentations and the extent of the damages sustained by the Class.

Lead Counsel for Plaintiffs believe that the accounting claim was well-grounded in the facts, as revealed in the documents obtained from the accountants and from Ibis, and that there was sufficient evidence to proceed to the jury on liability.  Proof of *scienter* with respect to the accounting issue and the accuracy of Ibis' financial statements, however, was not without significant risk.  *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187 (1st

Cir. 2005); *In re Cabletron Sys., Inc.*, 311 F.3d 11 (1st Cir. 2002); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 82 (1st Cir. 2002).

Lead Plaintiffs believe that the most significant hurdle they would face at trial was the extent of the damages sustained by the Class as the result of the accounting claim that remained in the litigation. In the wake of the ruling on the motion to dismiss, which removed from the case the non-accounting claims, the maximum provable damages sustained by the Class were significantly reduced, as set forth in the Frutkin Affidavit, ¶19. Thus, Lead Plaintiffs faced the difficult situation of being able to prove liability at trial but having only a very limited damage recovery.[3] At the mediation before retired judge Politan, the extent of the provable damages became the focal point of the negotiations. The issue was compounded for Lead Plaintiffs by the length of time and expense to be incurred in arriving at a liability verdict at trial.

Accordingly, Lead Counsel believed it was in the best interests of the Class to achieve a settlement earlier rather than later in the litigation process. This Settlement, which creates a fund of $1.9 million for the benefit of the Class, must be viewed in light of the fact that the action was full of risk, which placed the ultimate outcome in serious doubt.

---

[3] At trial the proof of damages would be based on Lead Plaintiffs' expert's testimony. Defendants would present their own expert testimony disputing both the existence and amount of damages suffered by the Class. Consequently, the jury would be asked to make complicated assessments when faced with the parties' conflicting expert opinions. There is no way to predict the jury's verdict.

### 2. The Stage Of The Litigation And The Amount Of Discovery Completed

As detailed in the Frutkin Affidavit, the Proposed Settlement was reached only after all of the following events had occurred: the Court issued its ruling granting in part and denying in part defendants' motion to dismiss; Lead Plaintiffs received the relevant documents concerning the allegations in the Conformed Amended Complaint from defendants and Ibis' outside auditor, pursuant to document requests and subpoena; Lead Plaintiffs consulted with their experts in the fields of GAAP accounting, materiality and damages; and the parties engaged in good faith arm's-length settlement negotiations between themselves and subsequently with the offices of retired federal judge Politan. As a result, counsel were well positioned to understand the strengths and weakness of their claims and defenses.

Accordingly, the parties were able to make a fully informed evaluation of the strengths and weaknesses of the claims, the risks of continued litigation and to evaluate fully the benefits of the Proposed Settlement, taking into account the costs and risks of continued litigation and the negotiations before retired judge Politan, before agreeing to settle. *See City Pshp. Co. v. Atlantic Acquisition Ltd. Pshp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

### 3.    The Recommendations And Quality Of Counsel

Here, counsel for the parties judge the Proposed Settlement to be fair, reasonable, and adequate.[4]  The parties' agreement in principle to settle the action was achieved after a day-long mediation.  Counsel for Defendants and Lead Plaintiffs have extensive experience in litigating class actions brought under the federal securities laws.

Lead Counsel had a thorough understanding of the strengths and weaknesses of Lead Plaintiffs' case at the time they entered into the Settlement.  Lead Counsel had considered carefully the strengths and weaknesses of Lead Plaintiffs' claims; the likelihood of success against defendant; and the likely total damages which could be recovered.  After conducting a thorough analysis of the action, and all relevant factors, and after conducting extensive arms'-length settlement negotiations with counsel for defendant, Lead Counsel have determined that given the benefits conferred on the Class by the Settlement, the Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

Here, the opinion of experienced counsel, formed only after the rigors of motion practice, discovery and the negotiation process, involving an experienced, independent mediator, support the conclusion that the Settlement is fair, reasonable and adequate. *City Pshp. Co.*, 100 F. 3d at 1043 (1st Cir. 1996) ("Lawyers know their strengths and they know where the bones are buried."); *Rolland*, 191 F.R.D. at 6 (D. Mass. 2000) ("The proponents of a class settlement can obtain a 'strong initial presumption that the compromise is fair and

---

[4]    The quality and experience of counsel supports final approval of the Settlement.  *See Compact Disc*, 216 F.R.D. at 211-12 (qualifications of counsel favored approval of settlement); *Abrams v. Van Kampen Funds, Inc.*, 2006 U.S. Dist. LEXIS 2129 (N.D.Ill. January 18, 2006) ("It is also taken into consideration that the settlement is being recommended by experienced plaintiff securities litigators.").

reasonable' by establishing . . . that the proponents' attorneys have experience in similar cases") (citation omitted).  Indeed, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See City Pshp. Co.*, 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement").

### 4.     Future Expense And Likely Duration Of Litigation

Without a settlement, the anticipated complexity, cost, duration and uncertainty of continued litigation would be considerable.  Lead Plaintiffs assert claims against defendants under the Securities Exchange Act of 1934, as amended, which are complex, involving sharply disputed issues of accounting fraud, falsity of financial statements, the application of GAAP accounting principles, *scienter*, materiality and damages.  *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) ("[I]n evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain.") (Citation omitted).

