### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| IN RE IBIS TECHNOLOGY | : | **Case No. 04 cv 10446 RCL** |
| SECURITIES LITIGATION | : |  |

---

## PETITION OF PLAINTIFFS' COUNSEL FOR AN AWARD
## OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. i

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   PLAINTIFFS' COUNSEL SHOULD BE AWARDED AS ATTORNEYS' FEES A
      PERCENTAGE OF THE COMMON FUND CREATED AS A RESULT OF THE
      SETTLEMENT ................................................................................................ 3

III.  THE REQUESTED FEE IS FAIR AND REASONABLE AS A PERCENTAGE OF THE
      FUND CREATED FOR THE BENEFIT OF CLASS MEMBERS AND IS CONSISTENT
      WITH FEE AWARDS IN COMPARABLE CASES ........................................... 5

      A.    The Requested Fee Is Consistent With Recent Fee Awards In Securities Cases ........ 6

      B.    The Relevant Factors Support the Fee Request ........................................ 7

            1.    The Amount of the Recovery ............................................................ 7

            2.    The Amount of Time Devoted .......................................................... 8

            3.    The Skill and Efficiency of Counsel ................................................ 9

            4.    The Complexity of the Litigation and the Significant Obstacles to Recovery .. 10

            5.    The Risk of Non-Payment ............................................................... 11

IV.   A "CROSS-CHECK" OF PLAINTIFFS' COUNSEL'S LODESTAR DEMONSTRATES
      THE REASONABLENESS OF THE REQUESTED AWARD ........................ 13

V.    PUBLIC POLICY CONSIDERATIONS SUPPORT PLANTIFFS' COUNSEL'S
      REQUESTED FEE ......................................................................................... 15

VI.   THE REACTION OF CLASS MEMBERS TO THE FEE SOUGHT BY COUNSEL
      DEMONSTRATES THE REASONABLENESS OF THE REQUESTED FEE ...... 16

VII.  PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY
      INCURRED LITIGATION EXPENSES ........................................................ 16

VIII. CONCLUSION ............................................................................................. 17

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                        <u>Page(s)</u>

*In re Aetna, Inc. Securities Litigation,*
  MDL No. 1219, 2001 U.S. Dist. LEXIS 68
  (E.D. Pa. Jan. 4, 2001) .......................................................................................15

*Anixter v. Home-Stake Production Co.,*
  77 F.3d 1215 (10th Cir. 1996) ...........................................................................13

*AUSA Life Insurance Co. v. Ernst & Young,*
  No. 00-9472, 2002 U.S. App. LEXIS 13845
  (2d Cir. July 8, 2002) .........................................................................................13

*Backman v. Polaroid Corp.,*
  910 F.2d 10 (1st Cir. 1990) ...............................................................................13

*In re Bay Financial Corp. Securities Litigation,*
  CA No. 89-2377-DPW (D. Mass. Nov. 4, 1996)..................................................7

*Blum v. Stenson,*
  465 U.S. 886 (1984)..........................................................................................5, 6

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980)...............................................................................................4

*In re Boston & Maine Corp.,*
  778 F.2d 890 (1st Cir. 1985)..............................................................................15

*In re Buspirone Antitrust Litigation,*
  No. 01-MD-1413, 2003 U.S. Dist. LEXIS 26538
  (S.D.N.Y. Apr. 11, 2003)...................................................................................15

*Bussie v. Allmerica Financial Corp.,*
  No. 97-40204-NMG, 1999 U.S. Dist. LEXIS 7793
  (D. Mass. May 19, 1999) ......................................................................................6

*Camden I Condominium Association v. Dunkle,*
  946 F.2d 768 (11th Cir. 1991) .............................................................................5

*In re Cell Pathways, Inc. Securities Litigation,*
  01-CV-1189, 2002 U.S. Dist. LEXIS 18359
  (E.D. Pa. Sept. 23, 2002) ..............................................................................11, 12

*Chalverus v. Pegasystems, Inc.,*
  CA No. 97-12570-WGY (D. Mass. Dec. 19, 2000)..............................................7

*In re Charter Communications, Inc. Securities Litigation*,
   MDL No. 1506, 2005 U.S. Dist. LEXIS 14772
   (E.D. Mo. June 30, 2005) ......................................................................................11, 15, 16, 17

*In re Continental Illinois Securities Litigation*,
   962 F.2d 566 (7th Cir. 1992) ................................................................................................5, 6

*In re Copley Pharmaceutical, Inc. Securities Litigation*,
   CA No. 94-11897-WGY (D. Mass. Feb. 8, 1996) ....................................................................7

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)............................................................................................13, 15

*Di Giacomo v. Plains All American Pipeline*,
   No. H-99-4137, 2001 U.S. Dist. LEXIS 25532
   (S.D. Tex. Dec. 18, 2001) ................................................................................................15, 16

*Duhaime v. John Hancock Mutual Life Insurance Co.*,
   989 F. Supp. 375 (D. Mass. 1997) .........................................................................................5

*Edmonds v. United States*,
   658 F. Supp. 1126 (D.S.C. 1987) .........................................................................................10

