## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE IBIS TECHNOLOGY SECURITIES LITIGATION | : : : : | Civ No. 04-10446 RCL |

## APPENDIX OF DECLARATIONS IN SUPPORT OF
## JOINT PETITION FOR ATTORNEYS' FEES AND DISBURSEMENTS

**A.** Declaration of Robert P. Frutkin in Support of Joint Petition for Attorneys' Fees and Disbursements Filed on Behalf of Law Offices of Bernard M. Gross, P.C.

**B.** Declaration of Peter C. Harrar in Support of Joint Petition for Attorneys' Fees and Disbursements Filed on Behalf of Wolf Haldenstein Adler Freeman & Herz LLP

**C.** Declaration of Thomas G. Shapiro in Support of Joint Petition for Attorneys' Fees and Disbursements Filed on Behalf of Shapiro Haber & Urmy LLP

**D.** Declaration of Kenneth A. Elan in Support of Joint Petition for Attorneys' Fees and Disbursements Filed on Behalf of Law Office of Kenneth A. Elan

473246

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE IBIS TECHNOLOGY SECURITIES LITIGATION | ) ) ) ) ) |

Case No. 04 cv 10446 RCL

## DECLARATION OF ROBERT P. FRUTKIN
## IN SUPPORT OF JOINT PETITION FOR
## ATTORNEYS' FEES AND DISBURSEMENTS
## FILED ON BEHALF OF LAW OFFICES BERNARD M. GROSS, P.C.

Robert P. Frutkin hereby declares pursuant to 28 U.S.C. §1746 and under the penalty of perjury:

1.      I am with the law firm of Law Offices Bernard M. Gross, P.C. I submit this Declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the "Action"), as well as the reimbursement of expenses incurred by my firm in connection with the Action.

2.      My firm is the attorney for Mark G. Forgue, a named plaintiff in the Action. My firm was Lead Counsel in this Action.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by the partners and attorneys of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for equivalent level personnel currently employed by my firm. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in

preparing this declaration for fees and reimbursement of expenses has not been included in this request.

5.    The hourly rates for the partners and attorneys in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

6.    The total number of hours expended on this litigation by my firm is 623.75 hours.  The total lodestar for my is $347,280.00.

7.    My firm's lodestar figures are based upon the firm's current billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.    The schedule attached as Exhibit 2 is a detailed summary of the firm's expenses in connection with the prosecution of this litigation, for which we seek reimbursement.  The total of the unreimbursed expenses is $47,023.97.

9.    The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

10.    Attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this litigation.

11.    I declare under penalty of perjury that the foregoing is true and correct.


Date:

**ROBERT P. FRUTKIN**

IN RE IBIS TECHNOLOGY SECURITIES LITIGATION
Case No. 04 cv 10446 RCL

LAW OFFICES BERNARD M. GROSS, P.C.
TIME REPORT

TIME:     INCEPTION THROUGH MARCH 2007

| Attorney | Rate | Time | Lodestar |
|---|---|---|---|
| Bernard M Gross | $615 | 5.00 | $3,075.00 |
| Deborah R. Gross | $595 | 72.75 | 43,286.25 |
| Robert P. Frutkin | $595 | 440.25 | 261,948.75 |
| Susan R. Gross | $420 | 6.75 | 2,835.00 |
| Darin Morgan | $365 | 99.00 | 36,135.00 |
| TOTAL | | 623.75 | $347,280.00 |

EXHIBIT 1

## IN RE IBIS TECHNOLOGY SECURITIES LITIGATION
## Case No. 04 cv 10446 RCL

## LAW OFFICES BERNARD M. GROSS, P.C.
## EXPENSE REPORT

**TIME:      INCEPTION THROUGH MARCH 2007**

| CATEGORY | AMOUNT |
|---|---|
| Photocopies | 537.00 |
| Telephone/Fax | 276.96 |
| Postage/Express Mail | 174.58 |
| Travel, Hotel, Meals | 1,271.07 |
| Computer Research | 71.73 |
| Mediation | 5,340.00 |
| Court Fees | 62.50 |
| Expert/Consulting | 37,698.13 |
| Notice | 1,092.00 |
| Anticipated Costs: Travel and  Photocopies | 500.00 |
| **TOTAL:** | **47,023.97** |

**EXHIBIT 2**

## BIOGRAPHICAL BACKGROUND OF LAW OFFICES BERNARD M. GROSS, P.C.

The Law Offices Bernard M. Gross, P.C. and its predecessors, including Gross & Metzger, P.C. has been primarily involved in the field of litigation on behalf of plaintiffs since its inception thirty (30) years ago.

A background of the members of the Law Offices Bernard M. Gross, P.C., who were actively engaged in the prosecution of this litigation, are as follows:

**Bernard M. Gross** is a graduate of Central High School of Philadelphia (B.A. 1952), the University of Pennsylvania Wharton School (B.S. 1956), and the University of Pennsylvania School of Law (L.L.B. 1959). Mr. Gross has been an active member of The Association of Trial Lawyers of America since 1960. In 1990 he received the "Stalwart" award from The Association of Trial Lawyers of America. Bernard M. Gross was a member of the House of Delegates of the Pennsylvania Bar Association (1988-1993). He is a former member of the Board of Governors of the Pennsylvania Trial Lawyers Association and currently a member of the Legislative Policy Committee of the Pennsylvania Trial Lawyers Association. Mr. Gross was a member of the Board of Governors of the Philadelphia Bar Association, a past President of the Philadelphia Trial Lawyers Association, past Chairman of the Philadelphia Bar Association Committee on Judicial Compensation and former Chairman of its Civil Legislative Committee. He is formerly Chancellor of the Tau Epsilon Rho Law Fraternity Philadelphia Graduate Chapter. Mr. Gross is a former member of the Pennsylvania General Assembly (1967-70). He is a former Assistant City Solicitor in charge of bonds and contracts for the City of Philadelphia (1961-64). He has lectured on behalf of the Philadelphia Trial Lawyers

**EXHIBIT 3**

Association and the Pennsylvania Trial Lawyers Association. He has participated in many complex federal and class actions, including antitrust, consumer fraud and corporate securities litigation.

**Deborah R. Gross** is a graduate of the University of Pennsylvania Wharton School (B.S. 1982) and Boston University School of Law (J.D. 1985). She is admitted to practice before the Supreme Court of Pennsylvania (11/20/85), the Supreme Court of Massachusetts(12/17/85), the United States District Court for the Eastern District of Pennsylvania(11/29/85), the United States District Court for the District of Massachusetts(1/28/86), the United States Court of Appeals for the Third Circuit (11/18/87), the United States Supreme Court (6/18/90), the United States Court of Appeals for the Tenth Circuit (7/25/97), and United States District Court for the District of Colorado (10/15/01). Prior to joining the firm in June, 1987, Ms. Gross was an associate at Berman, DeValerio & Pease, a Boston, Massachusetts firm, specializing in securities fraud class action litigation. She was or is presently lead or co-lead counsel in Kaufman v. Motorola, Inc., et. al., Civil Action No. 95-C-1069 (N.D. Ill.); In Re Aetna, Inc. Securities Litigation, MDL Docket No. 1219 (E.D. Pa.); Axler v. Wagner, C.A. No. 94-3097 (E.D. Pa.); Stein v. Residential Resources Securities Litigation, 89-66 (D. Ariz.); In re American Travellers Corp. Securities Litigation, CV 92-1304 (E.D. Pa.); McDaid v. Piper Jaffray Cos., CV 94-454 (D. Dela.); In re Midlantic Corporation Shareholder Litigation, Master File No. 90-1275 (D.N.J.); In re The Dime Savings Bank of New York, FSB, Securities Litigation, CV No. 89-2189 (JM) (E.D.N.Y.); Smith v. Nicolet Instrument Corp., et. al., CV 92-C-388-C (W.D. Wisc.); Decker, et al. v. Glenfed, et. al., CV-91-0344 (C.D. Cal.); and In Re Loewen Group