Where the principal accounting and damage issues are heavily dependent upon expert testimony, the court's statement in *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 337 (S.D.N.Y. 2005), is germane to the court's consideration of the Proposed Settlement. The *Denney* court stated, "[i]f this case were to be tried, both sides would be heavily dependent on . . . experts, further compounding the expense and complexity of this case. The burden on the parties would be significant."

Given the uncertain prospects of success at trial, and the cost, delay and uncertainties of any appeals, settlement at this time is highly beneficial to the Class.  The $1.9 million settlement will provide cash relief to the Class now, without subjecting them to

9

the risks, duration and expense of continuing litigation through and after trial. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial. These factors weigh in favor of the proposed Settlement.").

### 5. The Class Overwhelmingly Supports This Settlement

The Class's reaction to the Settlement strongly supports final approval. As set forth in the Affidavit of the Claims Administrator, Lead Plaintiffs caused the Settlement Notice to be mailed to more than 5,980 persons and institutions, and a Summary Notice was published in *The Wall Street Journal* on February 15, 2007. The time for filing objections to the Settlement expired on April 11, 2007, and no objections have been filed.

### 6. The Presence Of Good Faith And The Absence Of Collusion

The parties entered into the Settlement in good faith, at arms' length, and without a trace of collusion. Settlement negotiations did not begin until after the Court's ruling on Defendants' motion to dismiss and the mediation before retired Judge Politan did not begin until after Lead Plaintiffs obtained the relevant documents from Ibis and its auditors. The day-long mediation session was preceded by the exchange of *in camera* mediation briefs. Only after a full day of mediation, were the parties able to reached the Proposed Settlement. The supervision and facilitation of the settlement negotiations by retired Judge Politan establishes that there was no collusion here, and strongly supports a presumption that the Proposed Settlement is fair. *See In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (settlement was "clearly the result of arm's length bargaining" where negotiations were facilitated by a judicial officer); *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) ("The participation of Judge Sweet and retired Judge

Politan in the settlement process gives me confidence that they were conducted in an arms-length, non-collusive manner."); *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator," a retired federal judge).

In sum, all of the factors pertinent to this Court's consideration of the fairness, reasonableness and adequacy of the Settlement strongly support final approval.

### C.  The Plan of Allocation of the Net Settlement Fund Is Fair And Reasonable

A plan of distribution of net settlement proceeds among Class members must similarly be fair, reasonable and adequate. *See Compact Disc*, 216 F.R.D. at 213. "When formulated by competent and experienced class counsel, an allocation plan need have only a reasonable, rational basis." *Global Crossing*, 225 F.R.D. at 462 (citation omitted).

The Plan of Allocation, which is set forth in paragraphs 32-37 of the Notice is intended to effectuate an equitable allocation of the settlement fund among class members. It is not intended to be a measure of damages that would be recoverable at trial.

The Plan of Allocation is based on Lead Plaintiffs' allegation that the market price of Ibis common stock was artificially inflated by Defendants' alleged wrongful conduct. The Recognized Loss of each Class Member is determined by the difference between the price paid for each share of Ibis common stock purchased during the Class Period and $12.88, the weighted average trading price of Ibis shares during the 90-day trading period following the end of the Class Period. Notice, ¶ 33 (a) and (b). The Plan of Allocation is in accord

with The Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(e)(1), which provides that "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of the security, the award of damages to the [class member] shall not exceed the difference between the purchase price paid for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission...is disseminated to the market."

The Plan of Allocation also comports with the Supreme Court's ruling in *Dura Pharm. v. Broudo*, 544 U.S. 336 (2005), and, thus, any Class Member who both purchased and sold its stock during the Class Period will not have a Recognized Loss with respect to those shares.  Notice, ¶ 33(c).

The independent claim administrator, Valley Forge Administrative Services, Inc., selected by Lead Counsel, will calculate each Authorized Claimant's "Recognized Loss," based on the information supplied with the Class Member's proof of claim.

The Plan of Allocation is fair and equitable to all Class Members and warrants the Court's approval.  *See In re American Bank Note Holographics,* 127 F. Supp. 2d 418, 429-430 (S.D.N.Y. 2001) ("An allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel.")  The Plan of Allocation, however, is not a condition of settlement.  Under the Stipulation, the Net Settlement Funds may be distributed in accordance with the proposed Plan of Allocation or such other plan the Court may approve.  (*See* Stipulation ¶19).

**V.    CONCLUSION**

For the foregoing reasons, Lead Plaintiffs respectfully ask that the Court grant final approval of the proposed settlement and enter the proposed Order and Final Judgment of Dismissal.

Dated:   April 18, 2007                    Respectfully submitted,

**SHAPIRO HABER & URMY LLP**
By:

**/s/Thomas G. Shapiro**
Thomas G. Shapiro (BBO #454680)
53 State Street
Boston, MA 02109
Tel:   617-439-3939

Liaison Counsel for Lead Plaintiffs

**LAW OFFICES BERNARD M. GROSS, P.C.**
Deborah R. Gross (BBO#546151)
Robert P. Frutkin
Suite 450, Wanamaker Bldg.
100 Penn Square East
Philadelphia, PA 19102
Tel:   215-561-3600

Lead Counsel for Lead Plaintiffs

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 18, 2007.

                                       **/s/Thomas G. Shapiro**
                                       Thomas G. Shapiro