*Eltman v. Grandma Lee's, Inc.*,
   C.A. No. 82-1912, 1986 U.S. Dist. LEXIS 24902
   (E.D.N.Y. May 28, 1986)........................................................................................................16

*In re Flight Transportation Corp. Securities Litigation*,
   685 F. Supp. 1092 (D. Minn. 1987)........................................................................................14

*Furtado v. Bishop*,
   635 F.2d 915 (1st Cir. 1980) ...................................................................................................6

*In re Gillette Securities Litigation*,
   CA No. 88-1858-REK (D. Mass. Mar. 30, 1994)......................................................................7

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ...................................................................................................5

*Grendel's Den, Inc. v. Larkin*,
   749 F.2d 945 (1st Cir. 1984)............................................................................................14, 15

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)...................................................................................................10

*In re Heritage Bond Litigation,*
 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627
 (C.D. Cal. June 10, 2005) ............................................................................10, 13

*Johnston v. Comerica Mortgage Corp.,*
 83 F.3d 241 (8th Cir. 1996) ........................................................................5

*Landy v. Amsterdam,*
 815 F.2d 925 (3d Cir. 1987)........................................................................13

*LeBlanc-Sternberg v. Fletcher,*
 143 F.3d 748 (2d Cir. 1998)........................................................................14

*Lindy Brothers Builders v. American Radiator*
 *& Standard Sanitary Corp.,*
 540 F.2d 102 (3d Cir. 1976)........................................................................15

*In re Lloyd's American Trust Fund Litigation,*
 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663
 (S.D.N.Y. 2003) .........................................................................................6

*Malanka v. de Castro,*
 (CCH) Fed. Sec. L. Rep. ¶95,657
 (D. Mass. 1990) (McNaught, J.) .................................................................7

*Maley v. Del Global Technologies Corp.,*
 186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................13, 15

*Manners v. American General Life Insurance Co.,*
 No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880
 (M.D. Tenn. Aug. 10, 1999) ......................................................................10, 11

*Margaret Hall Foundation, Inc. v.*
 *Atlantic Financial Management, Inc.,*
 CA No. 82-2543-S (D. Mass. May 19, 1989) .............................................7

*Miller v. Thane International, Inc.,*
 372 F. Supp. 2d 1198 (C.D. Cal. 2005) .....................................................13

*Mills v. Electric Auto-Lite Co.,*
 396 U.S. 375 (1970)....................................................................................4

*Missouri v. Jenkins,*
 491 U.S. 274 (1989)....................................................................................6, 14

*Morton v. Kurzweil Applied Intelligence, Inc.,*
 CA No. 10829-REK (D. Mass. Feb. 4, 1998)............................................7

*In re Nineteen Appeals Arising Out of the
San Juan Dupont Plaza Hotel Fire Litigation,*
982 F.2d 603 (1st Cir. 1992) ..................................................................17, 18

*In re Number Nine Visual Technology Securities Litigation,*
Master File No. 96-11207 (D. Mass. Feb. 6, 2001) ...............................7

*In re Nx Networks Securities Litigation,*
CA No. 00-11850-JLT (D. Mass. Nov. 22, 2004) .................................7

*In re Peritus Software Services, Inc. Securities Litigation,*
CA No. 98-CV-10578 (D. Mass. Feb. 28, 2000) ...................................7

*In re Picturetel Corp. Securities Litigation,*
CA No. 97-12135-DPW (D. Mass. Nov. 4, 1999) .................................7

*In re Prudential Insurance Co. of American Sales
Practices Litigation,*
962 F. Supp. 450 (D.N.J. 1997) ...........................................................16

*Radol v. Thomas,*
772 F.2d 244 (6th Cir. 1985) ...............................................................13

*Rawlings v. Prudential-Bache Properties, Inc.,*
9 F.3d 513 (6th Cir. 1993) ................................................................5, 8

*In re Rite Aid Corp. Securities Litigation,*
362 F. Supp. 2d 587 (E.D. Pa. 2005) ...................................................15

*In re Rite Aid Corp. Securities Litigation ("Rite Aid III"),*
396 F.3d 294 (3d Cir. 2005)............................................................5, 17

*Robbins v. Koger Properties,*
116 F.3d 1441 (11th Cir. 1997) ...........................................................13

*Roberts v. Texaco, Inc.,*
979 F. Supp. 185 (S.D.N.Y. 1997)
*adopted,* 1997 U.S. Dist. LEXIS 15094
(S.D.N.Y. July 29, 1997) ......................................................................16

*In re Segue Software, Inc.,*
CA No. 99-10891-RGS (D. Mass. July 31, 2001) .................................7

*Six Mexican Workers v. Arizona Citrus Growers,*
904 F.2d 1301 (9th Cir. 1990) ...............................................................5

*Stein v. Smith*,
  CA No. 01-10500-WGY (D. Mass. Oct. 18, 2005) ...................................................7

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................................................6

*Swedish Hospital Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ...............................................................................5

*In re Thirteen Appeals Arising Out of the*
  *San Juan Dupont Plaza Hotel Fire Litigation*,
  56 F.3d 295 (1st Cir. 1995) ..........................................................................4, 5, 6, 8

*In re Union Carbide Corp. Consumer Products*
  *Business Securities Litigation*,
  724 F. Supp. 160 (S.D.N.Y. 1989).......................................................................14