Securities Litigation, MDL Docket No. 1100 (E.D.Pa.); Tinkler v. Hasler, et. al., No. 776206-4 (Sup. Court of Calif.); Stong v. Saylor, et al., No. 18138NC (Chancery State of Delaware, New Castle County); and In re EquiMed Securities Litigation, Master File No. 98-CV-5374 (E.D.PA). Ms. Gross participated as a panelist at the ABA Litigation Section 15th Annual Fall Meeting on Trends in the Law of the Award of Attorney's Fees in Class Actions. Since 1998 she has served as a panelist on the yearly federal securities law forum sponsored by the Philadelphia Bar Education Center and the Pennsylvania Bar Institute. Ms. Gross was Chair of the Federal Courts Committee of the Philadelphia Bar Association. She was responsible for organizing the June 1998 Bench Bar Conference of the Philadelphia Bar Association. Ms. Gross is a member of the Third Circuit Judicial Council Bench Bar Relations Committee. In 2002, Ms. Gross was a guest panelist at the University of Chicago Graduate School of Business, 50th Annual Management Conference. She spoke on the topic of "Accounting in Crisis - Who Watches the Watchdogs?" In 2003, Ms. Gross also spoke at The Directors' Conference, a three day intensive program for directors and senior executives to explore the fundamentals of corporate governance and board service offered by the University of Chicago Graduate School of Business, Stanford Law School and the Wharton School of the University of Pennsylvania. She discussed the legal issues surrounding audit committee qualifications, responsibility and content. Ms. Gross was a panelist on the 2004 Federal Bench Bar Conference for the Philadelphia Bar Association speaking on changes to the Rule 23 of Fed.R.Civ.P.

**Robert P. Frutkin** is admitted to practice before the Supreme Court of Pennsylvania, the United States Court of Appeals for the Third, Fourth, Seventh, Eighth, Ninth and Eleventh Circuits and the United States District Court for the Eastern District of

Pennsylvania. Prior to his becoming Of Counsel to the firm of Law Offices Bernard M. Gross, P.C., Mr. Frutkin formed his own firm of Savett Frutkin Podell & Ryan. Prior to the formation of his firm on October 1, 1991, Mr. Frutkin had been a shareholder of Berger & Montague, P.C., in Philadelphia. Mr. Frutkin is a 1971 graduate of the University of Rochester and a 1975 cum laude graduate of the School of Law of Temple University, where he was a member of the staff of the Temple Law Quarterly. Mr. Frutkin has actively participated in and conducted the prosecution of several major complex securities fraud suits, including Cohen v. Uniroyal Inc., No. 76-2989 (E.D. Pa.); In re First Pennsylvania Securities Litigation, No. 81-456 (D. Del.); Eitel v. Gulf Oil Corporation, No. 78-343 (D. Del.); In re Oak Industries Securities Litigation, No. 83-0537-G(M) (S.D. Cal.); In re First Fidelity Bancorporation Securities Litigation, Master File No. 88-5297 (D.N.J.); In re Sunrise Securities Litigation, Master File No. 85-2720 (E.D. Pa.); Jennie Farber v. Public Service Company of New Mexico, et al., CIV-89-0456 JB (D.N.M.); Warren Weiner, et al. v. David N. Jones, et al., No. EP-91-CA-185-H (W.D. Texas, El Paso Div.); In re Beverly Enterprises Securities Litigation, No. CV-88-1189 RSWL (TX) (C.D. CA); In re Gillette Securities Litigation, No. 88-1858-K (D. Mass.); In re Endo-Lase Securities Litigation, No. 86 CIV 100 (ERK) (E.D.N.Y.); William Wise v. Frank P. Popoff, et al., No. 90-10186 BC (E.D. Mich., Northern Div.); In re Salton/Maxim Securities Litigation, 91 C 7693 (Consolidated Cases) (N.D. Ill.); In re: U.S. Bioscience Securities Litigation, 92-CV-678 (E.D. Pa.); In re Royce Laboratories, Inc. Securities Litigation, No. 92-0923-Civ-MOORE (S.D. Fla.); In re Synergen Inc. Securities Litigation, No. 93-402 (D. Co.); Edward B. McDaid v. Piper Jaffray Companies Inc., Consolidated Civil Action No. 94-454-RRM (D.Del.); In re Aetna Inc. Securities Litigation, MDL No. 1219 (E.D. Pa.)

In <u>In re U.S. Bioscience Securities Litigation</u>, 92-CV-678 (E.D. Pa.) (April 14, 1994 Hearing Transcript at pp. 38-39), the Court commented favorably on Mr. Frutkin's performance as co-lead counsel:

> Since I've been down here, the quality of lawyering on both sides, but I'm going to stress now on the plaintiffs' side, simply has not been exceeded in any case and we've had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than...Mr. Frutkin, and the argument we had on the Motion to Dismiss, for example, Motions to Dismiss, both sides were fabulous, but plaintiffs' counsel were as good as they come.

Mr. Frutkin successfully argued before the 7th Circuit Court of Appeals the landmark decision in <u>In re Abbott Laboratories Deriv. Litig.</u>, 325 F.3d 795 (7th Cir. 2003).

**Susan R. Gross** is a graduate of Hofstra University in Hempstead, New York (B.A. 1985) and Suffolk University School of Law (J.D. 1989). She is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of Florida, the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit. She is a member of the Philadelphia Bar Association and Pennsylvania Trial Lawyers Association.

Members of the Law Offices Bernard M. Gross, P.C. have been or are counsel for class action plaintiffs in a number of complex actions, a representative sample of which includes:

(a)    In re Gas Meters Antitrust Litigation,
       M.D.L. Docket No. 360 (E.D. Pa.);

(b)    In re Art Materials Antitrust Litigation,
       M.D.L. Docket No. 436 (N.D. Ohio);

(c)    In re Corn Derivatives Antitrust Litigation,
       M.D.L. Docket No. 414 (D.N.J.);

(d)     In re Electric Weld Steel Tubing Antitrust Litigation,
        No. 79-4628 (E.D. Pa.);

(e)     Cohen, et al. v. MacAndrews & Forbes, Inc., et al.,
        C.A. No. 7309 (Del. Ct. of Chancery);

(f)     Rosen v. Orfa Corp. of America,
        Master File No. 86-1121 (D.N.J.);

(g)     In re U.S. Healthcare Securities Litigation,
        Master File No. 88-0559 (E.D. Pa.);

(h)     Holtz v. National Business Systems, Inc.,
        Civil Action No. 88-1755 (D.N.J.);