*In re Visa Check/Mastermoney Antitrust Litigation*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................11

*In re Walt Disney Co. Derivative Litigation*,
  907 A.2d 693 (Del. Ch. 2005)..............................................................................13

*In re WebSecure Securities Litigation*,
  CA No. 97-10662-GAO (D. Mass. Sept. 14, 1999)...............................................7

*Wilensky v. Digital Equipment Corp.*,
  CA No. 94-10752-JLT (D. Mass. July 11, 2001) ..................................................7

*Winkler v. NRD Mining, Ltd.*,
  198 F.R.D. 355 (E.D.N.Y. 2000)
  *aff'd, Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000)..........................................13

*In re Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................15

*Zeid v. Open Environment Corp.*,
  CA No. 96-12466-EFH (D. Mass. June 24, 1999).................................................7

*In re Zoll Medical Corp. Securities Litigation*,
  CA No. 94-11579-NG (D. Mass. Oct. 5, 1998)......................................................7

## STATUTES AND RULES

15 U.S.C. §78u-4(a)(6) ..............................................................................................6

## OTHER AUTHORITIES

*Manual for Complex Litigation,*
    Fourth § 14.121 (2004) ...............................................................................................8

Lead Counsel, the Law Offices of Bernard M. Gross, P.C., on behalf of all plaintiffs' counsel in the action ("Plaintiffs' Counsel"), respectfully submits this memorandum of law in support of counsel's petition for an award of attorneys' fees in the amount of 33% of the Gross Settlement Fund and reimbursement of litigation expenses of $86,531.06. Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of expenses is fully supported by the Lead Plaintiffs and the Class, and is entirely consistent with fee awards granted in cases of this type.

## I.     **PRELIMINARY STATEMENT**

As described more fully in the accompanying Memorandum of Law in Support of Lead Plaintiffs' Application for Final Approval of Class Action Settlement (the "Settlement Memorandum"), through their efforts, and despite a number of extremely significant hurdles to recovery, Plaintiffs' Counsel and the Lead Plaintiffs have secured a settlement for the Class consisting of $1,900,000.00 in cash (the "Settlement"). The Settlement has been deposited in an interest-bearing escrow account for the benefit of the Class. This Settlement represents an excellent result in an extremely high risk case. Having achieved this significant benefit for the Class, Lead Counsel seek an award of 33% of the Settlement, or $627,000, plus reimbursement of their out-of-pocket litigation expenses of $86,531.06.

The Settlement was achieved after the Court granted part of defendants' motion to dismiss, notably dismissing plaintiffs' allegations of violations of Section 10(b) of the Exchange Act and Rule 10b-5 with respect to misrepresentations concerning sales of Ibis' principal product during the Class Period, the i2000 Implanter (the "Implanter Claim"). The Court sustained plaintiffs' impairment allegations focusing on Ibis' misrepresentations concerning the carrying value of Ibis' 1000 implanters and related wafer products on Ibis' balance sheet (the "Impairment Claim"). Prior

to reaching the Settlement, plaintiffs' counsel spent over 1,597 hours investigating and prosecuting this Action. That work, which is more fully described in the Appendix of Declarations in Support of Joint Petition for Attorneys' Fees and Disbursements (the "Appendix"), included: legal and factual research for and drafting of the original and amended pleadings; briefing issues related to lead plaintiffs' motions for consolidation of the class actions; researching and briefing defendants' motion to dismiss and both parties' objections to the Magistrate's Report and Recommendation on defendants' motion to dismiss; drafting document requests directed to defendants and subpoenas on third parties; reviewing the relevant documents obtained from defendants and third parties pursuant to the document requests and subpoenas; consulting with experts on the Impairment Claim; engaging in settlement negotiations with defendants; drafting a mediation statement; engaging in mediation and preparing and negotiating the settlement agreement and related papers.

The Notice of Pendency of Class Action ("Notice"), which was mailed to Class Members, advised them that Lead Counsel would seek a fee award not to exceed thirty three and one third percent (33 1/3%) of the Settlement and a reimbursement of expenses in an amount not to exceed $100,000. The Notice also informed Class Members of their right to object to this application. The amounts now requested by Lead Counsel are exactly what the Class Members might expect from the Notice. Moreover, the date for Class Members to file objections to the Settlement and/or Lead Counsel's request for attorneys' fees has passed. Significantly, no Class Member has filed an objection to the fee and expense request.

The trend of courts in this Circuit is to award attorneys' fees on a percentage basis. The criteria for evaluating the common fund fee requests are set forth in *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 305 n.6 (1st Cir. 1995), and easily support Plaintiffs' Counsel's fee request. These criteria include the amount of the recovery;

the skill and efficiency of counsel; the complexity of the litigation and the risk of nonpayment; and the amount of time devoted. In view of the excellent result obtained here, in light of the difficulties Plaintiffs'Counsel faced, the quality of Plaintiffs' Counsel's representation, and the time and resources that Plaintiffs' Counsel committed to this litigation in the face of a very substantial risk that there would be no recovery for the Class at all, Lead Counsel respectfully submits that a fee award representing 33% of the Settlement Fund is fair and reasonable and, as demonstrated below, comports with applicable precedent.