(i)     Mark J. Maiocco v. Olin Ski Co., Inc.,
        No. 79-4045 (E.D. Pa. 1980);

(j)     Priest v. Zayre Corporation,
        Civil Action No. 86-2411-Z (D. Ma.);

(k)     In re Texas International Securities Litigation,
        M.D.L. No. 604 (W.D. Okla.);

(l)     In re Home Unity Shareholder Litigation,
        Civil Action No. 87-5609 (E.D. Pa.);

(m)     In re Lilco Securities Litigation,
        Civil Action No. 84-0588 (E.D.N.Y.);

(n)     In re First Jersey Securities Litigation,
        M.D.L. Docket No. 861 (E.D. Pa.);

(o)     In re Glassine and Greaseproof Paper Antitrust
        Litigation, M.D.L. Docket No. 475 (E.D. Pa.);

(p)     In re: First Fidelity Bancorporation Securities
        Litigation, Master File No. 88-5297 (D.N.J.);

(q)     Stein v. Residential Resources,
        Civil Action No. 89-0066 (D. Ariz.);

(r)     Nemo v. Astrotech International Corp.,
        Civil Action No. 85-982 (W.D. Pa.);

(s)   In re Water Heater Antitrust Litigation,
      M.D.L. Docket No. 379 (E.D. Pa.);

(t)   In re Caesars World Shareholder Litigation,
      M.D.L. Docket No. 496 (D.N.J.);

(u)   In re Gulf Oil/Cities Service Tender Offer Litigation,
      Master File No. 82, C.A. No. 5253 (R.O.)(S.D.N.Y.);

(v)   In re Nucorp Energy Securities Litigation,
      M.D.L. Docket No. 574 (S.D. Cal.);

(w)   In re American Integrity Securities Litigation,
      Master File No. 86-7133 (E.D. Pa.);

(x)   Meshel, et al. v. Nutri/System, Inc., et al.,
      C.A. No. 83-1440 (E.D. Pa.);

(y)   In re Oak Industries Securities Litigation,
      C.A. No. 83-0573G (S.D. Cal.);

(z)   Spilove v. Anderson,
      CV-81-833-R (C.D. Cal.)
      (Mattel Securities Litigation);

(aa)  In re AIA Securities Litigation,
      Master File No. 84-2276 (E.D. Pa.);

(bb)  In re MDC Holdings Securities Litigation,
      Master File No. 89-0090 (S.D. Cal.);

(cc)  In re Eagle Computer Securities Litigation,
      Master File No. 84-20382 (N.F. Cal.);

(dd)  In re Atlantic Financial Securities Litigation,
      Master File No. 89-0645 (E.D. Pa.);

(ee)  In re Craftmatic Securities Litigation,
      Master File No. 88-4530 (E.D. Pa.);

(ff)  Barry Greene, et al. b. August DeAngelo, et al.,
      (C.D. Cal.) 90-0100;

(gg)  In re Goodyear Securities Litigation,
      Master File No. 88-8633 (E.D. Pa.);

(hh)    In re Genentech Securities Litigation,
        Master File No. 88-4038 (N.D. Cal.);

(ii)    In re Midlantic Corporation Shareholder Litigation,
        Master File No. 90-1275 (D.N.J.);

(jj)    In re SmithKline Securities Litigation,
        Master File No. 88-7474 (E.D. Pa.);

(kk)    In re Flight International Securities Litigation,
        Master File No. 89-CV-2211-JTC (N.D. Ga.)


Judges through the country have recognized contributions of the law firm in class action cases. Recently, in approving an $82.5 million dollar settlement of a securities fraud lawsuit against Aetna in which Bernard M. Gross, P.C. was co-lead counsel, Judge Padova stated: "Furthermore, class counsel is of high caliber with extensive experience in similar class action litigation . . . consistently submitted documents superb quality, and were very diligent in preparing filings in a timely manner under tight deadlines. . . This Court has made special note of the efficiency and professionalism of counsel in completing discovery and resolving discovery disputes with little court intervention." In re Aetna Inc. Securities Litigation, MDL No. 1219 (E.D.Pa. January 5, 2001). Judge Weiner, a former member of the Judicial Panel on Multidistrict Litigation, in reviewing Gross & Metzger's fee application in In Re Gas Meters Antitrust Litigation, 500 F Supp. 956 (M.D.L. No. 360) (E.D. Pa. 1980), commented on Gross & Metzger's representation:

> The settlements obtained by the applicants [Gross & Sklar represented one of the three class representatives] are excellent as to amount. The standing and ability of the applicants certainly contribute in producing the fund obtained and the efficiency in which it was obtained. This complex litigation could have burdened the trial and appellate courts for a great length of time had it not been settled.

8

Judge Bechtle in the <u>Consumer Bags Antitrust Litigation</u>, Civil Action No. 77-1516

(E.D. Pa.), Slip Opinion dated August 26, 1980, stated with respect to petitioner:

> The Court finds that the hourly rates submitted are within the range of reasonable rates received by counsel of high caliber at the time of this litigation. Each of the firms and the individual lawyers in this case have extensive experience in large, complex antitrust and securities litigation.
>
> Furthermore, the Court notes that the quality of the legal services rendered was of the highest caliber.

Chief Judge Weinstein in <u>In Re Wiring Device Antitrust Litigation</u>, M.D.L. No. 331

(E.D.N.Y.) hearing dated September 8, 1980, commented on plaintiffs' counsel in <u>Wiring</u>

<u>Devices</u>, of which Gross & Metzger, P.C. was one of plaintiffs' counsel:

> Counsel for the plaintiffs I think did an excellent job ....    T h e y   a r e outstanding and skillful.
>
> The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which were in my opinion substantial.
>
> *          *          *
>
> The papers and the other actions of the attorneys have been observed by the court and the court believes they have resulted in savings of enormous time ... and have permitted the largest sum possible as a result of their skill in reducing outlays of legal time in the actual claimants.

In the <u>Philadelphia Contributionship</u> case, 73 Pa. D.&C. 2d 654 (Phila. 1975), Judge

Kalish stated:

> Moreover, Mr. Gross has proven himself to be a competent attorney. His presentation has reflected diligent and careful attention to the interests of the class his client purports to represent.

In <u>PNB Mortgage and Realty Investors by James M. Richardson v. Phila. National</u>

<u>Bank, et al.</u>, Civil Action No. 82-5023 (E.D. Pa.), Judge Raymond Broderick approved the

settlement of a shareholders' derivative action, in which Gross & Metzger, P.C. represented

the plaintiff, where the risks in establishing liability were viewed by the Court as "substantial," and the benefit conferred by the settlement was a definite improvement in the advisory agreement and the saving of advisory fees to be paid by the real estate investment trust on behalf of whose shareholders that action had been commenced. In addition to finding that the settlement was fair, adequate and reasonable, the Court, in awarding attorneys' fees, found that counsel "performed quite capably in this litigation."

In May, 1984, Judge Charles Weiner, in Meshel, et al. v. Nutri/System, Inc., et al., 102 F.R.D. 135 (E.D. Pa. 1984), awarded attorneys' fees to plaintiffs' counsel including Gross & Metzger, P.C. In granting counsel's fee application, Judge Weiner approved the rates charged by counsel as being reasonable and recognized that the standing, skill and ability of counsel, such as Gross & Metzger, P.C., contributed to creating an excellent settlement in an efficient manner.