## II.    PLAINTIFFS' COUNSEL SHOULD BE AWARDED AS ATTORNEYS' FEES A PERCENTAGE OF THE COMMON FUND CREATED AS A RESULT OF THE SETTLEMENT

Courts have long recognized that when, as in this case, a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). This "equitable" or "common fund" doctrine spreads the cost of the litigation, including attorneys' fees, among the fund's beneficiaries. The rationale for the common fund principle was described by the United States Supreme Court in *Boeing* as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole . . .

444 U.S. at 478 (citations omitted). *See also Thirteen Appeals*, 56 F.3d at 305 n.6.

Since *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), when the Supreme Court observed that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class," courts in the First Circuit have followed the trend in favor of awarding attorneys' fees from a

3

common fund on a percentage of the fund (or "POF") basis. *See Thirteen Appeals*, 56 F.3d at 307;

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997).[1]

In *Thirteen Appeals*, 56 F.3d at 307, one of the First Circuit's most recent pronouncements on

the subject, the Court affirmed the District Court's attorneys' fee award of 31% of a $220 million

common fund, holding that "use of the POF method in common fund cases is the prevailing praxis"

based upon the "distinct advantages that the POF method can bring to bear in such cases." The

*Thirteen Appeals* court stressed that the percentage method is far less burdensome to administer than

the lodestar method in that it does not "forc[e] the judge to review the time records of a multitude of

attorneys in order to determine the necessity and reasonableness of every hour expended," and in that

it "lessens the possibility of collateral disputes that might transform the fee proceeding into a second

major litigation." *Id.* The *Thirteen Appeals* court also noted that, unlike the lodestar method, the

POF method does not create "a monetary incentive to spend as many hours as possible" on the case,

or, conversely, a "disincentive to early settlement," thereby more closely aligning plaintiffs'

counsel's interests with the interests of the class. *Id.* Finally, because the percentage method is

---

[1]  In addition to this Circuit, nine other Circuits — the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia — have either endorsed or required the POF method for awarding counsel fees. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("*Rite Aid III*") ("The percentage-of-recovery method is generally favored in common fund cases"); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (authorizing percentage method); *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994) (fee award should be calculated using the percentage method); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (district court has discretion to award a percentage of the common fund); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[P]ercentage-of-the-fund method is the appropriate mechanism for determining the attorney fee awards in common fund cases."); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (fee award should not be based on "individual hours," but rather on the percentage that counsel "would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (mandating use of percentage method); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("[A] reasonable fee under the common fund doctrine is calculated as a percentage of the recovery.").

"result-oriented rather than process-oriented," the *Thirteen Appeals* court noted that the POF method "better approximates the workings of the marketplace." *Id.*[2]

Further, application of the percentage approach in securities class actions is supported by the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." *See* 15 U.S.C. §78u-4(a)(6).

## III.   THE REQUESTED FEE IS FAIR AND REASONABLE AS A PERCENTAGE OF THE FUND CREATED FOR THE BENEFIT OF CLASS MEMBERS AND IS CONSISTENT WITH FEE AWARDS IN COMPARABLE CASES

In selecting an appropriate percentage award, both the United States Supreme Court and the First Circuit have recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Thirteen Appeals*, 56 F.3d at 307; *see also Cont'l Ill. Sec. Litig.*, 962 F.2d at 568. The ordinary contingency fee arrangement is for one-third of the recovery. See *Furtado v. Bishop*, 635 F.2d 915, 917 (1st Cir. 1980). *Accord, Blum*, 465 U.S. at 904 (Brennan, J., concurring in part and dissenting in part) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers").

---

[2] In *Bussie v. Allmerica Financial Corp.*, No. 97-40204-NMG,1999 U.S. Dist. LEXIS 7793, at *5 (D. Mass. May 19, 1999), the court similarly summarized the advantages of the POF method over the lodestar method: "From a public policy standpoint, the POF method of calculating fees "more appropriately aligns the interests of the class with the interests of class counsel — the larger the value of the settlement, the larger the value of the fee award. Furthermore, the POF method encourages efficiency and avoids the disincentive to settle cases easily created by the lodestar method" (citations omitted). *See also Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ("[T]he percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace"); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *74 (S.D.N.Y. Nov. 26, 2002) (holding the percentage method is favored because it "directly aligns the interests of the class and its counsel" and "provides a powerful incentive for the efficient prosecution and early resolution of litigation").