As Judge Krupansky, of the United States Court of Appeals for the Sixth Circuit, in his Slip Opinion in In Re Art Materials Antitrust Litigation, M.D.L. docket No. 436 (N.D. Ohio 1983), awarding counsel fees to plaintiffs' counsel, Gross & Metzger, P.C., being one of the lead plaintiffs' counsel in the action commented:

> Finally, the court unhesitantly concludes that the quality of the representation rendered by counsel was uniformly high. The attorneys involved in the litigation are extremely experienced and skilled in the prosecution of antitrust litigation and other complex actions. Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of a highly favorable result. Therefore, this court concludes that the applicants are entitled to an award of fees and reimbursement of expenses out of the settlement fund, and that, pursuant to the principles hereinabove articulated, they are entitled to a multiple of their standard and historic fees....

In In Re Oak Industries Securities Litigation, Master File No. 83-0537-G(M) (S.D. Cal.) the court praised counsel, including Gross & Metzger, P.C., in approving a settlement in principal amount of $32.25 million:

> There can be no doubt that the public good was fully served by the attorneys for the plaintiffs in this case, because they invested their own time, their own money, they invested their special skills and knowledge to vindicate the rights and interests of the thousands of investors who invested their money and placed their trust in the integrity of the securities market.
>
> I don't mean to demean the effort or the effectiveness of the government-funded regulators, but it is this Court's opinion, not only based on this case, but other cases, that Congress, by providing the class-action provisions of the Federal Rules of Civil Procedure, has provided a far more effective regulatory device, because, by using these provisions as tools, as they were used here, by highly skilled, highly motivated private law firms working within what I believe to be the universally accepted private-enterprise system, with the objective to safeguard the rights of the largely naive investing public, I think that's what occurred here; and this is a classic example of how well it can work.
>
> . . . [T]he achievement of plaintiffs' counsel . . . was superior.
>
> . . . [T]he manner in which this case was . . . litigated by counsel . . . for the plaintiffs . . . should serve as a textbook example of how these cases should be conducted.

Judge Wexler in In re Lilco Securities Litigation, Civil Action No. 84-0588, awarded plaintiffs' counsel its requested lodestar multiplied by 2.0 multiplier. Similarly, Judge Irving in In re Nucorp Securities Litigation, MDL 514 (S.D. Cal.) awarded Gross & Metzger, P.C. its attorneys' fees and expenses plus 10%.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE IBIS TECHNOLOGY SECURITIES LITIGATION | : : : : : | Civ No. 04-10446 RCL |

## DECLARATION OF PETER C. HARRAR IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND DISBURSEMENTS FILED ON BEHALF OF WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

Peter C. Harrar hereby declares pursuant to 28 U.S.C. §1746 and under the penalty of perjury:

1.      I am a member of the law firm of Wolf Haldenstein Adler Freeman & Herz LLP. I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned action (the "Action"), as well as the reimbursement of expenses incurred by my firm in connection with the Action.

2.      My firm is the attorney for George Harrison, a named plaintiff in the Action.

3.      My firm seeks reimbursement for the time which lead counsel, the Law Offices Bernard M. Gross, P.C., specifically requested that it incur in the prosecution of the Action, as well as related expenses. These tasks included working on all phases of the litigation, including preparation of the consolidated complaint and briefing in opposition to defendants' motion to dismiss, document discovery, participation in settlement negotiations and the mediation session, and preparation of settlement papers.

4.      The schedule attached hereto as Exhibit 1 is a detailed summary setting forth the amount of time spent by the partners, attorneys and professional support staff of my firm who

were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for equivalent level personnel currently employed by my firm. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

5.      The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

6.      The total number of hours expended on this litigation by my firm is 804.4 hours. The total lodestar for my firm is $393,453.00, consisting of 750.6 hours for attorneys' time and 53.8 hours for professional support staff time.

7.      My firm's lodestar figures are based upon the firm's current billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.      The schedule attached as Exhibit 2 is a detailed summary of the firm's expenses in connection with the prosecution of this litigation, for which we seek reimbursement. The total of the un-reimbursed expenses is $38,391.96.

9.      The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

10.    Attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this litigation.

11.    I declare under penalty of perjury that the foregoing is true and correct.

Executed: _____April 11, 2007_____

_____
Peter C. Harrar

468658

- 3 -

### In re IBIS Technology Securities Litigation
Wolf Haldenstein Adler Freeman & Herz LLP
Time Report
Period: Inception through March 31, 2007

| Attorneys | Hours | Rate | Lodestar |
|---|---|---|---|
| Daniel W. Krasner | 12.20 | $700.00 | $8,540.00 |
| Peter C. Harrar | 434.10 | $595.00 | $258,289.50 |
| Gregory M. Nespole | 79.60 | $540.00 | $42,984.00 |
| Aya Bouchedid | 171.90 | $335.00 | $57,586.50 |
| Rachel S. Poplock | 52.80 | $275.00 | $14,520.00 |
| **Total Attorneys** | **750.60** | | **$381,920.00** |

| Paraprofessionals | Hours | Rate | Lodestar |
|---|---|---|---|
| James A. Cirigliano | 10.00 | $240.00 | $2,400.00 |
| Joseph Weiss | 17.80 | $235.00 | $4,183.00 |
| Derek M. Behnke | 6.00 | $205.00 | $1,230.00 |
| Matthew V. Mundo | 2.00 | $195.00 | $390.00 |
| Megan E. Maltenfort | 1.00 | $185.00 | $185.00 |
| Gabriel A. Pell | 8.30 | $185.00 | $1,535.50 |
| Carrie R. Bierman | 3.70 | $185.00 | $684.50 |
| Ashley E. Kelly | 5.00 | $185.00 | $925.00 |
| **Total Paraprofessionals** | **53.80** | | **$11,533.00** |

| | | | |
|---|---|---|---|
| **Total Fees** | **804.40** | | **$393,453.00** |

**In re IBIS Technology Securities Litigation**
Wolf Haldenstein Adler Freeman & Herz LLP
Expense Report
Period: Inception through March 31, 2007

**Expenses**

| | |
|---|---:|
| Expert John C. Hamerslough (damages) | $16,307.25 |
| Computer Research | $12,512.24 |
| Investigative Services | $6,018.12 |
| Travel | $1,471.10 |
| Reproduction/Duplication | $1,290.75 |
| Secretarial Overtime | $527.94 |
| Phone/Fax/Postage | $102.29 |
| Messenger/Overnight Delivery | $97.27 |
| Court Fees | $65.00 |

| | |
|---|---:|
| **Total Expenses** | **$38,391.96** |



FIRM
RESUME

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP

# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP





Founded in 1888, Wolf Haldenstein Adler Freeman & Herz LLP is a full service law firm with practice groups in corporate/tax, pension/benefits, real estate, trusts and estates, healthcare, bankruptcy, limited partnerships, and civil and commercial litigation, with a particular specialty in complex class and shareholder litigation under both federal and state law.

Wolf Haldenstein's total practice approach, supported by the Firm's mid-range size, distinguishes the Firm from other firms.  Our longstanding tradition of a close attorney/client relationship ensures that each one of our clients receives prompt, individual attention and does not become lost in an institutional bureaucracy.  Our team approach is at the very heart of Wolf Haldenstein's practice.  All of our lawyers are readily available to all of our clients and to each other.  The result of this approach is that we provide our clients with an efficient legal team having the broad perspective, expertise and experience required for any matter at hand.  We are thus able to provide our clients with cost effective and thorough counsel focused on our clients' overall goals.