**A.    The Requested Fee Is Consistent with Recent Fee Awards in Securities Cases**

The requested fee of 33% of the Gross Settlement Fund is consistent with attorneys' fee awards in other securities fraud class action cases in this district. *See, e.g., In re Nx Networks Sec. Litig.*, CA No. 00-11850-JLT (Nov. 22, 2004) (33% award); *Wilensky v. Digital Equipment Corp.*, CA No. 94-10752-JLT (July 11, 2001) (33% award); *Stein v. Smith,* CA No. 01-10500-WGY (Oct. 18, 2005) (33% award); *In re Number Nine Visual Tech. Corp. Sec. Litig.*, Master File No. 96-11207 (Feb. 6, 2001) (awarding 33 1/3%); *In re Peritus Software Servs., Inc. Sec. Litig.*, CA No. 98-CV-10578 (Feb. 28, 2000) (awarding 33%)*; In re Segue Software, Inc.*, CA No. 99-10891-RGS (July 31, 2001) (33% award); *Chalverus v. Pegasystems, Inc.*, CA No. 97-12570-WGY (Dec. 19, 2000) (33% of $5.25 million settlement); *Zeid v. Open Env't Corp.*, C.A. No. 96-12466-EFH (June 24, 1999) (fee of one-third of a $6 million settlement); *In re Picturetel Corp. Sec. Litig.*, CA No. 97-12135-DPW (Nov. 4, 1999) (one-third of $12 million fund); *Morton v. Kurzweil Applied Intelligence, Inc.*, CA No. 10829-REK (Feb. 4, 1998) (one-third of settlement fund); *In re Zoll Med. Corp. Sec. Litig.*, C.A. No. 94-11579-NG (Oct. 5, 1998) (33-1/3% of settlement); *In re Copley Pharm., Inc. Sec. Litig.*, CA No. 94-11897-WGY (Feb. 8, 1996) (33 1/3% fee awarded on a $6.3 million settlement fund); *In re Bay Fin. Corp. Sec. Litig.*, CA No. 89-2377-DPW (Nov. 4, 1996) (35% of settlement fund); *In re Gillette Sec. Litig.*, CA No. 88-1858-REK (Mar. 30, 1994); *Malanka v. de Castro*, (CCH) Fed. Sec. L. Rep. ¶95,657 (1990) (McNaught, J.) (one-third of settlement fund); *Margaret Hall Found., Inc. v. Atlantic Fin. Mgmt., Inc.*, CA No. 82-2543-S (May 9, 1989) (40% of settlement fund); *In re WebSecure Sec. Litig.*, CA No. 97-10662-GAO (Sept. 14, 1999) (33% award).  In view of the foregoing cases, the request for a 33% fee award in a case that was litigated for nearly three years and which settled after the determination on defendants' motion to dismiss and while discovery was ongoing is eminently fair and reasonable.

6

## B.     The Relevant Factors Support the Fee Request

In addition to examining comparable fee awards, courts within this Circuit and elsewhere typically examine a variety of factors to determine whether a percentage request is fair and reasonable, including, *inter alia*: the amount of the recovery; the skill and efficiency of counsel; the complexity of the litigation and the risk of nonpayment; and the amount of time devoted. *Manual for Complex Litigation*, Fourth §14.121 at 192-93 (2004).[3]

Each of these factors, and additional factors considered by the courts, weigh heavily in support of the fee request in this case.

### 1.     The Amount of the Recovery

The actual benefit conferred by Plaintiffs' Counsel on the Class -- the immediate recovery of $1,900,000.00 in cash -- is an excellent result for the Class in light of the substantial risks and uncertainties involved in the case, in which defendants have consistently denied any wrongdoing. As described in detail in the accompanying Settlement Memorandum, plaintiffs faced significant hurdles concerning both liability for the alleged misrepresentations and the extent of the damages sustained by the Class. Plaintiffs' Counsel reached this conclusion in the wake of the ruling on defendants' motion to dismiss, based on the discovery conducted and after considerable consultation with plaintiffs' accounting and damage/materiality consultants. The most significant hurdle faced by Lead Plaintiffs was the extent of damages sustained by the Class as a result of the Impairment Claim that remained in the litigation. The ruling on the motion to dismiss significantly reduced the maximum

---

[3]     *See also Rawlings*, 9 F.3d at 516-17 (considering: (1) the value of the benefit achieved for the plaintiff class; (2) the value of the attorneys' services; (3) whether counsel undertook the services on a contingent fee basis; (4) the public's interest in rewarding attorneys who produce such benefits; (5) the complexity of the action; and (6) the professional skill and standing of all counsel involved). The First Circuit has not provided a definitive list of factors for fee determination. Rather, it has stated that "in respect to fee awards, the trial court's latitude is 'extremely broad.'" *Thirteen Appeals*, 56 F.3d at 309 (quoting *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992)).

provable damages sustained by the Class because it removed from the case the Implanter Claim. In light of these risks, this Settlement represents an excellent result for the Class.

## 2.     The Amount of Time Devoted

The time and effort expended by plaintiffs' counsel also supports the requested fee award in this case. As set forth in the Appendix, counsel have a total combined lodestar of $821,382.00, which represents over 1,597 hours expended in litigating this case. *See* Appendix. Lead counsel either personally completed or supervised every aspect of the prosecution of the Litigation to avoid duplication and ensure the efficient prosecution of the Action. Lead Counsel compiled the hours reported from contemporaneous time records maintained by each firm. The hours are not excessive, as they were expended over a period just short of three years litigating the Action against well-financed defendants who were highly motivated to avoid liability through extensive litigation.