The Firm has its principal office with lawyers in the various practice areas, at 270 Madison Avenue, New York, NY 10016.  The Firm's general telephone number in New York is (212) 545-4600.  The fax number in New York is (212) 545-4653.  The Firm also has offices at Symphony Towers, 750 B Street, Suite 2770, San Diego, CA 92101, telephone: (619) 239-4599, fax: (619) 234-4599; 55 W. Monroe Street, Suite 1111, Chicago, IL 60603, telephone: (312) 984-0000, fax: (312) 984-0001; 625 N. Flagler Drive, West Palm Beach, Florida 33401; and 1920 L Street, N.W., Suite 400, Washington, DC 20036. The Firm's web site is accessible at http://www.whafh.com.





## THE FIRM

Wolf Haldenstein's Class Action Litigation Group has been recognized by courts throughout the country as being highly experienced in complex litigation, particularly with respect to securities, consumer, ERISA, and antitrust class actions and shareholder rights litigation. The Class Action Litigation Group consists of 30 attorneys and 10 paraprofessional assistants. Brief resumes of these attorneys begin on page 10.

Also included are the resumes of attorneys from other areas of the Firm's practice who routinely lend their expertise to the Firm's class action litigators in the areas of tax, bankruptcy, corporate, trusts, labor, and ERISA law. The ability to call upon the internal expertise of practitioners in such varied areas of the law greatly enhances the strength and efficiency of the Firm's representative litigation practice and, indeed, makes Wolf Haldenstein unique among national firms specializing in class action litigation.

The nature of the Firm's activities in representative litigation is extremely broad. In addition to a large case load of securities fraud and other investor class actions, Wolf Haldenstein has represented classes of corn farmers in connection with the devaluation of their crops; contact lens purchasers for contact lens manufacturers' violations of the antitrust laws; merchants compelled to accept certain types of debit cards; insurance policyholders for insurance companies' deceptive sales practices; victims of unlawful strip searches under the civil rights laws; and various cases involving violations of Internet users' on-line privacy rights.

The Firm's experience in class action securities litigation, in particular public shareholder rights under state law and securities fraud claims arising under the federal securities laws and regulations, including the Private Securities Litigation Reform Act of 1995 ("PSLRA"), is particularly extensive. The Firm was one of the lead or other primary counsel in securities class action cases that have recouped billions of dollars on behalf of investor classes, in stockholder rights class actions that have resulted in billions of dollars in increased merger consideration to shareholder classes, and in derivative litigation that has recovered billions of dollars for corporations.

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





Among its colleagues in the plaintiffs' securities bar, as well as among its adversaries in the defense bar, Wolf Haldenstein is known for the high ability of its attorneys, the exceptionally high quality of its written and oral advocacy on behalf of class action clients, and its pioneering efforts in difficult or unusual areas of securities or investor protection laws, including: groundbreaking claims that have been successfully brought under the Investment Company Act of 1940 regarding fiduciary responsibilities of investment companies and their advisors toward their shareholders; claims under ERISA involving fiduciary duties of ERISA trustees who are also insiders in possession of adverse information regarding their fund's primary stockholdings; the fiduciary duties of the directors of Delaware corporations in connection with change of control transactions; the early application of the fraud-on-the-market theory to claims against public accounting firms in connection with their audits of publicly traded corporations; and the application of federal securities class certification standards to state law claims often thought to be beyond the reach of class action treatment.

Wolf Haldenstein's performance in representative litigation has repeatedly received favorable judicial recognition. The following representative judicial comments over two decades indicate the high regard in which the Firm is held:

- In *In re Comdisco Sec. Litig.*, No. 01 C 2110 (July 14, 2005), Judge Milton Shadur recently observed: "It has to be said . . . that the efforts that have been extended [by Wolf Haldenstein] on behalf of the plaintiff class in the face of these obstacles have been exemplary. And in my view [Wolf Haldenstein] reflected the kind of professionalism that the critics of class actions . . . are never willing to recognize. . . . I really cannot speak too highly of the services rendered by class counsel in an extraordinary difficult situation."

- In *In re MicroStrategy Securities Litigation*, 150 F. Supp. 2d 896, 903 (E.D. Va. 2001), where the Firm was a co-lead counsel, Judge Ellis commented: "Clearly, the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition they enjoy."

- In *In Re Toys R Us Antitrust Litigation*, 98 MDL 1211 (NG) 191 F.R.D. 347, 351, 356 (E.D.N.Y. 2000), where the Firm served as co-lead and liaison counsel, Judge Gershon wrote: "Class counsel are highly skilled and experienced and can fairly and adequately represent the interests of the class

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





. . . . Counsel for both the class plaintiffs and the States have well-earned the compensation that they request."

- In *Yud v. Saf T Lok*, No. 98-8507-Civ-Hurley (S.D. Fla. Dec. 15, 1999), where the Firm was sole lead counsel, the court stated: "The attorneys have done an outstanding amount of work and fine legal work in a short period of time to bring this class action to resolution in a successful fashion."

- In *Kurzweil v. Philip Morris Companies*, 94 Civ. 2373, 94 Civ. 2546 (MBM) (S.D.N.Y. Nov. 13, 1998), where the Firm was sole lead counsel, now Chief Judge Mukasey, in approving a $116.5 million settlement stated: "In this case, this represents a lot of good, hard, serious work by a lot of talented lawyers and I appreciate it on both sides."

- In *Paramount Communications v. QVC Network Inc.; In re Paramount Communications Inc. Shareholders' Litigation*, 637 A.2d 34, 37 n.2 (Sup. Ct. Del. 1994), where the Firm was co-lead counsel for the Paramount shareholders, the Supreme Court of Delaware noted "its appreciation of . . . the professionalism of counsel in this matter in handling this expedited litigation with the expertise and skill which characterize Delaware proceedings of this nature." The Court further "commended the parties for their professionalism in conducting expedited discovery, assembling and organizing the record, and preparing and presenting very helpful briefs, a joint appendix, and oral argument."

- In *In re Laser Arms Corp. Securities Litigation*, 794 F. Supp. 475, 496 (S.D.N.Y. 1989), where the Firm was lead counsel, the Court stated "plaintiffs' counsel have demonstrated their experience in securities litigation and the Court is confident that counsel will proceed vigorously on behalf of all class and subclass members."

- In *In re Public Service Co. of Indiana Derivative Litigation*, 125 F.R.D. 484, 486 (S.D. Ind. 1988), concerning the construction of the Marble Hill Nuclear Power Plant, where the Firm was lead counsel, the court said: "Throughout the life of this litigation, it has been both vigorously prosecuted and aggressively defended by thoroughly competent counsel on all sides."

- In *In re Public Service Co. of New Hampshire Derivative Litigation*, 84-220-D (D.N.H. 1986), involving the construction of the Seabrook Nuclear Power Plant, where the Firm was lead counsel, the court said of plaintiffs' counsel that "the skill required and employed was of the highest caliber."