Since inception of this case, Plaintiffs' Counsel vigorously prosecuted the action. Plaintiffs' Counsel: (1) filed initial complaints; (2) briefed issues related to Lead Plaintiffs' motions for consolidation of the class actions; (3) prepared a Consolidated Amended Complaint; (4) successfully defeated a substantial part of defendants' motion to dismiss after extensive legal research and briefing; (5) briefed the parties' objections to the Magistrate's Report and Recommendation on defendants' motion to dismiss; (6) requested, obtained, reviewed and analyzed documents produced by defendants and third parties; (7) worked with accounting and damage/materiality consultants; (8) engaged in mediation with defendants before retired federal Judge Nicholas E. Politan, which required preparation of a detailed mediation statement; and (9) negotiated and drafted the Settlement Agreement and related papers. If the Settlement is approved, Plaintiffs' Counsel will also devote additional time to supervising the settlement administration, distribution of funds to Class Members and payment of taxes.

This was a hard fought case with enormous legal and factual issues in dispute. Plaintiffs' Counsel expended the time necessary to achieve a successful result despite great difficulties and did so in an efficient manner. This diligent effort, which yielded the $1,900,000.00 million settlement before the Court, was reasonable and necessary in light of the complexity of this case and the vigorous defense mounted by defendants.

The enormous time and effort expended by Plaintiffs' Counsel, without any guarantee of payment, strongly supports the requested fee in this case.

### 3.     The Skill and Efficiency of Counsel

"The experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627, at *38 (C.D. Cal. June 10, 2005). In this case, Lead Counsel, the Law Offices of Bernard M. Gross, P.C., and Wolf Haldenstein Adler Freeman & Herz LLP, are highly experienced in the specialized field of shareholder securities litigation.[4]

As the court recognized in *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987), the "prosecution and management of a complex national class action requires unique legal skills and abilities." The Third Circuit has acknowledged "the stated goal in percentage fee-award cases of 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). *See also Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *91 (M.D. Tenn. Aug. 10, 1999) ("As the Supreme Court has recognized, without a class action, small claimants individually lack economic resources to vigorously litigate their rights. Thus, attorneys

---

[4]   The experience of the law firms that represented plaintiffs in this action is set forth in the accompanying Appendix submitted herewith.

who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process.").

The quality and efficiency of the legal services provided in this case by Plaintiffs' Counsel are evidenced by their success in prevailing on the Impairment Claim in the face of the Motion to Dismiss and the recovery obtained for the Class despite the significant risk that a trial might have resulted in a finding for defendants on liability or damages, or resulted in a lower judgment amount. As previously stated, there were substantial risks that plaintiffs would not have succeeded in convincing a jury of the extent of damages sustained by the Class as a result of the Impairment Claim.

Counsel's skill and efficiency in representing plaintiffs and the Class are also exemplified by the quality of the opposition in this case. Goodwin Procter LLP, counsel for defendant Ibis, are prominent, and highly experienced in defending actions such as these. The ability of plaintiffs to obtain such a settlement for the Class in the face of such formidable legal opposition further confirms the superior quality of Plaintiffs' Counsel's representation. *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) ("The quality of representation is best measured by results.") (citation omitted).

4.    **The Complexity of the Litigation and the Significant Obstacles to Recovery**

The complexity and risk of the litigation also support the requested fee award in this case. As recognized by courts throughout the country, securities class actions are inherently complex. *See e.g.*, *In re Charter Commc'ns, Inc. Sec. Litig.*, MDL No. 1506, 2005 U.S. Dist. LEXIS 14772, at *47-*48 (E.D. Mo. June 30, 2005) ("Securities fraud class actions are by their nature, complex and difficult to prove"); *In re Cell Pathways, Inc. Sec. Litig.*, 01-CV-1189, 2002 U.S. Dist. LEXIS

18359, at *26 (E.D. Pa. Sept. 23, 2002) (recognizing that complexity and difficulty of securities litigation supported approval of attorneys' fee petition).

This action involved highly-disputed and complex issues pertaining to securities fraud with substantial issues concerning liability for the alleged misrepresentations and the extent of the damages sustained by the Class. As described at length in the Settlement Memorandum, there were significant risks in proceeding with a trial of plaintiffs' claims. Moreover, throughout the litigation, defendants continuously mounted a serious defense, vigorously contested the elements of plaintiffs' claims, and advanced arguments, the persisting ones on the provable damages sustained by the Class, that might have persuaded a jury to find in their favor.

In order for plaintiffs to prove the Impairment Claim at trial, they would have to prove that defendants knowingly or recklessly misrepresented the carrying value of Ibis' 1000 implanters and related products on Ibis' balance sheets. Throughout this litigation, however, defendants argued that the required element of scienter could not be proven.

Further, at trial, defendants would present their own expert testimony disputing both the existence and amount of damages suffered by the Class. Although plaintiffs' expert would testify to substantial damages, the contradicting testimony of defendants' expert might have persuaded a jury that defendants did not cause the Class' damages and, even if they did, that the damages were minimal if even present.

Consequently, this action was inherently complex, a factor that weighs in favor of the requested fee award.

### 5.    The Risk of Non-Payment

Viewing the risks of the litigation, the prospects of any recovery, let alone a large recovery, were hardly assured. Plaintiffs' Counsel diligently and vigorously pursued this case for almost three

years on an entirely contingent fee basis. Courts have recognized that the risk of non-payment in complex cases such as this one is very real and heightened.