- In *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), where the Firm served as co-lead counsel, the court noted the defendants' concession that "'plaintiffs' counsel constitute the

4





cream of the plaintiffs' bar.' The Court cannot find fault with that characterization."

- In *Steiner v. Equimark Corp.*, No. 81-1988 (W.D. Pa. 1983), a case involving complex issues concerning banking practices in which the Firm was lead counsel, then District Judge Mannsman described, in part, the work the Firm performed:

> We look at the complexity of the issue, the novelty of it, the quality of work that, as the trial judge, I am able to perceive, and then, finally, the amount of recovery obtained: I think I have certainly said a lot in that regard. I think it's been an extraordinary case. I think it's an extraordinary settlement. Certainly defense counsel and plaintiffs' counsel as well are all experienced counsel with a tremendous amount of experience in these particular kinds of cases. And under those circumstances . . . I think it was, really, the strategy and ingenuity of counsel in dividing up the workload and strategizing the cases as to who was to do what and what ultimately should be done to bring about the settlement that was achieved.

## CURRENT CASES

Wolf Haldenstein is a leader in the class action litigation field and is currently the court-appointed lead counsel, co-lead counsel, or executive committee member in some of the largest and most significant class action lawsuits currently pending across the United States, including:

- *In re Initial Public Offering Securities Litigation*, 21 MC 92 (SAS) (S.D.N.Y.).

- *In re Initial Public Offering Antitrust Litigation*, 01 CV 2014 (WHP) (S.D.N.Y.); Dismissal reversed by *Billing, et al. v. Credit Suisse First Boston LTD.*, et al., Docket Nos. 03-9284L & 03-9288CON, 2005 U.S. App. LEXIS 21019 (2d Cir. Sept. 28, 2005).

- *J.P. Morgan Chase Securities Litigation, (Blau v. Harrison)*, Civ. No. 04 C 6592 (N.D. Ill.).

- *In Re Hansen Natural Corporation Securities Litigation*, Case No. CV 06-7599 JFW (PLAx) (S.D. Cal).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





- *In re Collins & Aikman Corp. Sec. Litigation*, 2:05-cv-03791 (MBM) (SDNY).

- *Spagnola v. Kilrea, et al.*, (HA-LO, Inc.) 02 C 0270 (N.D. Ill.).

- *In re Globalstar Securities Litigation*, Case No. 01-CV-1748 (SHS) (S.D.N.Y.).

- *In re Acclaim Entertainment, Inc., Securities Litigation*, C.A. No. 03-CV-1270 (E.D.N.Y.).

- *Johnson v. Aegon USA, Inc.*, 1-02-CV-2617-CAP (N.D. Ga.).

- *In re Sepracor Inc. Securities Litigation*, Civ. No. 02-12338 (MEL) (D. Mass.).

- *In re CNL Hotels & Resorts, Inc. Securities Litigation*, No. 6:04-cv-1231 (Orl-31).

- *Bamboo Partners LLC v. Robert Mondavi Corp.*, No. 26-27170 (Cal. Sup. Ct.).

- *Lewis v. CNL Restaurant Properties*, No. 05-00083-F (Tex. Dist. Ct.).

- *In re Adelphia Communications Corp. Securities and Derivative Litigation* ("Adelphia Business Actions"), 03-ML 1529, 03 CV 5755 (LMM) (S.D.N.Y.).

- *In re Iridium Securities Litigation*, C.A. No. 99-1002 (D.D.C.).

- *Rosenbaum Capital LLC v. Boston Communications Group, Inc. et al.*, 1:05-cv-11165 (D. Mass).

- *In re Transkaryotic Therapies, Inc., Securities Litigation*, C.A. No. 03-10165-RWZ (D. Mass).

- *In re MCI Communications Corp. Securities Litig.*, 97-CV-1976 (RWR) (D.D.C.).

- *In re Ventro Corporation Securities Litigation*, Master File No. Civ. 01-1287 SBA (N.D. Cal.).

- *In re Loral Space & Communications Shareholders' Securities Litigation*, 03 Civ. 8262 (JES) (S.D.N.Y).

- *In re LNR Property Corp. Shareholder Litigation*, Consolidated C.A. No. 647-N (Del. Ch. Ct.).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



- *In re Tyson Foods, Inc. Consolidated Shareholder Litigation*, Consolidated C.A. No. 1106-N (Del. Ch. Ct.).

- *In re American Pharmaceutical Partners, Inc. Shareholder Litigation*, Consolidated C.A. No. 1823-N (Del. Ch. Ct.).



- *In re Merrill Lynch & Co., Inc. Global Technology Fund Securities Litigation*, 02 CV 7854 (JFK) (SDNY).

- *In re Merrill Lynch & Co., Inc. Focus Twenty Fund Securities Litigation*, 02 CV 10221 (JFK) (SDNY).



- *In re Specialty Laboratories, Inc. Shareholder Litigation,* Case No. BC340798 (L.A. Superior Ct).

- *Sheldon Miller, P.C. Deferred Benefits Plan v. Siebel System, Inc., et al.,* Case No. CIV 449534 (San Mateo Sup. Ct).

- *In re Tower Automotive ERISA Litigation*, No. 05 CV 2184 (LLS) (S.D.N.Y.).

- *In re Coca-Cola ERISA Litigation*, 05 CV 1798 (N.D. Ga.).

- *In re Aon ERISA Litigation*, No. 04 C 6875 (N.D. Ill.).

- *In re Aquila, Inc.,* (ERISA Litigation), 04-865 (W.D. Mo.).

- *Spiziri v. The St. Paul Travelers Companies, Inc.* (ERISA Litigation), Civ. No. 04-5096 JRT/FLN (D. Minn.).

- *In re Harley Davidson, Inc. ERISA Litigation*, Case No. 05-C-00547-CNC (E.D. Wisc).

- *In re Guidant Corp. ERISA Litigation*, 1:05-cv-1009-LJM-TAB (S.D. Ind.)

- *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, Master File No. M 02-1486 (N.D. Cal.).

- *In re Elevators and Escalators Antitrust Litigation*, 04-CV-1644 (S.D.N.Y.)

- *In re Sulfuric Acid Antitrust Litigation*, Master File No. 03 C 4576 (N.D. Ill.).

- *In re McDonough, et al. v. Toys "R" Us, Inc., et al.,* No 2:06 CV 00242-AB (E.D. Pa.).

- *In re Copper Tubing Antitrust Litigation*, No. 04-2771-DV.

7

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





- *Schoenbaum v. E.I. DuPont de Nemours and Company, et al.,* Case No. 4:05-cv-01108 ERW (E.D. Mo.) (consolidated antitrust cases concerning genetically modified corn and soybean seeds.

- *In re St. Paul Travelers Securities Litigation II,* Civ. No. 04-cv-4697 (JRT/FLN) (D. Minn.).

Beginning on page 21 is a representative listing of cases in which the Firm has been lead or one of the plaintiffs' primary counsel and the results achieved in those cases. In addition, a representative list of published decisions in cases in which Wolf Haldenstein has played a lead or other significant role begins on page 24.

Wolf Haldenstein is a leader in the derivative litigation field and is currently leading counsel in some of the most significant derivative actions pending in the United States, including:

- *In re Mutual Fund Investment Litigation,* MDL No. 1586 (D. Md.).