In fact, there are numerous class actions in which the Plaintiffs' Counsel expended thousands of hours and advanced significant litigation expenses and yet received no remuneration whatsoever, despite their diligence and expertise.[5]

The contingent nature of Plaintiffs' Counsel's representation is an important factor in determining a reasonable award of attorneys' fees. As the Second Circuit stated in *Detroit v. Grinnell Corp.*:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

495 F.2d 448, 470-71 (2d Cir. 1974) (citing *Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963)).[6]

---

[5] *See, e.g., AUSA Life Ins. Co. v. Ernst & Young*, No. 00-9472, 2002 U.S. App. LEXIS 13845 (2d Cir. July 8, 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (appellate court overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation; affirmed on appeal); *Radol v. Thomas*, 772 F.2d 244 (6th Cir. 1985) (summary judgment and jury verdict in favor of defendants in action challenging Marathon/U.S. Steel merger); *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693 (Del. Ch. 2005) (defense verdict on all counts after nine years of litigation and a three month bench trial); *Miller v. Thane Int'l, Inc.*, 372 F. Supp. 2d 1198 (C.D. Cal. 2005) (defense verdict after bench trial); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs), *aff'd, Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000).

[6] *See also Heritage*, 2005 U.S. Dist. LEXIS 13627, at *44 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be

More generally, the risks of non-recovery in complex cases, such as this action, are certainly real and increase when Plaintiffs' Counsel have pressed, as they did here, to achieve the very best result for those whose interests they represent. The risk was especially high here that plaintiffs would not succeed in securing a recovery because while they might have succeeded in proving liability at trial, it might have only resulted in a very limited damage recovery. The enormous contingency risk in this case cannot be seriously disputed. Accordingly, the risk of nonpayment also supports the requested fee award.

## IV.    A "CROSS-CHECK" OF PLAINTIFFS' COUNSEL'S LODESTAR DEMONSTRATES THE REASONABLENESS OF THE REQUESTED AWARD

While the percentage method is the most commonly used method of awarding attorneys' fees in this Circuit, the fee request is also reasonable when analyzed under the alternative lodestar/multiplier method. To calculate attorneys' fees under the lodestar method, the Court must first determine the base amount of the fee, based on the number of hours counsel productively expended on the case at counsel's hourly rate. *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950-51 (1st Cir. 1984).

The Supreme Court and other courts have held that it is appropriate to use plaintiffs' counsel's current fee rates in calculating the lodestar since such rates compensate for inflation and the loss of use of funds. *See Missouri*, 491 U.S. at 283-84 (current rates, rather than historical rates, should be applied in order to compensate for delay in payment); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment . . .").

---

adequately compensated"); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp 160, 164 (S.D.N.Y. 1989) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier"); *In re Flight Transp. Corp. Sec. Litig.*, 685 F. Supp. 1092, 1096 (D. Minn. 1987) ("The fact that counsel for the plaintiff classes prosecuted this case on a contingent fee basis warrants a multiplier of the lodestar.").

In determining whether the rates are reasonable, the Court should take into account the attorney's legal reputation, experience and status (partner or associate). In this case, Plaintiffs' Counsel are among the most prominent firms in the field of securities class action litigation, and the lawyers working on the case included highly-experienced and respected securities lawyers.[7] In short, the experience and reputations of Plaintiffs' Counsel fully support the hourly rates charged. Clearly, the Class received the highest quality representation in this case.

Calculation of the lodestar is merely the starting point in conducting a lodestar/multiplier analysis. *Grinnell*, 495 F.2d at 471. Upward adjustments of the lodestar have commonly been awarded in complex, class actions to compensate counsel for, among other things, the contingent nature of any fee, the delay in payment, the quality of representation, and the results obtained. *See Grendel's Den*, 749 F.2d at 951. *See also Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3d Cir. 1976) (introducing the "lodestar" method).

Here, however, the total lodestar reported by Plaintiffs' Counsel is approximately $821,382.00. The fee requested is only 76% of the lodestar amount, which results in a substantial negative multiplier. Since courts within this Circuit and elsewhere regularly approve positive multipliers of 2, 3, 4 and even 6 times the lodestar amount, a negative multiplier is *prima facie* reasonable.[8]

---

[7] The accompanying Appendix filed herewith include a description of the background and experience of the attorneys who worked on this case.

[8] The fee recently awarded in the *Aspen Technology* case represented a multiplier of approximately 6. *See also, e.g., In re Boston & Maine Corp.*, 778 F.2d 890, 894 (1st Cir. 1985) (awarding a multiplier of 6); *Charter Commc'ns*, 2005 U.S. Dist. LEXIS 14772, at *56 (finding reasonable 5.6 multiplier on $146 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 998-99 (D. Minn. 2005) (awarding 4.7 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (6.96 multiplier); *In re Buspirone Antitrust Litig.*, No. 01-MD-1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier of 8.46 where litigation proceeded into significant merits discovery but not to trial); *Maley*, 186 F. Supp. 2d at 368-69 (finding a multiplier of 4.65 to be within the range in the Circuit); *In re Aetna, Inc. Sec. Litig.*, MDL. No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) (awarding multiplier of 3.6 where parties preparing for trial at time of settlement); *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001