- *Levin v. Kozlowski, (Tyco Derivative Litigation),* No. 602113/2002 (N.Y. Sup. Ct.).

- *AIG, Inc. Consolidated Derivative Litigation,* C.A. No. 769-N (Del. Chanc.).

- *In re R&G Financial Corp. Derivative Litigation,* 1:05-CV-5547 (S.D.N.Y.).

- *In re Mercury Interactive Corp. Derivative Litigation,* Case No. 5:05-cv-04642-JF (N.D. Cal.).

- *General Motors Derivative Litigation,* MDL Docket No. 1749.

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP

# PRIVATE ACTIONS FOR INSTITUTIONAL INVESTORS



In addition to its vast class action practice, the Firm also regularly represents institutional clients such as public funds, investment funds, limited partnerships, and qualified institutional buyers. The Firm has represented institutional clients in non-class federal and state actions concerning a variety of matters, including private placements, disputes with investment advisors, and disputes with corporate management. Examples of such cases include:





- *Steed Finance LDC v. Laser Advisers, Inc.*, 99 Civ. 4222 (PKC)(S.D.N.Y.), a fraud, negligence, breach of contract and breach of fiduciary duty action brought by a hub fund, a related feeder fund and individual investors in the feeder fund against the funds' former investment advisors for mispricing certain securities and derivative instruments in the funds' fixed-income securities portfolio.

- *Diversified Asset Securitization Holdings I, L.P. v. Enterprise Mortgage Acceptance Co, LLC, et al.*, 02 Civ. 10228 (SWK) (S.D.N.Y.), a federal and state securities fraud action brought by limited partnerships that pooled the investments of various insurance companies against the issuer and management and controlling shareholder of the issuer, concerning misrepresentations made in connection with a private placement of certificates representing interests in a securitized pool of loans made to franchise operations of car care businesses, gas stations, convenience stores and quick service restaurants.

- *Gramercy Park Investments v. Airfund International*, No. 97-22734B (Mass.Super. Ct.); *Gramercy Park Investments v. The Krupp Realty Fund*, No. 97-1612 (Mass.Super.Ct.); *Geodyne Resources v. Gramercy Park Investments*, No. CJ-96-05548 (Dist.Ct.Okla.); *Gramercy Park Investments v. Wells Real Estate Fund*, No. 97-A-0241-3 (Ga.Super.Ct.); *Gramercy Park Investments v. Swift Energy*, No. 96-61729 (Dist.Ct.Tex.); and *Lexington Family Investments v. Dean Witter*, No. 15217-96 (N.Y.Sup.Ct.); actions brought on behalf of institutional investors in state courts throughout the nation demanding inspection of investor lists and other corporate and partnership information.

- *Madison Partnership Liquidity Investors v. American Cable TV Investors*, 97 Civ. 4950 (JSM) (S.D.N.Y.); and *Madison Partnership Liquidity Investors v. PLM Equipment Growth Fund*, 98 Civ. 4057 (JSM)(S.D.N.Y.); actions brought on behalf of institutional investors against fund management for improper defensive actions taken in response to investors' acquisitions of large positions in funds.

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP







The Firm has also acted as special counsel to investors' committees in efforts to assert the investors' interests without resort to litigation. For example, the Firm served as Counsel to the Courtyard by Marriott Limited Partners Committee for several years in its dealings with Host Marriott Corporation, and as Special Counsel to the Windsor Park Properties 7 and 8 limited partners to insure the fairness of their liquidation transactions.

## THE CLASS ACTION LITIGATION GROUP

The qualifications of the attorneys in the Wolf Haldenstein Litigation Group are set forth below and are followed by descriptions of some of the Firm's attorneys who normally practice outside the Litigation Group who contribute significantly to the class action practice from time to time.

## PARTNERS

**DANIEL W. KRASNER**: *admitted*: New York; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Central District of Illinois, and Northern District of Michigan. *Education*: Yeshiva College (B.A. 1962); Yale Law School (LL.B., 1965). Lecturer: Practicing Law Institute; Rutgers Graduate School of Business. Member: the Association of the Bar of the City of New York; Rockland County, New York State and American Bar Associations; Federal Bar Council. Mr. Krasner has lectured frequently before bar groups and has educated groups on securities laws and investors rights. His qualifications have received favorable judicial recognition on many occasions. *See, e.g., Shapiro v. Consolidated Edison Co.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 96,364 at 93,252 (S.D.N.Y. 1978) ("in the Court's opinion the reputation, skill and expertise of . . . [Mr.] Krasner, considerably enhanced the probability of obtaining as large a cash settlement as was obtained"); *Steiner v. BOC Financial Corp.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 97,656, at 98,491.4, (S.D.N.Y. 1980) ("This Court has previously recognized the high quality of work of plaintiffs' lead counsel, Mr. Krasner"). *The New York Law Journal*, August 1, 1983, at p. 5 (referring to Mr. Krasner as one of the "top rank plaintiffs' counsel" in the securities and class action fields.).

10





FRED TAYLOR ISQUITH:  *admitted*:  New York; District of Columbia; Supreme Court of the United States; U.S. Courts of Appeals for the First, Second, Third, Fourth and Eighth Circuits; U.S. District Courts for the Southern, Eastern and Northern Districts of New York, District of Arizona, District of Colorado, Central District of Illinois, Western District of Michigan and District of Nebraska. *Education*: Brooklyn College of the City University of New York (B.A., 1968); Columbia University (J.D., 1971). Author, "Post Arbitration Remedies," for an Introduction to Securities Arbitration (NYSBA, 1994); "A Plaintiff's Lawyer Examines Limited Partnership Roll-ups for Real Estate Exit Strategies" (American Conference Institute, 1994); Federal Civil Practice Supplement, "Representative Actions," (NYSBA, 2000). Columnist for weekly column "From the Courts," for *The Class Act*, National Association of Securities and Class Action Attorneys.   Lecturer, IPO Tie In/Claims Seminar, Professional Liability Underwriter Society; Securities Arbitration New York State Bar Association; Real Estate Exit Strategies, American Conference Institute; Fundamental Strategies in Securities Litigation (NYSBA, CLE Program).   He is an arbitrator with the American Arbitration Association and with the Civil Court of the City of New York and a mediator for the ADR Program of the Supreme Court, County of New York, Complex Litigation Panel.  Member: The Association of the Bar of the City of New York (Committee on Federal Courts); New York County Lawyers' Association (Former Chair: Business Tort/Consumer Fraud-Tort Law Section); Brooklyn (Member: Committee on Civil Practice Law and Rules, 1983-; Committees on Legislation and Federal Courts, 1984-), New York State (Member: Committee on Legislation, Trial Lawyers Section, 1981- ); Committee on Securities, Commercial and Federal Litigation Section, 1989- ), and American (Member: Sections on: Litigation; International Law; Individual Rights and Responsibilities) Bar Associations; the District of Columbia Bar; and Legislation and Civil Practice Law and Rules Committee of the Brooklyn Bar Association.  Mr. Isquith has been Chairman of the Business Tort/Consumer Fraud Committee of the Tort Law Section of the New York State Bar Association and is a member of that association's Committees on Securities Law and Legislation.  He has served as a judge for the Moot Court Competition of Columbia University Law School and Fordham University's National Competition. Mr. Isquith served as President of the National Association of Securities and Commercial Law Attorneys in 2003 and 2004. The April 1987 issue of *Venture* magazine listed Mr. Isquith as among the nation's top securities class action attorneys.