14

## V.    PUBLIC POLICY CONSIDERATIONS SUPPORT PLAINTIFFS' COUNSEL'S REQUESTED FEE

Private lawsuits serve to further the objective of the federal securities laws to protect investors and consumers against fraud and other deceptive practices. *Eltman v. Grandma Lee's, Inc.*, C.A. No. 82-1912, 1986 U.S. Dist. LEXIS 24902, at *25 (E.D.N.Y. May 28, 1986). As a practical matter, those lawsuits can be maintained only if competent counsel can be obtained to prosecute them. *Id.* Competent counsel can be obtained if courts award reasonable and adequate compensation for their services where successful results are achieved. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a 'private attorney general' is vital to the continued enforcement and effectiveness of the Securities Acts." *Id.* (quoting *Bleznak v. C.G.S. Sci. Corp.*, 387 F. Supp. 1184, 1189. (E.D. Pa. 1974)); *See Charter Commc'ns,* 2005 U.S. Dist. LEXIS 14772, at *59 ("[P]ublic policy favors the granting of fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions" because "private securities actions such as this provide 'a most effective weapon in the enforcement' of the securities laws, [as] 'a necessary supplement to SEC action.'"). Public policy thus supports the award of attorneys' fees requested here.

For all of the reasons set forth above, including the results achieved for the Class, the substantial efforts and considerable expenses undertaken on a contingent fee basis in a risky case, it is respectfully requested that the Court grant Plaintiffs' Counsel's application for an award of 33% of

---

U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (multiplier of 5.3); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997) (multiplier of 5.1); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 197 (S.D.N.Y. 1997), *adopted,* 1997 U.S. Dist. LEXIS 15094 (S.D.N.Y. July 29, 1997) (recommending 5.5 multiplier of lodestar).

the Settlement as their attorneys' fees. An award of the fees requested herein would be fully consistent with these important public policy considerations.

## VI.   THE REACTION OF CLASS MEMBERS TO THE FEE SOUGHT BY COUNSEL DEMONSTRATES THE REASONABLENESS OF THE REQUESTED FEE

This Court should also consider the overwhelmingly positive reaction of Class Members to the requested fee. Thousands of copies of the Notice were mailed to potential Class Members. The Notice informed the Class that Plaintiffs' Counsel intended to apply for an award of attorneys' fees of up to 33 1/3% of the Settlement. The Notice also expressly advised Class Members that they could object to the fee application. Notwithstanding this extensive notice program, no Class Members have voiced any objection to the fee request or opted out of the settlement.

All of the foregoing facts weigh in favor of this Court's approval of the fee request. *See Rite Aid III*, 396 F.3d at 305 ("Moreover, . . . a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object had they believed the requested fees were excessive. The District Court did not abuse its discretion in finding the absence of substantial objections by Class Members to the fee requests weighed in favor of approving the fee request.") (citation omitted); *See also Charter Commc'ns*, 2005 U.S. Dist. LEXIS 14772, at *59 (noting that small number of institutional objections supported approval of the fee request).

## VII.  PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY INCURRED LITIGATION EXPENSES

Plaintiffs' Counsel have incurred litigation expenses in the amount of $86,531.06 in prosecuting this action and request that the Court grant their application for reimbursement of these expenses, which were incidental and necessary to the representation of the Class. *See In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir.

1992) (common fund doctrine permits person recovering fund for benefit of others to recover costs from the fund). A breakdown of the aggregate expenses incurred by category is included in the Appendix filed herewith. These expenses were essential to the successful prosecution and resolution of this action and are extremely reasonable for a case that progressed to the eve of trial.

Again, the Notice sent to Class Members stated that Plaintiffs' Counsel would seek reimbursement of expenses not to exceed $100,000. No Class Member has raised an objection to the request for reimbursement of expenses. Therefore, Plaintiffs' Counsel respectfully submit that the Court should award the expenses requested.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, as well as the reasons set forth in the accompanying Settlement Memorandum, Plaintiffs' Counsel respectfully request that the Court award attorneys' fees in the amount of 33% of the Settlement, reimbursement of their expenses in the amount of $86,531.

Dated:  April 18, 2007

Respectfully submitted,

**LAW OFFICES OF BERNARD M. GROSS, P.C.**

By:     s/ Deborah R. Gross_____
Deborah R. Gross (BBO#546151)
Robert P. Frutkin
1515 Locust Street, Second Floor
Philadelphia, PA 19102
(215) 561-3600

*Lead Counsel for Lead Plaintiffs*

**SHAPIRO HABER & URMY LLP**
Thomas G. Shapiro (BBO#454680)
53 State Street
Boston, MA 02109
(617) 439-3939

*Local Counsel for Lead Plaintiffs*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Peter C. Harrar
Aya Bouchedid
270 Madison Avenue
New York, NY 10016
(212) 545-4600

**LAW OFFICES KENNETH ELAN**
Kenneth Elan
217 Broadway, Suite 606
New York, NY 10007
(212) 619-0261

**KLEIN & SOLOMON, LLP**
Joseph P. Garland
275 Madison Avenue
New York, NY 10016
(212) 213-1812

*Attorneys for Lead Plaintiffs*

18

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 18, 2007.

**/s/Thomas G. Shapiro**

Thomas G. Shapiro