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP







**JEFFREY G. SMITH**: *admitted*:  New York; California; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits; U.S. Tax Court; U.S. District Courts for the Southern and Eastern Districts of New York, Southern and Central Districts of California and the Districts of Colorado and Nebraska.  *Education*: Vassar College (A.B., *cum laude generali*, 1974); Woodrow Wilson School of Public and International Affairs, Princeton University (M.P.A., 1977); Yale Law School (J.D., 1978).  At Yale Law School, Mr. Smith was a teaching assistant for the Trial Practice course and a student supervisor in the Legal Services Organization, a clinical program.  Member: The Association of the Bar of the City of New York; New York State and American (Section on Litigation) Bar Associations; State Bar of California (Member: Litigation Section).  Mr. Smith has frequently lectured on corporate governance issues to professional groups of Fund trustees and investment advisors as well as to graduate and undergraduate business student groups, and regularly serves as a moot court judge for the A.B.A. and at New York University Law School.   Mr. Smith has substantial experience in complex civil litigation, including class and derivative actions, tender offer, merger, and takeover litigation.

**FRANCIS M. GREGOREK**: *admitted*:  New York; California; U.S. Courts of Appeals for the District of Columbia and Ninth Circuit; U.S. District Courts for the Eastern and Southern Districts of New York, and Central, Southern and Northern Districts of California; *Education*: University of Virginia (B.A., with high distinction, 1975); New York University (J.D., 1978); Durham University, Durham, England. Phi Beta Kappa; Phi Alpha Theta. Member: State Bar of California; American Bar Association.

**MARY JANE FAIT**: *admitted*:  New York; Illinois; U.S. District Courts for the Southern and Eastern Districts of New York, and Northern District of Illinois; U.S. Court of Appeals for the Seventh Circuit. *Education*: St. John's College and University of Illinois (B.A., Economics, 1976); Cornell Law School (J.D., 1979). Member: Chicago Bar Association; Illinois Bar Association; Antitrust Division of the American Bar Association.

**PETER C. HARRAR**: *admitted*:  New York; U.S. District Courts for the Southern, Eastern and Northern Districts of New York.  *Education*: Princeton University (A.B., with high honors, 1980); Columbia University (J.D., 1984). Phi Beta Kappa.   Mr. Harrar has extensive experience in

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





complex securities and commercial litigation on behalf of individual and institutional clients.

LAWRENCE P. KOLKER: *admitted*: New York; U.S. Courts of Appeals for the Second and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Western District of Michigan and the District of Colorado. *Education*: State University of New York at Binghamton (B.A., 1978); Brooklyn Law School (J.D., 1983). Editor, *Brooklyn Law Review*, 1982-1983. Panelist, Early Neutral Evaluator for the Eastern District of New York, 1992-1997. Lecturer, Brooklyn Law School, 1989. Assistant Corporation Counsel, City of New York, 1983-1987. Member: The Association of the Bar of the City of New York; New York State Bar Association. Mr. Kolker has spoken at numerous conferences of the Investment Program Association and the Strategic Research Institute concerning limited partnership tender offers and litigation strategies, and has published articles entitled "Litigation Strategies for Limited Partnership Tender Offers" (February 1996) and "Limited Partnership Five Percent Tender Offers" (October 1997) in Standard & Poor's *Review of Securities and Commodities Regulation*. Mr. Kolker has acted as lead counsel in numerous class and derivative actions asserting the rights of investors since joining Wolf Haldenstein in 1989. Mr. Kolker also counsels investment management firms in transactional and securities matters and represents them in corporate and business litigation.

MARK C. RIFKIN: *admitted*: New York; Pennsylvania; New Jersey; U.S. Supreme Court; U.S. Courts of Appeals for the Second, Third, Fifth, and D.C. Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Pennsylvania, the District of New Jersey, the Eastern District of Wisconsin and the Western District of Michigan. *Education*: Princeton University (A.B., 1982); Villanova University School of Law (J.D. 1985). Contributor, PACKEL & POULIN, *Pennsylvania Evidence* (1987). Mr. Rifkin has extensive experience in complex class and derivative actions in securities, ERISA, antitrust, intellectual property, and consumer protection litigation. Mr. Rifkin has extensive trial experience in class and derivative actions, including *In re National Media Corp. Derivative Litig.*, C.A. 90-7574 (E.D.Pa.), *Upp v. Mellon Bank, N.A.*, C.A. No. 91-5229 (E.D.Pa.), where the verdict awarded more than $60 million in damages to the Class (later reversed on appeal, 997 F.2d 1039 (3d Cir. 1993)), and *In re AST Research Securities Litigation*, No. 94-1370

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





SVW (C.D. Cal.), as well as a number of commercial matters for individual clients. Mr. Rifkin has lectured before diverse business and professional organizations in the areas of securities and complex litigation and corporate governance, serves as a moot court judge for the A.B.A. and at New York University Law School, and is a frequent guest lecturer to graduate and undergraduate economics and finance students on corporate governance topics.

REUBEN A. GUTTMAN: *admitted*: Georgia; District of Columbia; Pennsylvania; New Jersey; U.S. Courts of Appeals for the Third, Fourth, Eleventh, and D.C. Circuits; U.S. District Courts for the District of Columbia, Eastern District of Pennsylvania, District of New Jersey, and Northern District of Georgia. *Education*: University of Rochester (B.A, 1981); Emory University Law School (J.D. 1985). Consulting Editor, *The Regulatory Analyst; Medical Waste* (Warren Gorham Lamont, New York, NY 1993-1994); Advisory Board Member and Chapter Author, *Environmental Management and Healthcare Facilities* (W.B. Saunders 1998). Mr. Guttman has extensive experience in complex class actions and litigation under the False Claims Act, the federal securities laws, the Price Anderson Act, the WARN Act, RICO, and various employment discrimination, labor and environmental statutes. Mr. Guttman has been counsel in some of the largest recoveries under the Federal False Claims Act including *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (ED Tex. 1999), where over $300 million were recovered from the oil industry. In addition to serving as an editor, Mr. Guttman has authored a number of scholarly works, including "The Asbestos Model: Labor and Citizens Groups and a Multi-Pronged Approach to Regulatory Change" (co-author), published as a chapter in *Conflict Resolution and Public Policy* (Greenwood-Quorum Press 1990); "The Dormant Commerce Clause and Interstate Transportation of Waste," University of Pennsylvania, *Journal of Resource Management and Technology* (June 1993); "The False Claims Act: Holding Employers Accountable for Workplace Rights," Co-authored with Ann Lugbill, *Employee Rights Quarterly* (Aspen, Autumn 2000); "Inside the Minds: Winning Legal Strategies for Structuring Executive Compensation Plans," chapter in *Executive Compensation Considerations* (Aspatore Books, June 2005); and "The Interplay Between the False Claims Act, Securities Fraud, and ERISA," (Co-author with Ann Lugbill): *Taxpayers Against Fraud False Claims Act & Qui Tam Quarterly Review*, Vol. 39, (October 2005). Mr. Guttman has appeared on ABC Nightly News and CNN, and has been quoted in major publications, including The Wall Street Journal, The Washington Post, The

14